TIM M. AGAJANIAN (SBN 130508)
MICHAEL T. OHIRA (SBN 126137)
FARID ZAKARIA (SBN 280283)
ROPERS MAJESKI PC
445 South Figueroa St, Suite 3100
Los Angeles, CA 90071
Telephone: 213.312.2000
Facsimile: 213.312.2001
Email: tim.agajanian@ropers.com;
michael.ohira@ropers.com;
farid.zakaria@ropers.com

Attorneys for Intervening Third-Party Defendant WAUSAU GENERAL INSURANCE COMPANY, f/k/a ILLINOIS EMPLOYERS INSURANCE OF WAUSAU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| L.A. TERMINALS, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF LOS ANGELES, a Municipal corporation and OCCIDENTAL CORPORATION, a New York corporation and UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation,<br><br>        Defendants.<br><br>AND RELATED COUNTERCLAIMS, CROSS-CLAIMS AND THIRD-PARTY COMPLAINTS. | Case No. 2:18-cv-06754 MWF(PVC)<br><br>Assigned for All Purposes to: Hon. Michael W. Fitzgerald<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY INTERVENOR WAUSAU GENERAL INS. CO. FOR ORDER APPROVING SETTLEMENT AGREEMENT**<br><br>(Notice of Motion; Decl. of Michael Ohira; Request for Judicial Notice; Appendix of Exhibits; and proposed Order served and filed separately)<br><br>**DATE: JANUARY 23, 2023**<br>**TIME: 10:00 AM**<br>**CTRM: 5A (First St. Courthouse)**<br>**JUDGE: HON. MICHAEL W. FITZGERALD** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .......................................................................................... 1
II. THE SETTLEMENT AND THE SETTLEMENT AGREEMENT ............... 1
III. SUMMARY OF RELIEF REQUESTED .................................................... 2
IV. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................ 3
  A. THE PROPERTY. ................................................................................ 3
  B. THE CITY INITIATES LITIGATION IN STATE COURT. .............. 3
  C. THE INSTANT FEDERAL ACTION FILED AFTER THE STATE COURT ACTION. ..................................................................... 4
    1. COMPLAINT BY LAT. ............................................................... 4
    2. THIRD PARTY COMPLAINT BY THE CITY. ......................... 4
    3. THIRD PARTY COMPLAINT BY OCCIDENTAL. .................. 4
    4. CROSS-CLAIM BY UNION PACIFIC. ..................................... 4
    5. UNION OIL COMPANY OF CALIFORNIA DISMISSES ACE. ........................................................................ 5
V. LEGAL ARGUMENT ..................................................................................... 5
  A. LEGAL STANDARD. .......................................................................... 5
  B. THE SETTLEMENT IS A JUST, FAIR, ADEQUATE AND EQUITABLE RESOLUTION OF ALL CLAIMS AGAINST ACE .......................................................................................................... 7
    1. A ROUGH APPROXIMATION OF THE PLAINTIFF'S TOTAL RECOVERY AND THE SETTLOR'S PROPORTIONATE LIABILITY. ............................................... 8
    2. THE AMOUNT PAID IN SETTLEMENT. ................................ 9
    3. THE ALLOCATION OF SETTLEMENT PROCEEDS AMONG PLAINTIFFS. ............................................................... 9
    4. A RECOGNITION THAT A SETTLOR SHOULD PAY LESS IN SETTLEMENT THAN HE WOULD IF HE WERE FOUND LIABLE AFTER TRIAL. ................................. 9
    5. THE FINANCIAL CONDITION AND INSURANCE POLICY LIMITS OF THE SETTLING DEFENDANTS. ....... 10
    6. THE EXISTENCE OF COLLUSION, FRAUD, OR TORTIOUS CONDUCT AIMED TO INJURE THE INTERESTS OF THE NONSETTLING DEFENDANTS. ...... 10
VI. CONCLUSION ............................................................................................... 11

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*AmeriPride Services Inc. v. Valley Indus.*,
   Nos. CIV. S–00–113–LKK JFM, S–04–1494–LKK JFM, 2007 WL
   1946635 (E.D. Cal. July 2, 2007) ............................................................................ 5

*AmeriPride Servs. Inc. v. Texas E. Overseas Inc.*,
   782 F.3d 474 (9th Cir. 2015) ................................................................................... 5

