1  Richard Montevideo (State Bar No. 116051)
   rmontevideo@rutan.com
2  Samantha Lamm (State Bar No. 203094)
   slamm@rutan.com
3  Travis Van Ligten (State Bar No. 301715)
   tvanligten@rutan.com
4  RUTAN & TUCKER, LLP
   18575 Jamboree Road, 9th Floor
5  Irvine, CA  92612
   Telephone:  714-641-5100
6  Facsimile:  714-546-9035

7  Attorneys for Plaintiff,
   L.A. TERMINALS, INC.
8  and for Third-Party Defendant,
   SOCO WEST. INC.

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  L.A. TERMINALS, INC., a California corporation, | Case No. 2:18-CV-06754-MWF-PVC |
| 12  Plaintiff, | Assigned for All Purposes to:  Hon. Michael W. Fitzgerald |
| 13  vs. | **PLAINTIFF L.A. TERMINALS, INC.'S AND THIRD-PARTY DEFENDANT SOCO WEST, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO INTERVENOR WAUSAU GENERAL INSURANCE COMPANY'S MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT** |
| 14  CITY OF LOS ANGELES, a Municipal corporation, and OCCIDENTAL CORPORATION, a New York corporation and UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation, | |
| 15 | |
| 16 | |
| 17 | |
| 18  Defendant. | DATE:       January 23, 2023 |
| 19 | TIME:        10:00 a.m. |
| | CTRM:       5A (First St. Courthouse) |
| 20  AND RELATED COUNTERCLAIMS, CROSSCLAIMS AND THIRD-PARTY COMPLAINTS. | Non-Expert Discovery Cut off: December 17, 2021 |
| 21 | |
| 22 | Initial Expert Witness Exchange: February 28, 2022 |
| 23 | |
| 24 | Rebuttal Expert Witness Exchange: April 15, 2022 |
| 25 | Expert Witness Discovery Cut off: September 30, 2022 |
| 26 | |
| 27 | Final Pre-trial Conference: February 13, 2023 |
| 28 | Date Action Filed:   August 6, 2018 |
| | Trial Date:           March 14. 2023 |

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
18641257.6 a12/30/22

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     STATEMENT OF FACTS ................................................................... 2

III.    LEGAL ARGUMENT .......................................................................... 4

     A.      CERCLA Good Faith Settlements ............................................ 4

     B.      The Settlement Agreement Is Not In Good Faith Because There Are No Terms Ensuring The Funds Will Be Expended To Comport With CERCLA's Policy Objectives ................................................................................... 5

     C.      The Settlement Agreement Fails to Satisfy the Good Faith Standard under *Tech-Bilt* ....................................................... 9

IV.     CONCLUSION ................................................................................. 14

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-i-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

### FEDERAL CASES

4

*Alisu Invs., Ltd. v. TriMas Corp.*,
5
  No. CV 16-686-MWF, 2021 U.S. Dist. LEXIS 82647
6
  (C.D. Cal. Apr. 27, 2021) ...................................................................... 11, 12

7

*AmeriPride Servs. v. Tex. E. Overseas, Inc.*,
  *supra*, 782 F.3d at 479 ............................................................... 5, 6, 8, 10
8

*Arizona v. City of Tucson*,
9
  761 F.3d 1005 (9th Cir. 2014) ................................................................... 4

10

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
11
  287 F. Supp. 2d 1118 (C.D. Cal. 2003) ..................................................... 5

12

*City of Los Angeles v. San Pedro Boat Works*,
13
  635 F.3d 440 (9th Cir. 2011) ................................................................. 1, 4

14

*Cooper Drum Cooperating Parties Grp. v. Am. Polymers Corp.*,
15
  No. CV 19-03007-AB, 2020 U.S. Dist. LEXIS 87319
16
  (C.D. Cal. May 13, 2020) .......................................... 2, 9, 10, 11, 14

*Coppola v. Smith*,
17
  No. 1:11-CV-1257 AWI BAM, 2017 U.S. Dist. LEXIS 170002
18
  (E.D. Cal. Oct. 13, 2017) ......................................................................... 11

19

*Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*,
20
  632 F.3d 1056 (9th Cir. 2011) ................................................................. 12

21

*Maxim I Props. v. Krohn*,
22
  No. 12-cv-00449-DMR, 2022 U.S. Dist. LEXIS 171780
  (N.D. Cal. Sep. 22, 2022) ............................................ 1, 7, 9, 12, 13, 14
23

*McDermott, Inc. v. Amclyde*,
24
  511 U.S. 202, 114 S. Ct. 1461 (1994) ..................................................... 10