*Coppola v. Smith*,
   No. 1:11-CV-1257 AWI BAM, 2016 WL 8730769 (E.D. Cal. July
   1, 2016) ................................................................................................................... 5

*Heim v. Heim*,
   No. 5:10-CV-03816-EJD, 2014 WL 1340063 (N.D. Cal. Apr. 2,
   2014) ....................................................................................................................... 6

*Hernandez v. Sutter Medical Center of Santa Rosa*,
   2009 WL 322937 (N.D. Cal. Feb. 9, 2009) ............................................................. 6

*Michell v. United States*,
   No. 09CV0387 BTM JMA, 2011 WL 3903220 (S.D. Cal., Sept. 06,
   2011) ....................................................................................................................... 6

*S.E.C. v. Randolph*,
   736 F.2d 525 (9th Cir. 1984) ................................................................................... 5

*U.S. v. Cannons Eng'g Corp.*,
   899 F.2d 79 (1st Cir. 1990) ..................................................................................... 7

*U.S. v. Montrose Chem. Corp.*,
   50 F.3d 741 (9th Cir. 1995) ..................................................................................... 7

**STATE CASES**

*Fisher v. Superior Court*,
   103 Cal. App. 3d 434 (1980) ................................................................................... 6

*Kohn v. Superior Court*,
   142 Cal. App. 3d 323 (1983) ................................................................................... 6

# TABLE OF AUTHORITIES
(continued)

Page

*Price Pfister, Inc. v. William Lyon Co.*,
   14 Cal. App. 4th 1643 (1993) ............................................................................. 8

*Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*,
   38 Cal. 3d 488 (1985) ............................................................................... 6, 7, 8

**FEDERAL STATUTES**

42 U.S.C. § 9613(f) .............................................................................................. 4

42 U.S.C. § 9613(g)(2) ......................................................................................... 4

CERCLA § 113 ..................................................................................................... 4

Comprehensive Environmental Response, Compensation and Liability
   Act **(CERCLA)**, 42 U.S.C. § 9601, *et seq.* ..................................................... 2

**STATE STATUTES**

California Code of Civil Procedure § 877 ........................................................... 2

California Code of Civil Procedure § 877.6 ........................................................ 2

CCP ...................................................................................................................... 5

CCP § 877(a) ..................................................................................................... 10

CCP § 877.6 ....................................................................................................... 11

CCP § 877.6(d) ................................................................................................ 6, 7

**OTHER AUTHORITIES**

*Bonds v. Nicoletti Oil, Inc.*,
   No. CV-F-07-1600 ............................................................................................ 6

## I. INTRODUCTION

Plaintiff L.A. Terminals, Inc. **(LAT)** filed this CERCLA action against the City of Los Angeles **(City)**, Occidental Chemical Corporation **(Occidental)**, and Union Pacific Railroad Company **(Union Pacific)** seeking to recover response costs LAT incurred relating to the investigation and planned remediation of a contaminated area at the Port of Los Angeles colloquially known as the "Sliver Site." LAT did *not* name Ash-Cross-Evans Corporation **(ACE)**[1] as a defendant in its original or operative First Amended Complaint. **[DKT 1, 100, EX C, D]**. The City and Occidental filed Third-Party Complaints naming ACE, and others **[DKT 44, 155 45, 150, EX. E, F, G, H]**, and Union Pacific filed Cross-Claims naming ACE, and others **[DKT 92, 241, EX. I, J]**. ACE dissolved in 1982. **[EX. N]**. Wausau General Insurance Company f/k/a Illinois Employers Insurance of Wausau **(Wausau)** intervened in this action, filing Answers in Intervention to all Third-Party Complaints and Cross-Claims asserted against ACE in this action **[DKT 261, 278, 279, 280, EX. P, Q, R, S]** to protect Wausau's interests under a single liability insurance policy issued to "Olympic Chemical Company" by Illinois Employers Insurance of Wausau. **(Illinois Employers Policy)**. ACE is a putative insured under the Illinois Employers Policy. Wausau has significant coverage concerns, including without limitation, whether ACE qualifies as an insured under the policy, and whether the claims in this litigation are excluded by a pollution exclusion. **[EX. O]**.