25

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
26
  No. 2:18-cv-06825-SB, 2020 U.S. Dist. LEXIS 24 7994
27
  (C.D. Cal. Nov. 16, 2020) .......................................................................... 4

28

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-ii-

**Page(s)**

**FEDERAL CASES (CONT.)**

*U.S. v. SCA Servs.,*
    827 F. Supp. 526 (N.D. Ind. 1993) ........................................................................ 5

**STATE CASES**

*City of Grand Terrace v. Super. Ct.,*
    192 Cal. App. 3d 1251 (1987) ............................................................................... 12

*Fullerton Redevelopment Agency v. S. Cal. Gas Co.,*
    183 Cal. App. 4th 428 (2010) ............................................................................... 12

*Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.,*
    38 Cal. 3d 488 (1985) ............................................................. 1, 9, 11, 12, 13, 14

**FEDERAL STATUTES**

42 U.S.C. (Comprehensive Environmental Response, Compensation,
    and Liability Act of 1980 (CERCLA))
    sections 9601–9675 .............................................................................................. 1
    section 9607 ........................................................................................................... 2
    section 9607(a) ................................................................................................. 5, 6
    section 9607(a)(B) ................................................................................................. 6
    section 9613 ........................................................................................................... 2
    section 9613(f)(1) ............................................................................ 5, 6, 7, 9, 10

**STATE STATUTES**

Code of Civil Procedure
    section 877 ............................................................................................. 11, 12, 13
    section 877.6 ............................................................................................... 11, 12
    section 877.6(c) .................................................................................................. 13

**REGULATIONS**

40 CFR (Code of Federal Regulations)
    sections 300.400 et. seq. ...................................................................................... 1

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-iii-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Page(s)**

**OTHER AUTHORITIES**

Uniform Comparative Fault Act (UCFA)
    section 6 .................................................................................................. 9, 10, 11

Uniform Contribution Among Tortfeasors Act (UCATA)
    section 4 .................................................................................................. 9, 10, 11

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
18641257.6 a12/30/22

-iv-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff L.A. Terminals, Inc. ("LAT") and Third-Party Defendant Soco West Inc. ("Soco"), oppose Intervenor Wausau General Insurance Company's ("Wausau") motion for an order approving the settlement between it and Defendants the City of Los Angeles ("City"), Occidental Chemical Corp. ("Occidental") and Union Pacific Railroad Company ("Union Pacific"), to settle all claims against Ash-Cross Evans Corporation ("ACE").  LAT and Soco oppose the settlement because the agreement: (1) is not fair, reasonable or consistent with the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601–9675; and (2) fails to satisfy the good-faith standards under *Tech-Bilt, Inc. v. Woodward-Clyde & Assoc.*, 38 Cal. 3d 488 (1985) ("*Tech-Bilt*").

Specifically, the settlement agreement is not fair, reasonable, or consistent with CERCLA's primary purpose "*to ensure the prompt and effective cleanup of waste disposal sites*" (*City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 447 (9th Cir. 2011)), because there are no assurances in the settlement that the Wausau funds will be expended on response costs that are necessary and consistent with the federal National Contingency Plan (40 CFR § 300.400 et. seq. - "NCP"), nor is there any indication as to who is to receive and control the funds, nor how the funds are to be expended.  In short, there are no assurances of any kind in the settlement that the funds to be paid by Wausau to some undisclosed entity, will "*further CERCLA's policy aims*."  (*Maxim I Props. v. Krohn*, No. 12-cv-00449-DMR, 2022 U.S. Dist. LEXIS 171780 (N.D. Cal. Sep. 22, 2022), at *41.)

Second, the Court should deny the motion on the grounds there is no allocation of the proceeds to the three settling "plaintiffs," and on the grounds there is no rough approximation of the "plaintiffs'" total recovery, nor of Wausau's insured's proportionate liability, nor of the exposure of any non-settling parties such as LAT or Soco, all of which is required under *Tech-Bilt*.  (38 Cal.3d at 499.)

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-1-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1   Correspondingly, there is no basis to calculate the credit due to the non-settling

2   parties.  (*Cooper Drum Cooperating Parties Grp. v. Am. Polymers Corp.*, No. CV

3   19-03007-AB (FFMx), 2020 U.S. Dist. LEXIS 87319, at *28 (C.D. Cal. May 13,

4   2020) ["*The Ninth Circuit has indicated that when courts approve bar orders, they*

5   *should employ a 'proportionate share' rule at trial to ensure that the non-settling*

6   *parties are only held liable for their respective share of any fault.*"].)