## II. THE SETTLEMENT AND THE SETTLEMENT AGREEMENT

The City, Occidental, Union Pacific, and Wausau (collectively the "**Settling Parties**") engaged in two mediations followed by arms-length negotiations, and

---

[1] For purposes of this Motion for Order Approving Settlement, the parties use the same definition of ACE as the definition of ACE in Paragraph 1,a.i. of the Settlement Agreement and Release **(Settlement Agreement)**. **[EX A]**. The Settlement Agreement is limited to a release of claims against ACE and Wausau, but as to Wausau only in its capacity as an alleged insurer of ACE and not in its capacity as an alleged insurer of Olympic Chemical Corporation. In the Settlement Agreement, the City, Occidental and Union Pacific (collectively the "**Releasing Parties**") did not release or waive any claims or causes of action against Olympic Chemical Corporation.  *See* Settlement Agreement at **EX A**.

4892-6892-4485.2

-1-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER APPROVING SETTLEMENT

reached an agreement to settle all claims against ACE for the undivided sum of $250,000 to be deposited into an escrow account to be designated by the Releasing Parties and to be used by the Releasing Parties for the investigation and/or remediation of halogenated volatile organic compound (**HVOC**) contamination at the Sliver Site.  **[EX A]**.  The Settlement Agreement is contingent on the entry of Good Faith Settlement Orders in this action and a related action in state court, finding that the Settlement Agreement was entered into in good faith, approving the Settlement Agreement, and granting ACE protection by barring the parties in this action and the related state court action from asserting any claims, including contribution, equitable indemnity or cost recovery claims, against ACE arising out of, or in any way related to, the allegations in this action or the related state court action.

### III.   SUMMARY OF RELIEF REQUESTED

The Settling Parties seek an order that:

(a)  The Settlement Agreement between the Settling Parties is in good faith, fair, reasonable, and consistent with the intent of the Comprehensive Environmental Response, Compensation and Liability Act **(CERCLA**), 42 U.S.C. § 9601, *et seq.* and California Code of Civil Procedure ("CCP") §§ 877 and 877.6; and

(b)  Pursuant to the Settlement Agreement, CERCLA, and CCP §§ 877 and 877.6, ACE is discharged from all claims of liability, contribution, indemnity or cost recovery arising from any actual or alleged act or omission of ACE in connection with its occupancy and/or use of the property at issue in this litigation and all such claims are hereafter barred against ACE. Such discharge and bar shall not apply to any claims of the Releasing Parties identified in and expressly excluded from the release provided by the Releasing Parties in the Settlement Agreement.

## IV. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Property.

The Sliver Site is located at the Port of Los Angeles, in Wilmington, California. The City holds title to that property in trust. From 1887 to 1986, Southern Pacific Railroad Company/Southern Pacific Transportation Company, the predecessor of Union Pacific,[2] maintained an easement right to use the Sliver Site pursuant to a grant by the State of California. Pursuant to written lease and similar agreements, the property was leased to the following named tenants **[EX B – J; DKT 1, 40, 45, 92, 100, 150, 155, 241; EX T – 1/1/79 Industrial Land Lease; EX U – 1/2/79 Pipeline Lease; EX V – 3/7/19 Permit 404].**:

| 1949-1978 | Occidental, and its predecessor Hooker Chemical Corporation |
| --- | --- |
| 1979-1981 | Ash-Cross-Evans Corporation, a corporation, doing business as Olympic Chemical Corporation" [See EX T]; "Ash-Cross-Evans Corporation, a corporation dba Olympic Chemical Corporation" [See EX U]; and "Ash-Cross-Evans Corporation, dba Olympic Chemical Corporation, a Washington corporation" [See EX V]]. |
| 1981-1992 | L.A. Terminals, Inc. |

The property has been vacant since 1993.

### B. The City Initiates Litigation in State Court.

On **01/22/2018**, the City filed a Complaint in the Los Angeles Superior Court (case number NC061591) **(State Court Action)** seeking damages, injunctive relief, and/or indemnification for costs/damages related to contamination at the Los Angeles Marine Terminal, where the Sliver Site is located. **[EX B]**. On 10/02/2020 the City filed its operative Fourth Amended Complaint. **[EX M]**. The State Court

---

[2] Southern Pacific merged with Union Pacific in 1996.

Action has generally been stayed pending the outcome of this action; however, the state court has and is allowing certain dispositive motions.