7   **II.     STATEMENT OF FACTS**

8          On January 22, 2018, the City filed an action in the Los Angeles County

9   Superior Court against LAT and later amended its complaint to add Occidental, Ash

10   Cross Evans Corporation (Wausau's insured), Olympic Chemical Corporation

11   ("Olympic"), Union Oil Company of California ("Union Oil"), Phillips 66 Company

12   ("Phillips"), Union Pacific and Soco.  In its complaint, the City predominantly seeks

13   damages for the cleanup of the subject Sliver Site in the Port of Los Angeles.

14   ("State Court Action"; Exhs. B & M to Wausau's Appendix of Exhibits

15   ("Appendix".)  On August 6, 2018, LAT then filed this federal action against the

16   City and Occidental seeking cost recovery and declaratory relief under sections

17   9607 and 9613 of CERCLA for the investigation and cleanup of the subject

18   contamination.  ("Federal Action"; Exh. C to Appendix.)  LAT filed its First

19   Amended Complaint on March 20, 2019 to bring in Union Pacific, who held an

20   ownership interest in the Sliver Site until 1986 and throughout the time of

21   Occidental's operations from 1949 until 1979.  (Exh. D to Appendix.)

22          Since the filing of LAT's original Complaint, multiple counter-claims, cross-

23   claims and third-party complaints have been filed and answered in the Federal

24   Action.  In addition to LAT's First Amended Complaint, the City and Occidental

25   have filed counter-complaints, cross-complaints and third-party complaints.  Union

26   Pacific has also filed counter-claims and a cross-complaint, as have Phillips and

27   Union Oil.  To date, approximately 21 counter-claims, cross-claims and third-party

28   complaints, including various amendments thereto, have been filed in this Federal

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22                                    -2-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1  Action, including a third-party complaint filed by the City against ACE and Soco on

2  December 19, 2018, a third-party complaint filed by Occidental against ACE and

3  Soco on December 19, 2018, and counterclaims and cross-claims filed by Union

4  Pacific against ACE and Soco on March 8, 2019.  (Montevideo Decl., ¶ 7; *also see*

5  Exhs. E-J to Appendix.)

6          The City, Occidental, Union Pacific, and Wausau have reached a settlement

7  agreement to settle all claims against ACE for $250,000.  However, the settlement

8  agreement contains no provisions to ensure that the Wausau settlement funds will be

9  expended on investigation and remedial measures that are necessary and consistent

10  with the requirements of CERCLA and the federal National Contingency Plan

11  ("NCP").  Nor is there any settlement term describing the allocation of the funds to

12  the three settling "plaintiffs," or where the funds are to be paid and held, or who

13  decides how they are to be expended.  Instead, the settlement agreement contains the

14  following barebones explanation of how the Wausau funds are to be expended:

15                  For the benefit of ACE, Wausau shall deposit the sum of
                    Two Hundred and Fifty Thousand U.S. Dollars
16                  ($250,000.00 USD) ("Settlement Payment") directly into
                    an escrow account to be designated by Claimants. The
17                  Settlement Payment is to be used by Claimants at their
                    sole collective discretion for the investigation and/or
18                  remediation of halogenated volatile organic compound
                    (HVOC) contamination at the Sliver Site.
19

20  (Exh. A to Appendix, p. 7, § 2(a).)

21          In short, although the purpose of the settlement payment is to be used for the

22  "investigation and/or remediation" of the halogenated volatile organic compound

23  (HVOC) contamination at the Sliver Site, there is no information on who the money

24  is to be paid to, who will be holding the funds, and how the funds are to be allocated

25  or expended, and nor are there any parameters imposed on the expenditures.  There

26  are also no safeguards in place to ensure the funds are expended for cleanup

27  purposes, and no assurances in the settlement agreement that the money will

28  actually be expended on the investigation and/or cleanup of the property itself.  All

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-3-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1   of these unknowns suggest that the non-settling parties like LAT and Soco, will

2   receive no credit in terms of reduced contribution for any portion of the cleanup

3   costs ultimately to be expended.