### C. The Instant Federal Action Filed After The State Court Action.

#### 1. Complaint by LAT.

On **08/06/2018**, Plaintiff LAT filed this CERCLA action against the City and Occidental seeking to recover response costs it has incurred relating to the investigation and planned remediation of a contaminated area. **[EX C, DKT 1].** On **03/20/2019** LAT filed its operative First Amended Complaint against the City, Occidental and Union Pacific. **[EX D, DKT 100]**.

#### 2. Third Party Complaint by the City.

On **12/19/2018** the City filed a Third Party Complaint against ACE, and others, for contribution and declaratory relief under CERCLA §113, and for contractual indemnity. [See **EX E**; **DKT 40**, RJN, and Ohira Decl.]. On **05/16/2019** the City filed its operative First Amended Third Party Complaint, maintaining the same causes of action against ACE. [**EX F, DKT 155**].

#### 3. Third Party Complaint by Occidental.

On **12/19/2018** Occidental filed a Third-Party Complaint against ACE, and others, for contribution under CERCLA - 42 U.S.C. Section 9613(f); declaratory relief under CERCLA - 42 U.S.C. Section 9613(g)(2); equitable indemnity; and declaratory relief under state law. **[EX G, DKT 45]**. On **05/09/2019** Occidental filed its operative Second Amended Third-Party Complaint maintaining the same causes of action against ACE. [**EX H, DKT 150**].

#### 4. Cross-Claim by Union Pacific.

On **03/08/2019**, in answer to the City's Third Party Complaint, Union Pacific filed its Counterclaims and Cross-Claims against ACE, and others, alleging contribution and declaratory relief under CERCLA §113, contribution and equitable indemnity under state law, breach of contract, express contractual indemnity and declaratory relief. [**EX I, DKT 92**]. On **11/13/2019** Union Pacific filed its operative

Second Amended Counterclaims and Cross-Claims maintaining the same causes of action against ACE. **[EX J, DKT 241]**.

### 5. Union Oil Company of California Dismisses ACE.

Third Party Defendant Union Oil Company of California filed a cross-claim in this action, but *dismissed ACE* on **02/07/2022**. **[EX K, DKT 337]**.

## V. LEGAL ARGUMENT

### A. Legal Standard.

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (internal quotation marks and citation omitted). One of CERCLA's "core purposes" is "foster[ing] settlement through its system of incentives and without unnecessarily further complicating already complicated litigation." *AmeriPride Servs. Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474, 486 (9th Cir. 2015) (internal quotation marks and citation omitted). "Therefore, courts review settlements and generally enter contribution and indemnity bar orders in CERCLA cases if the settlement is fair, reasonable, and adequate." *Coppola v. Smith*, No. 1:11-CV-1257 AWI BAM, 2016 WL 8730769, at 2 (E.D. Cal. July 1, 2016).

"Under federal law, particularly in CERCLA cases such as this, district courts have approved settlements and entered bar orders." *AmeriPride Services Inc. v. Valley Indus.*, Nos. CIV. S–00–113–LKK JFM, S–04–1494–LKK JFM, 2007 WL 1946635, at 2 (E.D. Cal. July 2, 2007) (citation omitted); see also ("CCP") § 877.6(c) ("A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault."). "Within the Ninth Circuit, a court's authority to review and approve settlements and to enter bar orders has been expressly recognized." *Id*. (citing *Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) (approving settlement of claims and entering

bar orders in the context of federal securities laws)). "The [c]ourt unequivocally has the authority to review settlements and enter bar orders that discharge all federal and state law claims of contribution by non-settling defendants." *Heim v. Heim*, No. 5:10-CV-03816-EJD, 2014 WL 1340063, at 4 (N.D. Cal. Apr. 2, 2014).