4   **III.**   **LEGAL ARGUMENT**

5       **A.**   <u>**CERCLA Good Faith Settlements**</u>

6       CERCLA's two primary goals are: "'*(1) to ensure the prompt and effective*

7   *cleanup of waste disposal sites, and (2) to assure that parties responsible for*

8   *hazardous substances [bear] the cost of remedying the conditions they created.*'"

9   (*City of L.A. v. San Pedro Boat Works*, 635 F.3d 440, 447 (9th Cir. 2011).) "*In*

10   *deciding whether to approve a settlement, the court's overarching duty is to*

11   *determine whether the settlement is 'fair, reasonable and consistent with the*

12   *objectives of CERCLA.*'" (*Santa Clarita Valley Water Agency v. Whittaker Corp.*,

13   No. 2:18-cv-06825-SB (RAOx), 2020 U.S. Dist. LEXIS 24 7994, at *6 (C.D. Cal.

14   Nov. 16, 2020), quoting *U.S. v. Montrose*, 50 F.3d 741, 743 (9th Cir. 1995).)

15       To approve a CERCLA settlement, "*a district court must find that the*

16   *agreement is 'based upon, and roughly correlated with, some acceptable measure of*

17   *comparative fault, apportioning liability among the settling parties according to*

18   *rational (if necessarily imprecise) estimates of how much harm each [potentially*

19   *responsible party] has done.*'" (*Arizona v. City of Tucson*, 761 F.3d 1005, 1012 (9th

20   Cir. 2014).) In doing so, the district court must "*independently scrutinize the terms*

21   *of [the agreement],*" "*gauge the adequacy of settlement amounts to be paid by*

22   *settling [parties by comparing] the proportion of total projected costs to be paid by*

23   *the settlors with the proportion of liability attributable to them, and then . . . factor*

24   *into the equation any reasonable discount for litigation risks, time savings, and the*

25   *like ....*'" (*Id*. at 1012.) "*A district court abuses its discretion where it does not*

26   *fulfill its obligation to engage in this comparative analysis*." (*Id*.)

27   / / /

28   / / /

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-4-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

**B.**  **The Settlement Agreement Is Not In Good Faith Because There Are No Terms Ensuring The Funds Will Be Expended To Comport With CERCLA's Policy Objectives**

The Wausau settlement is not consistent with the CERCLA and the NCP because there are no assurances that the proceeds from the settlement will be used to fund a CERCLA-quality investigation and cleanup of the property, rather than being squandered on other costs, such as legal or other advocacy costs.  In *U.S. v. SCA Servs.*, 827 F. Supp. 526 (N.D. Ind. 1993), the district court held: "*In all Superfund litigation before this court, as much of the PRP's environmental liability response resources as are necessary and appropriate will be spent cleaning up hazardous waste sites; inordinate amounts of those resources will not be spent on legal fees and related costs not directly associated with remedying the sites*."  (*Id.* at 532.)

CERCLA gives "*the federal government broad authority to require responsible parties to clean up contaminated soil and groundwater*."  (*AmeriPride Servs. v. Tex. E. Overseas, Inc.*, *supra*, 782 F.3d at 479.)  "*The NCP is a plan promulgated by the EPA that delineates specific steps private parties must take in selecting a remedial action plan and cleaning up hazardous waste*."  (*Carson Harbor Vill., Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1152 (C.D. Cal. 2003).)  "*Under EPA regulations, private response action is 'consistent with the NCP" if the action, evaluated as a whole, is in "substantial compliance' with certain procedural requirements, and results in a 'CERCLA-quality cleanup.'"*  (*Id.*)

"*To prevail in a private cost recovery action under § 9607(a), a plaintiff must establish, among other things, that the release of a hazardous substance 'caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan.'"*  (*AmeriPride*, 782 F.3d at 489.)

"*A party liable under § 9607(a) may bring a contribution action under § 9613(f)(1), which permits courts to allocate 'response costs' among liable parties. Such a plaintiff may seek contribution 'from any other person who is liable or*

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-5-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1   *potentially liable' under § 9607(a).  The liability of the defendant in the contribution*

2   *action is therefore also defined by § 9607(a)*."  (*Id*. at 489-490.)

3   In reading sections 9607(a) and 9613(f)(1) of CERCLA, the Ninth Circuit has

4   concluded that, "*when a private plaintiff who incurred liability under § 9607(a)(B)*

5   *for a third party's response costs seeks contribution under § 9613(f)(1) for such*

6   *costs, the only response costs recoverable from the defendant in the contribution*

7   *action **are those that were necessary and consistent with the NCP**.  Accordingly, if*

8   *a party who was liable under § 9607(a) entered into a settlement agreement to*

9   *discharge its CERCLA liability to a third party**, it can seek contribution under §***

10  ***9613(f)(1) only for the settlement costs that were for necessary response costs***

11  ***incurred consistent with the NCP***."  (*Id.* at 490, emphasis. added)

12  According to the Ninth Circuit: "*Indeed, allowing a party to recover*

13  *settlement money in a contribution action under § 9613(f)(1) without first requiring*

14  *the party to prove that the settlement reimbursed the recipient for necessary*

15  *response costs incurred consistent with the NCP could produce incongruous*

16  *results.*"  (*Id.*)  Apropos to the Wausau settlement in this case, the Ninth Circuit in

17  *AmeriPride* then held that: "*the district court erred in failing to determine the extent*

18  *to which the amounts paid by AmeriPride to Cal–Am and Huhtamaki **were incurred***

19  ***consistent with the NCP***."  (*Id.,* emphasis added.)