    A *contested* motion for good faith settlement is subject to a multi-factor test set out by the California Supreme Court in *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488 (1985) to examine whether settling parties have reached a good faith agreement. The California Court of Appeal has held it is incumbent upon the court deciding the motion for good faith settlement to consider and weigh the *Tech-Bilt* factors only when the good faith nature of a settlement is disputed. *Michell v. United States*, No. 09CV0387 BTM JMA, 2011 WL 3903220, at *2 (S.D. Cal., Sept. 06, 2011), *citing City of Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1261 (1987). "That is to say, when no one objects, the barebones motion which sets forth the ground of good faith, accompanied by a declaration which sets forth a brief background of the case is sufficient." *Michell*, at 2, *quoting City of Grand Terrace*, at 1261; *see also Hernandez v. Sutter Medical Center of Santa Rosa*, 2009 WL 322937 (N.D. Cal. Feb. 9, 2009) (granting motion for good faith settlement without performing *Tech-Bilt* analysis because there were no objections); *Bonds v. Nicoletti Oil, Inc.*, No. CV-F-07-1600 OWW/DLB, 2008 WL 4104272 (E.D. Cal. Sept. 3, 2008) (declining to weigh *Tech-Bilt* factors because there was no opposition to the motion for good faith settlement).

    Any party objecting as to lack of "good faith" has the burden of proof as to that issue. In *Fisher v. Superior Court*, 103 Cal. App. 3d 434, 447 (1980), the court held that once there is a showing made that a resolution is not unreasonable on its face, the burden of going forward with the evidence on the issue of "good faith" shifts to the non-settling tortfeasor. In the wake of *Fisher*, the California legislature enacted CCP § 877.6(d), which codified the rule as follows: "The party asserting the lack of good faith shall have the burden of proof on that issue." *See also Kohn v.*

*Superior Court*, 142 Cal. App. 3d 323, 326 (1983). Thus, opponents of a motion for good faith settlement have the burden of proving that the settlement is so far "out of the ballpark" in relation to the factors set forth by the moving party, as to be inconsistent with the equitable objectives of CCP § 877.6(d). *Tech-Bilt,* 38 Cal. 3d at 499-500.

Because all parties who have asserted claims against ACE in this action, and the State Court Action, have agreed to settle and support this Motion,[3] the Court should approve the motion and the Settlement Agreement, and grant the requested order.

### B. The Settlement is a Just, Fair, Adequate and Equitable Resolution of All Claims Against ACE

The Court should find that the Settlement Agreement is just, fair, adequate, and an equitable resolution of all claims against ACE concerning environmental contamination in and around the Sliver Site. The settlement was procedurally and substantively in good faith, the result of arm's length negotiations, following two mediations, and furthers the goals under CERCLA. *See U.S. v. Montrose Chem. Corp.*, 50 F.3d 741, 748 (9th Cir. 1995) (noting "CERCLA's primary goal of encouraging early settlement"); *U.S. v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("it is the policy of [CERCLA] to encourage settlements.")

Second, the Settlement Agreement was reached after vigorous litigation over the course of approximately four years, wherein extensive exchanges of information, and related discovery was conducted. The total settlement sum of $250,000 is satisfactory in light of the facts and evidence.

Third, the Settlement Agreement is a reasonable resolution of the claims against ACE in light of facts and evidence. The alleged span of environmental contamination is from 1949 to the present – 73 years and counting. It is undisputed that ACE occupied the property for just two of those 73 years. Further, Wausau, on

---

[3] Union Pacific and Occidental will be filing a Joinder to this Motion.

behalf of ACE, has denied any and all fault, responsibility and liability by ACE for the release, if any, of pollutants during those two years.

In *Tech-Bilt*, the Court considered the meaning of the phrase "good faith," and found that to be "in good faith" a settlement must be within a "reasonable range" of the settling party's proportional share of comparative liability for plaintiff's injuries. *Id.* at 499. California courts have recognized that good faith is a flexible concept. *Price Pfister, Inc. v. William Lyon Co.*, 14 Cal. App. 4th 1643 (1993). Such a determination depends upon what the plaintiff knew about the liability at the time of settlement, not evidence that might be acquired later. *Tech-Bilt*, 38 Cal. 3d at 499. Whether the settlement was in the "good faith ballpark" is to be evaluated on the basis of information available at the time of settlement, including: (1) a rough approximation of plaintiff's total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) a recognition that a settlor should pay less in settlement than if found liable after trial; (4) the allocation of the settlement proceeds among plaintiffs; (5) the settlor's financial condition and insurance policy limits; and (6) the existence of collusion, fraud or tortious conduct aimed to injure the interests of nonsettling defendants. *Id.* at 499-500.