20  In this Federal Action, neither the City, nor Occidental, nor Union Pacific,

21  have alleged they have incurred any response costs under CERCLA that are

22  necessary and consistent with the NCP, and thus none of the settling "plaintiffs"

23  have sought, in their respective third-party complaints/cross-complaints, to recover

24  their own response costs under CERCLA.  Accordingly, how the settlement funds

25  would be allocated to the contribution percentages of the City, Occidental and/or

26  Union Pacific, and what checks and balances are to be imposed to ensure these

27  funds are expended on cleanup costs that are necessary and consistent with the NCP,

28  are critically important to understanding whether the settlement is one that is in

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22                              -6-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1   good faith.  Yet, none of this information is provided in the settlement agreement.

2   In *Maxim I Props. v. Krohn*, *supra*, 2022 U.S. Dist. LEXIS 171780, the

3   district court ruled the settlement agreement there, was not fair, reasonable, or

4   consistent with CERCLA.  The court determined that the agreement did not fulfill

5   CERCLA's statutory purpose because it did not advance the cleanup of the

6   contaminated property.  (*Id*. at 40.)  According to the District Court: "*An Agreement*

7   *that entails no remediation and instead provides for reimbursement of litigation*

8   *expenses fails to further CERCLA's policy aims*."  (*Id.* at 41.)

9   Here, similarly, LAT and Soco oppose the settlement agreement because

10  there are no assurances that the funds will actually be expended on a CERCLA-

11  quality investigation and/or cleanup of the property, rather than on legal or technical

12  advocacy fees and other costs.  The settlement agreement simply states: "*The*

13  *Settlement Payment is to be used by Claimants **at their sole collective discretion** for*

14  *the investigation and/or remediation of halogenated volatile organic compound*

15  *(HVOC) contamination at the Sliver Site*."  (Exh. A to Appendix, p. 7, § 2(a);

16  emphasis added.)

17  Thus, there is no information in the settlement on how the money is to be

18  allocated among the City, Occidental or Union Pacific, who will hold the funds, and

19  how the funds will be expended; nor are there any parameters to regulate the

20  expenditures.  To the contrary, the settlement funds may be expended by the settling

21  claimants "***at their sole collective discretion** for the investigation and/or*

22  *remediation*," without any obligation to expend the funds in a manner that is

23  necessary and consistent with the NCP.

24  Specifically missing are any safeguards to ensure the funds are expended in

25  accordance with the NCP to achieve a CERCLA-quality cleanup.  "*Indeed, allowing*

26  *a party to recover settlement money in a contribution action under § 9613(f)(1)*

27  ***without first requiring the party to prove that the settlement reimbursed the***

28  ***recipient for necessary response costs incurred consistent with the NCP could***

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
18641257.6 a12/30/22                                    -7-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1   ***produce incongruous results***.” (*AmeriPride*, 782 F.3d at 490., emphasis added.)

2        The settlement here lacks any specificity as to how the funds will be used to

3   investigate or remediate the property; which third-party plaintiff, *i.e.*, the City,

4   Occidental or Union Pacific (all of whom are co-defendants in this action and all of

5   whom are adverse to each other), will hold and be expending the funds, and most

6   importantly, what measures will be in place to ensure the funds will be expended on

7   response costs under CERCLA that are necessary and consistent with the NCP.

8        In particular, recent correspondence between the parties in this action

9   illustrate the need for specific settlement terms setting forth who will be holding and

10  expending the funds, and the importance of particular terms to ensure that the funds

11  are expended on CERCLA response costs that are necessary and consistent with the

12  NCP.  Specifically, on October 28, 2022, in accordance with the requirements of the

13  recent Cleanup and Abatement Order (“CAO”) issued by the California Regional

14  Water Quality Control Board, Los Angeles Region (“Regional Board”) (on July 7,

15  2022), Plaintiff LAT submitted a Site Conceptual Model (“SCM Report”) for the

16  halogenated volatile organic compounds (“HVOC”) contamination (see Exh. 1 to

17  the Declaration of Richard Montevideo in support thereof – which is a copy of

18  LAT’s Consultant’s transmittal letter of the SCM Report to the Regional Board).

19       On November 21, 2022, the City submitted a series of comments on LAT’s

20  SCM Report, to the Regional Board (Exh. 2), all of which were critical of the

21  analysis in LAT’s SCM Report (*See e.g.*, Exh. 2, p. 1 [“*Section 3.3 should more*

22  *clearly identify HVOC distribution throughout the entire Los Angeles Marine*

23  *Terminal (LAMT), including both the Sliver Site and the adjacent tank farm*”]).