### 1. A rough approximation of the plaintiff's total recovery and the settlor's proportionate liability.

The cost to investigate and remediate the property is an unsettled question for trial. A third-party consultant estimated the cost at roughly $3 million; the City's First Amended Complaint in the State Court Action alleged $48 million [**See EX L, pg. 10, line 19**]; and the City's Fourth Amended Complaint in the State Court Action alleges $68 million [**See EX M, pg. 22, line 12**].

Even utilizing the City's high-end $68 million figure, the $250,000 settlement payment is proportionate. ACE was dissolved 40 years ago **[EX N – Washington Secretary of State's Certificate of Dissolution]** and there are no known assets. The Illinois Employers Policy, issued to Olympic Chemical Company as the

named insured, was only in force for five months (June-November, 1979). **[EX O]**. The time span from 1949 (when the contamination reportedly commenced) to the present time, is 73 years, or 874 months. Accordingly, the 5-month period that the Illinois Employers Policy was in force is 5/874 or **0.00572082** of the 73-year span. Mathematically, the settlement amount is $250,000/$68,000,000, or **0.00367647** of the $68 million *high-end* cost estimate of the City. When utilizing the City's $48 million figure, the settlement amount is $250,000/$48,000,000 or **0.00520833**. The settlement amount is decidedly within the ballpark, even when using the City's high-end cleanup figures.

### 2. The amount paid in settlement.

The amount of the settlement is not insignificant at $250,000, and will directly benefit environmental investigation and remediation of the Sliver Site. [**See EX A**].

### 3. The allocation of settlement proceeds among plaintiffs.

Allocation amongst the City, Occidental and Union Pacific is not an issue. All three have agreed that rather than apportion the $250,000 amongst themselves, the *entire* amount will be deposited into an escrow account to be used for the investigation and/or remediation of HVOC contamination at the Sliver Site. [**See EX A**]. No claimant is being favored over another, and the settlement is to be utilized for an entirely pragmatic reason – to start the process of funding cleanup of the property.

### 4. A recognition that a settlor should pay less in settlement than he would if he were found liable after trial.

As reflected by the mathematical calculations above, the amount of the settlement is mathematically proportionate to a trial outcome where cleanup costs are found to be $68 million. The City, and all other parties to this litigation, of course have no motivation or desire to overpay to clean up the property.

In the State Court Action, Wausau filed motions for summary judgment

against the City, Occidental, and Union Pacific on the basis that actions against ACE are barred pursuant to the statute of repose in the State of Washington, where Ash-Cross-Evans Corporation was incorporated. Such motions were taken off-calendar upon execution of the Settlement Agreement. ACE was dissolved in August 1982 and under the two-year statute of repose in the State of Washington, no action can be commenced against ACE after August 1984. The Third Party Complaints and Cross-Claims here were filed after 2018 – long after the August 1984 repose date. Also, Wausau has significant coverage concerns, including without limitation, whether ACE qualifies as an insured under the Illinois Employers Policy, and if coverage for the claims in this action are excluded by a pollution exclusion. Thus, even if the Releasing Parties' claims against ACE are not barred by the statute of repose, and allowed to proceed to trial, the coverage issues will remain.

In light of the facts, law, and public policy, the settlement is in good faith.

### 5. The financial condition and insurance policy limits of the settling defendants.

Again, ACE does not exist. It was dissolved 40 years ago **[EX N]**, and no assets have been identified. The Illinois Employers Policy has limits of $500,000. [**EX O**]. Wausau has significant coverage concerns, including without limitation, whether ACE qualifies as an insured under that policy, and the application of a pollution exclusion therein. In summary, there could be $0 available under the policy for the claims asserted in this action.

### 6. The existence of collusion, fraud, or tortious conduct aimed to injure the interests of the nonsettling defendants.

This is a nonissue. The settlement is the product of an arm's-length negotiation, following two mediations. Plus, the $250,000 settlement amount will not be paid to any party, but will instead be deposited into an escrow fund to investigate and/or remediate the HVOC contamination at the Sliver Site and an offset to non-settling defendants. CCP §877(a). ("*Where a release, dismissal with*

*or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith . . **it shall reduce the claims against the others in the amount stipulated by the release**, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is the greater.*")

If a nonsettling defendant believes that the settlement is so far out of the ballpark as to be inconsistent with the equitable objective of CCP §877.6, the burden is on that party to produce admissible evidence to so demonstrate. As indicated by the facts and evidence here, the settlement amount is neither insignificant nor disproportionately low, but squarely within the ballpark. The payment of the settlement amount inures to the benefit of *all* parties, as the money will be used for the sole purpose of investigating and/or remediating the HVOC contamination at the Sliver Site.