24       Conversely, on December 9, 2022, Occidental submitted its comments on

25  LAT’s SCM Report, but contrary to the City’s highly critical comments, Occidental

26  generally agreed with LAT’s SCM Report.  (Exh. 3 [“*Occidental generally concurs*

27  *with the SCM’s other finding and agrees that there is sufficient understanding of the*

28  *nature and extent of HVOC impacts to support a remedy*.”]).

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22                                    -8-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1    Given the disagreements among the settling "plaintiffs" themselves over the

2   investigation and remedial approach being proposed by LAT, with general

3   concurrence by Occidental, but significant criticism by the City, and given the lack

4   of any detail in the Wausau settlement on who is to be controlling the funds, how

5   the funds are to be expended, and whether the funds are to be limited to

6   expenditures that are necessary and consistent with the NCP, there is insufficient

7   information to conclude at this time that the Wausau settlement is a good faith

8   settlement that will further the policy goals of CERCLA.

9    Nothing in the settlement agreement answers the fundamental question of

10   who will receive the settlement funds, how will the funds be expended, and whether

11   they will be expended on response costs that are necessary and consistent with the

12   NCP, or whether they are to be spent on advocating particular technical positions of

13   the City of LA and/or to otherwise undermine the technical positions that have been

14   or will be asserted by LAT, including such as implementing the terms of LAT's

15   more recently submitted Site Assessment Workplan for HVOCs ("LAT HVOC

16   Workplan" - *see* <u>Exh. 4</u> hereto - LAT's Consultant's Cover letter dated November

17   30, 2022 to the Regional Board transmitting the LAT HVOC Workplan).  In short,

18   there are no assurances of any kind that the settlement funds to be paid by Wausau

19   to some undisclosed entity, will "*further CERCLA's policy aims*."  (*Maxim I Props.*

20   *v. Krohn*, *supra*, 2022 U.S. Dist. LEXIS 171780, at \*41.)

21    **C.**   <u>**The Settlement Agreement Fails to Satisfy the Good Faith**</u>

22       <u>**Standard under**</u> **_Tech-Bilt_**

23    "*When a settlement is reached in a CERCLA contribution case, like this one,*

24   *a court has the discretion under 42 U.S.C. § 9613(f)(1) to determine the most*

25   *equitable method of accounting for settlements between private parties*."  (*Cooper*

26   *Drum*, *supra*, 2020 U.S. Dist. LEXIS 87319, at \*28, citing *AmeriPride Servs. v. Tex.*

27   *E. Overseas, Inc.*, 782 F.3d 474, 487 (9th Cir. 2015) (*AmeriPride*).)  A district court

28   may use either § 6 of the Uniform Comparative Fault Act (UCFA) or § 4 of the

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-9-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

Uniform Contribution Among Tortfeasors Act (UCATA).  (*Id.* at \*28.)  "*Although courts have discretion to choose a method to allocate liability to nonsettling defendants in private-party contribution actions under CERCLA, they must exercise this discretion in a manner consistent with § 9613(f)(1) and the purposes of CERCLA*."  (*Id.*)  Courts have looked to the UCFA and the UCATA because CERCLA is silent on how to allocate settlement proceeds when the settlement is between private parties.  (*AmeriPride*, 782 F.3d at 483.) "*The UCFA and the UCATA are model acts ... that advocate competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability*."  (*Id.*)

The UCFA uses the proportionate share approach and "*provides that when an injured party settles with one of multiple tortfeasors, the settlement does not discharge the nonsettling tortfeasors **but reduces the injured party's claims against them by the amount of the settling tortfeasor's proportionate share of the damages**... The nonsettling tortfeasors will be responsible only for their proportionate share of the costs, even if the settling tortfeasor settles for less than its fair share of the injury*."  (*Id.,* emphasis added.)  In contrast, "[*t*]*he UCATA pro tanto approach provides that when an injured party settles with one of two or more tortfeasors for the same injury, the settlement does not discharge the nonsettling tortfeasors but reduces the injured party's claims against them by the dollar value of the settlement*."  (*AmeriPride*, 782 F.3d at 484.)  "*If settling tortfeasor settles for less than its proportionate share of the injury, the nonsettling tortfeasors will end up paying more than their proportionate share*." (*Id.*)

Recognizing this potential unfairness, courts and legislatures have required good-faith hearings as a remedy.  "*When such hearings are required, the settling defendant is protected against contribution actions **only if it shows that the settlement is a fair forecast of its equitable share of the judgment**.*"  (*McDermott, Inc. v. Amclyde*, 511 U.S. 202, 213, 114 S. Ct. 1461, 1467 (1994), emph. added.)