## VI. CONCLUSION

The City, Occidental and Union Pacific have made claims against ACE in this lawsuit, agreed to this settlement, and agreed to deposit the entirety of the $250,000 settlement amount into a fund to investigate and/or remediate the HVOC contamination at the Sliver Site. If the settlement is not found to be in good faith, then there will be no settlement, no monies will be set aside to fund investigation and remediation, and Wausau will move to extinguish all claims against ACE based on a Statute of Repose which, if granted, would leave any clean-up fund $250,000 lighter. Fortunately, as set forth hereinabove, the *Tech Bilt* factors are satisfied and ample cause exists to find the settlement in good faith.

Dated: December 19, 2022                ROPERS MAJESKI PC

By: /s/ Michael T. Ohira
MICHAEL T. OHIRA
Attorneys for Intervenor
WAUSAU GENERAL
INSURANCE COMPANY, f/k/a
ILLINOIS EMPLOYERS
INSURANCE OF WAUSAU

## CERTIFICATION – Local Rule 11-6.1

The undersigned, counsel of record for Intervenor, Wausau General Insurance Company, certifies that this brief contains 5045 words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: December 19, 2022         ROPERS MAJESKI PC

By: /s/ Michael T. Ohira
MICHAEL T. OHIRA
Attorneys for Intervenor
WAUSAU GENERAL
INSURANCE COMPANY, f/k/a
ILLINOIS EMPLOYERS
INSURANCE OF WAUSAU

| | | |
|---|---|---|
| CASE NAME: | | CITY OF LOS ANGELES v. L. A. TERMINALS, INC. |
| ACTION NO.: | | NC061591 |

### PROOF OF SERVICE

**METHOD OF SERVICE**

☐ First Class Mail    ☐ Facsimile    ☐ Messenger Service

☐ Overnight Delivery    ☐ E-Mail    ☒ Electronic Delivery Case Anywhere

1. At the time of service I was over 18 years of age and not a party to this action.

2. My business address is 445 South Figueroa Street, Suite 3100, Los Angeles, CA 90071, County of Los Angeles.

3. On January 19, 2022, I served the following documents:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION BY INTERVENOR WAUSAU GENERAL INS. CO. FOR ORDER APPROVING SETTLEMENT AGREEMENT**

4. I served the documents on the persons at the address below (along with their fax numbers and/or email addresses if service was by fax or email):

**SEE ATTACHED SERVICE LIST**    Type text here

5. I served the documents by the following means:

   a. ☐ By United States mail: I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses specified in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at the address listed in Paragraph 2 above.

   b. ☐ By overnight delivery: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

   c. ☐ By messenger: I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a messenger for service.

   d. ☐ By fax transmission: Based on an agreement between the parties and in conformance with Rule 2.306, and/or as a courtesy, I faxed the documents to the persons at the fax numbers listed in item 4. No error was reported by the fax machine that I used.

4892-6892-4485.2

- 13 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER APPROVING SETTLEMENT

e. ☐ By email or electronic transmission: Based on an agreement between the parties and/or as a courtesy, I sent the documents to the persons at the email addresses listed in item 4. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

f. ☒ (BY ELECTRONIC TRANSACTION VIA CASEANYWHERE.COM) Pursuant to the Court's Order authorizing Electronic Service entered on December 10, 2019 (Docket Entry 273), I caused a true and correct copy of the above entitled document(s) to be electronically served through Case Anywhere at www.caseanywhere.com addressed to all parties appearing on the electronic service list for the above-entitled case. The Case Anywhere electronic service transaction confirmation will be maintained with a copy of the document(s) in our office.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 19, 2022