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-10-

Case No. 2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

1   In the present action, Wausau has not directly addressed whether the UCFA

2   or the UCATA should be applied in allocating the settlement, but implicitly suggests

3   that the UCATA should be applied by relying primarily on California Code of Civil

4   Procedure ("CCP") sections 877 and 877.6.  "*The pro tanto method is the method of*

5   *[CCP] § 877 and § 4 of UCATA*."  (*Coppola v. Smith*, No. 1:11-CV-1257 AWI

6   BAM, 2017 U.S. Dist. LEXIS 170002, at *20 (E.D. Cal. Oct. 13, 2017) (*Coppola*).)

7   In this case, however, the Court should apply the UCFA proportionate share

8   approach because: "*The Ninth Circuit has indicated that when courts approve bar*

9   *orders, they should employ a 'proportionate share' rule at trial to ensure that the*

10   *non-settling parties are only held liable for their respective share of any fault*."

11   (*Cooper Drum*, supra, 2020 U.S. Dist. LEXIS 87319, at *28, citing *AmeriPride*

12   *Servs.*, 782 F.3d at 484 ("*We have generally favored the UCFA proportionate share*

13   *approach when construing federal statutes that authorize contribution*").)

14   "'*To determine whether a settlement has been reached in good faith and in*

15   *turn whether a bar order is proper, federal courts in California have borrowed the*

16   *substantive criteria articulated in Tech-Bilt, Inc.*'"  (*Cooper Drum.*, supra, 2020

17   U.S. Dist. LEXIS 87319, at *18.)  Under CCP sections 877 and 877.6, a settlement

18   is in "good faith" if it is "*within the reasonable range of settling tortfeasor's*

19   *proportional share of comparative liability for the plaintiff's injuries*."  (*Tech-Bilt*,

20   38 Cal.3d 488, 499 (1985) (*Tech-Bilt*).)

21   Notably, the factors considered in determining whether a settlement is in

22   "*good faith*" under §§ 877 and 877.6 are similar to factors considered by federal

23   courts in finding a CERCLA settlement to be fair, reasonable and adequate.  (*Alisu*

24   *Invs., Ltd. v. TriMas Corp.*, No. CV 16-686-MWF (PJWx), 2021 U.S. Dist. LEXIS

25   82647, at *9 (C.D. Cal. Apr. 27, 2021), citing *Coppola v. Smith*, supra, 2017

26   U.S.Dist.LEXIS 170002, at *15.) "*Both sets of factors/considerations take into*

27   *account the amount of the settlement, the settlor's proportionate share of liability,*

28   *claims and defenses, financial conditions, and the recognition that there is a benefit*

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
18641257.6 a12/30/22

-11-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

*to settling by saving resources and litigation expenses.  [Citation.]  Given the similarities, it is difficult to envision a settlement that is in 'good faith but not fair, reasonable, and adequate, or vice versa*."  (*Id.*)  As such, the court examined whether the settlement was made in "*good faith*" under §§ 877 and 877.6 as part of its analysis of whether the settlement of the CERCLA claims is fair, adequate, and reasonable.  (*Id*. at \*10.)

Significantly, the good faith requirement, "*which a settling defendant must satisfy to invoke the statutory bar against indemnity claims, was imposed primarily to protect the interests of non-settling defendants*."  (*City of Grand Terrace v. Super. Ct.*, 192 Cal. App. 3d 1251, 1263 (1987).)  In determining if a settlement is in "good faith" under sections 877 and 877.6, the court may consider the following factors from *Tech-Bilt*:  (1) a rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount to be paid in settlement; (3) the allocation of settlement proceeds among the plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; (5) the financial conditions and insurance policy limits of the settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants.  (*Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1064 (9th Cir. 2011); *Tech-Bilt*, 38 Cal.3d at 499.)  If the settlement is "in good faith," sections 877 and 877.6 shield the settling party from for contribution/indemnity claims by the non-settling tortfeasors.  (*Fullerton Redevelopment Agency v. S. Cal. Gas Co.*, 183 Cal. App. 4th 428, 432 (2010).)