Kimberly Cederquist  
Type Name

_/s/ Kim Cederquist_  
Signature

**SERVICE LIST**

| Counsel | Party |
|---|---|
| BARNES & THORNBURG LLP<br>David Allen, Esq.<br>(dallen@btlaw.com)<br>Joel Meyer, Esq.<br>(joel.meyer@btlaw.com)<br>Joseph Wahl, Esq.<br>(joseph.wahl@btlaw.com)<br>2029 Century Park East, Suite 300<br>Los Angeles, CA 90067<br>Phone: (310) 284-3880<br>Fax: (310) 284-3894 | Representing: Olympic Chemical Corporation<br>(2:18-cv-06754-MWF-RAO; NC061591) |
| BOOTH LLP<br>Allan Bareng, Esq.<br>(abareng@boothllp.com)<br>Joshua Levine, Esq.<br>(jlevine@boothllp.com)<br>11835 West Olympic Boulevard, Suite 600E<br>Los Angeles, CA 90064<br>Phone: (310) 641-1800<br>Fax: (310) 641-1818 | Representing: City of Los Angeles<br>(2:18-cv-06754-MWF-RAO; NC061591) |
| CITY OF LA - Office of the City Attorney<br>Brian Daluiso, Esq.<br>(bdaluiso@portla.org)<br>Janet Karkanen, Esq.<br>(jkarkanen@portla.org)<br>Kenneth Mattfeld, Esq.<br>(kmattfeld@portla.org)<br>425 S. Palos Verdes Street, 5th Fl.<br>San Pedro, CA 90731<br>Phone: (310) 732-3750<br>Fax: (310) 831-9778 | Representing: City of Los Angeles<br>(2:18-cv-06754-MWF-RAO; NC061591) |
| FARELLA, BRAUN & MARTEL LLP<br>Sarah Bell, Esq.<br>(sbell@fbm.com)<br>R. Christopher Locke, Esq.<br>(clocke@fbm.com)<br>Linda Sobczynski, Esq.<br>(lsobczynski@fbm.com)<br>235 Montgomery Street, 17th Floor<br>San Francisco, CA 94104<br>Phone: (415) 954-4400<br>Fax: (415) 954-4480 | Representing: Union Pacific Railroad Company<br>(2:18-cv-06754-MWF-RAO; NC061591) |

| Counsel | Party |
|---|---|
| HUGO PARKER, LLP<br>Paul Atigapramoj, Esq.<br>(patigapramoj@hugoparker.com)<br>Tina Glezakos, Esq.<br>(cglezakos@hugoparker.com)<br>240 Stockton Street, 8th Floor<br>San Francisco, CA 94108<br>Phone: (415) 808-0300<br>Fax: (415) 808-0333 | Representing: City of Los Angeles<br>(2:18-cv-06754-MWF-RAO; NC061591) |
| PARKER, MILLIKEN, CLARK, O'HARA & SAMUELIAN APC<br>Pedram Mazgani, Esq.<br>(pmazgani@pmcos.com)<br>Gary Meyer, Esq.<br>(gmeyer@pmcos.com)<br>555 South Flower Street, 30th Floor<br>Los Angeles, CA 90071<br>Phone: (213) 683-6500<br>Fax: (213) 683-6669 | Representing: Hooker Chemical Corporation Occidental Chemical Corporation<br>(2:18-cv-06754-MWF-RAO; NC061591) |
| ROGERS JOSEPH O'DONNELL<br>Robert Goodman, Esq.<br>(rgoodman@rjo.com)<br>Jon-Erik Magnus, Esq.<br>(jmagnus@rjo.com)<br>311 California Street, 10th Floor<br>San Francisco, CA 94104<br>Phone: (415) 956-2828<br>Fax: (415) 956-6457 | Representing: Union Oil Company of California<br>(2:18-cv-06754-MWF-RAO; NC061591) |
| RUTAN & TUCKER, LLP<br>Richard Montevideo, Esq.<br>(rmontevideo@rutan.com)<br>Kelsey Quist, Esq.<br>(kquist@rutan.com)<br>Travis Van Ligten, Esq.<br>(tvanligten@rutan.com)<br>611 Anton Boulevard, Suite 1400<br>Costa Mesa, CA 92626<br>Phone: (714) 641-5100<br>Fax: (714) 546-9035 | Representing: Los Angeles Terminals, Inc. Soco West, Inc.<br>(2:18-cv-06754-MWF-RAO; NC061591) |
| STEPHEN THOMAS ERB, APC<br>Stephen Erb, Esq.<br>(s.erb@erbapc.com)<br>11440 West Bernardo Court, Suite 204<br>San Diego, CA 92127<br>Phone: (858) 487-2728 | Representing: Phillips 66 Company<br>(2:18-cv-06754-MWF-RAO; NC061591) |