In *Maxim I Props. v. Krohn*, *supra*, 2022 U.S. Dist. LEXIS 171780,  the district court found the settlement agreement failed to satisfy the good faith standard under *Tech-Bilt* because the settling parties did not adequately show that the plaintiff's recovery under the settlement is reasonably proportional to settling party's liability, especially in light of the prejudicial impact on the non-settling parties in the case and in the DTSC enforcement action.  (*Id*. at \*21-22.)  The court

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
18641257.6 a12/30/22

-12-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

noted that the agreement (1) reimburses the plaintiff for its fees and costs, but none of the settlement funds would go towards remediating the property; (2) relieves the settling party of the responsibility to contribute to the remediation of the property even though it was likely a major source of the contamination; (3) bars non-settling parties from seeking contribution from the settling party; and (4) effectively prevented other potentially responsible parties from seeking contributions in the DTSC action because the settling party will have depleted its assets in satisfying the settlement.  (*Id*. at *22.)  The court ruled the settlement agreement "*contravenes the goals of good faith and equitable cost-sharing at the heart of Sections 877 and 877.6(c) because "none of the settlement funds will go toward actual remediation, leaving the Non-Settling Parties 'holding the bag' while Plaintiff recoups most if not all of its costs, and Moyer can wash its hands of the situation*." (*Id*. at *22-23.)

In the present action, Wausau, the insurer for ACE, failed to provide any evidence regarding how the settlement proceeds are to be allocated to the City's, Occidental's and/or Union Pacific's exposures, versus the non-settling parties' exposures such as LAT and Soco.  Thus, it fails to comport with an essential element of a "good faith" settlement under *Tech Bilt, i.e.*, the allocation of settlement proceeds among the plaintiffs. ( *Tech-Bilt*, 38 Cal.3d at 499.)  As mentioned, there is no indication as to how much of the settlement funds are to be allocated amongst each of the settling "plaintiffs".

Second, in the present motion, there is no analysis of the overall alleged exposure on the part of ACE, but rather only an analysis of Wausau's exposure as an insurer of ACE for a total of five months representing the five months that the Wausau insurance policy was in effect.  (Mot., p. 9:2-6.)  There is thus no attempt to calculate ACE's proportionate liability, nor is there any evidence regarding the exposure (or credit) to be attributed to any of the non-settling parties such as Third-Party Defendant/Cross-defendant Soco, nor of Plaintiff LAT.  "*To evaluate the Agreement's proportionality, the court must therefore assess the overall exposure to*

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
18641257.6 a12/30/22

-13-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT

*liability, how much of that exposure is attributable to [the settling party] versus to the Non-Settling Parties, and how proportional [the settling party's] settlement amount is to its responsibility for the environmental contamination of the Property.*" (*Maxim I Props. v. Krohn*, No. 12-cv-00449-DMR, 2022 U.S. Dist. LEXIS 171780, at *24-25 (N.D. Cal. Sep. 22, 2022).)

Using Wausau's mathematical analysis, ACE occupied the property for two years from 1979 to 1981, and hence occupied the property for 2.739726% of the 73-year span (2 ÷ 73 x 100).  Assuming the City's alleged remediation costs of $68,000,000 (which both LAT and Soco vigorously dispute), ACE's proportional liability would be **$1,863,013.70** (2.739726% x $68,000,000.)

Without knowing how the settlement funds are to be allocated to the settling "plaintiffs," or how the payment has any connection to ACE's exposure to liability, versus LAT's and Soco's alleged exposure to liability, nor the corresponding credit to be assigned to LAT and Soco, there is no basis under *Tech-Bilt* to find that the settlement is in good faith.  (*See e.g., Cooper Drum*, *supra*, 2020 U.S. Dist. LEXIS 87319, at *28 ["*The Ninth Circuit has indicated that when courts approve bar orders, they should employ a 'proportionate share' rule at trial to ensure that the non-settling parties are only held liable for their respective share of any fault.*"].)

## IV.   **CONCLUSION**

Based on the foregoing, Plaintiff LAT and Third-party Defendant/Cross-Defendant Soco respectfully request that the Court deny Wausau's motion to approve the settlement agreement because, as currently written, it cannot be found to be fair, reasonable or consistent with CERCLA.

Dated:  December 30, 2022                    RUTAN & TUCKER, LLP

By: _____
Richard Montevideo
Attorneys for Plaintiff
L.A. TERMINALS, INC. and Third-Party Defendant SOCO WEST, INC.

Rutan & Tucker, LLP
*attorneys at law*

227/021204-0021
18641257.6 a12/30/22

-14-

Case No.  2:18-CV-06754-MWF-PVC
OPPOSITION TO MOTION FOR ORDER
APPROVING SETTLEMENT AGREEMENT