Richard Montevideo (State Bar No. 116051)
rmontevideo@rutan.com
Travis Van Ligten (State Bar No. 301715)
tvanligten@rutan.com
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA  92612
Telephone:  714-641-5100
Facsimile:  714-546-9035

Attorneys for Plaintiff
L.A. TERMINALS, INC.
Third Party Defendant Soco West, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. TERMINALS, INC., a California corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY OF LOS ANGELES, a Municipal corporation, and OCCIDENTAL CORPORATION, a New York corporation and UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation,<br><br>    Defendant.<br><br>AND RELATED COUNTERCLAIMS, CROSSCLAIMS AND THIRD-PARTY COMPLAINTS. | Case No. 2:18-CV-06754-MWF-PVC<br><br>Assigned for All Purposes to:  Hon. Michael W. Fitzgerald<br><br>**SUMMARY OF DIRECT TESTIMONY ON BEHALF OF PLAINTIFF L.A. TERMINALS, INC. AND THIRD PARTY DEFENDANT SOCO WEST, INC.**<br><br>Pre-Trial Conference: February 13, 2023<br>Date Action Filed: August 6, 2018<br>Trial Date: March 14, 2023 |

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-1-

Case No.  2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

Plaintiff L.A. TERMINALS, INC. ("Plaintiff" or "LAT") and Third Party Defendant Soco West, Inc. ("Soco") hereby lodge their summaries of direct testimony, pursuant to this Court's Scheduling Order. Dkt. 291.

## I. PRELIMINARY STATEMENT

Plaintiff and Soco intend to call the following witnesses at trial, but the following list does not include witnesses that may become necessary for impeachment or rebuttal purposes. Summaries of the witnesses listed below were also provided by Plaintiff's and Soco's previously filed witness list (Dkt. 397), which was submitted pursuant to Local Rule 16-5. Portions, or in some cases, all of the testimony of the listed witness may be offered through deposition transcripts. Those witnesses listed below with an * will only be called if the need arises.

## II. SUMMARIES OF ANTICIPATED DIRECT TESTIMONY OF PLAINTIFF'S AND SOCO'S WITNESSES

**1. Suda Arakere**. Mr. Arakere is employed by Glenn Springs Holdings, Inc. but testified in deposition as a Federal Rule of Civil Procedure ("FRCP") 30(b)(6) witness on behalf of Defendant Occidental Chemical Corporation ("Occidental" or "Oxy"). The elicited testimony will concern the following topics: the historical operations of Occidental and its predecessor in interest (Hooker Electro-Chemical Company and/or Hooker Chemical Company - collectively, "Hooker" [Hooker and Occidental are hereafter collectively referred to as "Occidental," "Oxy" or "Hooker/Oxy"] on the property located in and around the "Sliver Site" (a .74 acre narrow piece of property located within the Port of Los Angles with the common address of 560 Pier "A" Place, Wilmington, CA), and on the adjacent railroad area to the Sliver Site (the "Sliver Adjacent Area"), and on that property generally located on property previously referred to as 953 Pier A Street, Wilmington, CA, and commonly referred to as "Berth 155A" (the Sliver Site and the Sliver Adjacent Area are collectively referred to herein as the "Sliver/Adjacent Area"); and Occidental's position and related correspondence concerning LAT's

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-2-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

1 various environmental analyses and proposed environmental assessment,
2 investigation and removal/remedial action work (hereafter, "LAT's Environmental
3 Work") within the Sliver/Adjacent Area and within that property consisting of the
4 approximately 13.5 acres that surrounds the Sliver/Adjacent Area ("Marine Oil
5 Terminal" - which is currently operated on by Third Party Defendant Phillips 66
6 Company ["Phillips"]).

7     **2.** **Kurt Berchtold, P.E.** (Expert) – Mr. Berchtold is a designated expert
8 of LAT and Soco, he is a licensed Registered Civil Engineer with the State of
9 California, and is the former Executive Officer of the California Regional Water
10 Quality Control Board for the Santa Ana Region. Mr. Berchtold's testimony will
11 concern the following topics: the propriety of the remedial action objectives
12 ("RAOs") for the halogenated volatile organic compounds ("HVOCs") known as
13 trichloroethylene ("TCE"), perchloroethylene or tetrachlorethylene (hereafter,
14 "PCE") and 1,1,1 trichlorethane ("1,1,1 TCA"), as discussed in the various
15 submittals to the California Regional Water Quality Control Board, Los Angeles
16 Region ("Regional Board") by Plaintiff LAT, and the consistency of LAT's
17 proposed RAOs and other cleanup standards and remedial goals proposed by LAT,
18 with California law and established regulatory mandates which Mr. Berchtold has
19 immense experience in due to his prior role as an Executive Director.

20     **3.** **Leean Craven**, Ms. Craven is a long-time former employee (early
21 1984 to early 2000s) of the company known as Holchem, Inc. ("Holchem"). Soco is
22 the successor in interest to Holchem. Ms. Craven's testimony will concern the
23 following topics: the HVOC chemicals that Holchem marketed and sold during the
24 time that LAT was operating within the Sliver/Adjacent Area, which specifically
25 were 1,1,1 TCA, PCE and another HVOC chemical known as methylene chloride
26 ("MC"); and that she had never sold the chemical known as TCE or trichlorethylene.

27     **4.** **Jeffrey Dagdigian, Ph.D.** Dr. Dagdigian is a designated expert of
28 LAT and Soco, is the current owner of Waterstone Environmental, Inc.

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-3-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

("Waterstone"), and is a Ph.D. chemist with more than 34 years of experience in environmental investigations, analyses, and remediation of contaminated soil and groundwater.  Dr. Dagdigian's testimony will concern the following topics:

  a) the history and development of the Sliver/Adjacent Area and Berth 155A with the various HVOC tanks and equipment that were installed and used by Occidental and LAT over the years of their operations, along with the types and quantities of chemicals and the nature of Occidental and LAT's operations on the Sliver/Adjacent Area during their time of operation;

  b)  the time of ownership and property interests in the Sliver/Adjacent Area by the City of Los Angeles ("City") and Defendant Union Pacific Railroad Company ("Union Pacific" or "UPRR");

  c) the type, nature and extent of the HVOC contamination in issue, and the footprint and lateral and vertical location of the various HVOC contaminants and their breakdown products;

  d) the location of the HVOC contaminant plumes in relation to the location of the operations conducted by Occidental and LAT, and in relation to the areas within the Sliver/Adjacent Area where various HVOCs were known to have been spilled or released;

  e) the degree of care and training, or lack thereof, in the handling, storage and distribution of chemicals, including in particular HVOCs, that were implemented or not implemented by Occidental and LAT during their respective tenures on the Sliver/Adjacent Area, as well as the types of environmental management programs and policies and health and safety and environmental protection measures that were being implemented or not implemented by Occidental and LAT, inclusive of any spill prevention and control procedures and emergency response and cleanup and notification and reporting procedures;

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-4-

Case No.  2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

f) the nature and sufficiency of the environmental characterization data generated over the past 30 plus years for the HVOC contamination within the Sliver/Adjacent Area and surrounding areas;

g) the potential effect of the City's lack of effort to attempt to mitigate or otherwise remove or remediate the HVOC contamination since having complete control and sole possession of the Sliver/Adjacent Area as of 1993;

h) the technical propriety and soundness of LAT's Environmental Work over the years since 2016, and that it was conducted in accordance with industry standards and regulatory guidance, including, in particular, the Terraphase 2020 *Revised Feasibility Study/Remedial Action Plan for HVOCs* submitted to the Regional Board in August of 2020 ("2020 Revised FS/RAP), and the more recent *Removal Action Work Plan/Interim Remedial Action Plan for HVOCs* submitted to the Regional Board in December of 2022 ("2022 RAW/IRAP"), and that both of these later documents identify and select appropriate and implementable removal and remedial action alternatives for the Sliver/Adjacent Area to address the HVOC contamination in issue, all in accordance with industry standards and regulatory guidance;

i) an analysis of the mass and toxicity of the HVOC contamination in issue, and the likely source or sources of such contamination; and

j) an evaluation of all the underlying documents and scientific and technical data and facts, in their relation to various factors that the Court may consider in allocating response costs to address the HVOC contamination in issue, including in particular, the underlying facts and data involving the parties time of ownership, time of operation, degree of care, and responsibility for chemical mass and chemical toxicity.

5. **Dr. Stanley Feenstra, Ph.D**. Dr. Feenstra is a designated expert of LAT and Soco, and is the President of the environmental consulting firm known as "Applied Groundwater Research, Ltd." Dr. Feenstra holds a bachelor of science degree in earth sciences, a master degree of science, and a doctorate degree in hydrogeology, all from the University of Waterloo, Ontario, Canada. Dr. Feenstra will testify as to the following topics:

a) the production, consumption and uses of TCE, PCE and 1,1,1 TCA from the 1940s to the 1990s, including in particular, information on the Hooker/Oxy Tacoma, Washington facility;

b) an analysis of the reasons for the reduction or phasing out of the production and consumption of HVOCs, focusing on TCE;

c) the history, production and principal uses of TCE from the 1940s to the 1990s;

d) the historical guidance on the handling and disposal of TCE and other HVOCs and chemical products, before and after 1980;

e) an analysis of the followed and/or recommended handling, storage and disposal practices of TCE from the 1940s to the 1990s;

f) an analysis of the evolution of governments' and the public's general knowledge and awareness of the potential adverse impacts to the environment and the health and safety of the public, from the handling and disposal of TCE and other HVOCs and chemicals;

g) an analysis of the numerous permits, approvals and other documents showing the uses of the various above ground storage tanks and related equipment on the Sliver/Adjacent Area and Berth 155A, from 1929 to 1993;

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-6-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

    h) an analysis of the various programs, policies, procedures and other measures implemented at the Sliver/Adjacent Area for the protection of the environmental, and the health and safety of the public and on-site workers, from 1949 to 1993, including but not limited to, chemical spill prevention and control measures, mitigation/cleanup measures, and equipment testing and inspections, as well as vapor detectors, vapor recovery systems, containment systems, and other policies, programs and procedures; and

    i) an assessment of the likely source of the discharged TCE contamination on the Sliver/Adjacent Area.

**6. Frank Friedman, Esq.** Mr. Friedman is a designated expert of LAT and Soco, and is a former United States Justice Department Attorney in what is now known as the Environment and Natural Resources Division of the U.S. Department of Justice.  Mr. Friedman was also the first Director of the Environment, Health and Safety Division of ARCO Chemical Company; the former Manager, External Affairs, within the Occupational and Environmental Protection Division of ARCO; the former Vice President of Environment, Health and Safety of Occidental Petroleum Corporation, and a former Co-Chair of US EPA's Joint Agency Industry Program on Improving Environmental Management.  Mr. Friedman has a bachelor's degree from Columbia College, and a law degree from Columbia Law School, and in 1988 published a book, which is now on its 11th edition, titled the Practical Guide to Environmental Management.  He also testified before the U.S. Senate during the adoption hearing on the adoption of CERCLA.  Mr. Friedman will testify on the following topics:

    a) the evolution of environmental laws/rules/regulations ("Environmental Laws") at the Federal level and in California, from the late 1940s thru to the early 1990s, governing chemical handling and cleanup;

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-7-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

b) the evolution of the development and implementation of environmental management programs in the chemical industry relating to chemical handling, storage and cleanup (hereafter "Environmental Management Programs"), from the 1940's to the early 1990s;

c) the lack of material Environmental Laws existing at the federal and State levels from the 1940s thru the 1960s, and the lack of governmental agency and public awareness of the potential harmful impacts to the environment and the health and safety of workers and the public, from the handling and discharging of chemicals into the environment during this period of time;

d) the lack of industry-wide Environmental Management Programs governing chemical storage, distribution and handling, or spill prevention and control and response measures, from the 1940s thru the 1960s;

e) that material Environmental Management Programs were not being developed for chemical storage, distribution and handling, or spill prevention and control and response, until the late 1970s, with the adoption of CERCLA and the implementing federal regulations to the Resource Conservation and Recovery Act ("RCRA" – 42 U.S.C. § 6901 et seq.).

f) a review of the information in documents and from witnesses involving LAT's operations within the Sliver/Adjacent Area from the early 1980s to the early 1990s, along with an opinion that LAT developed and implemented various Environmental Management Programs and chemical handling and cleanup best management practices that generally met or exceeded the standard of care being followed in the chemical industry during this same period of time.

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-8-

Case No.  2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

7. **Dennis Gerard**, Mr. Gerard is a former Occidental employee who worked at the Sliver/Adjacent Area from 1971 to late 1974/early 1975. Mr. Gerard will testify as to the following topics:

 a) the tanks and equipment and pipelines and related equipment utilized by Occidental on the Sliver/Adjacent Area during his tenure on the property, including the type, size and usage of such equipment;

 b) the types and quantities of chemicals stored and distributed by Oxy from the Sliver/Adjacent Area during Mr. Gerard's tenure;

 c) the process for off-loading and loading of chemical product to and from the above ground tanks and railroad cars within the Sliver/Adjacent Area during Mr. Gerard's tenure on the property;

 d) the chemical handling, storage and disposal practices of Occidental on and around the Sliver/Adjacent Area, including in the dock area;

 e) the occurrence of various spills and releases that occurred during his time of employment and/or that he was advised of by other Occidental employees, that occurred on the Sliver/Adjacent Area;

 f) the lack of environmental programs, policies and procedures concerning chemical handling and spill prevention and control and emergency response and cleanup, by Occidental during his employment on the Sliver/Adjacent Area;

 g) the lack of any training regarding chemical handling and/or spill prevention and control that was provided by Occidental to its employees at the Sliver/Adjacent Area during Mr. Gerard's tenure;

 h) the lack of any formal or informal reporting of chemical spills or releases by Occidental for spills and releases at the Sliver/Adjacent Site, to any governmental agency;

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-9-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

        i)   the lack of any mitigation, removal or cleanup by Occidental, of chemicals spills and releases at the Sliver/Adjacent Area during the time of Mr. Gerard's employment at the property;

8. **Elizabeth Gonzalez, P.E.**, Ms. Gonzalez is a designated expert of LAT and Soco, and is a Principal Engineer and Registered Professional Civil Engineer with Waterstone, with over 30 years of experience as a regulator and an environmental consultant, including prior work experience as a project manager for the California Environmental Protection Agency, Department of Toxic Substances Control ("DTSC"), where she managed various State and Federal Superfund Sites for DTSC, including the remedial investigation, feasibility study and remedial action stages of the cleanup process.  She also has extensive experience with contaminated sites throughout the Los Angeles area, and regularly assists the Los Angeles Unified School District in developing and implementing remediation programs.  Ms. Gonzalez will testify as to the following topics:

        a)   the general framework of the applicable requirements of the federal National Contingency Plan ("NCP" - 40 CFR 300.400 et seq.) to HVOC contamination issues involving the Sliver/Adjacent Area;

        b)   that the costs incurred by LAT in carrying out the LAT Environmental Work, including in performing the various environmental analyses and assessments of the HVOC contamination and Sliver/Adjacent Area, the preparing of the numerous submittals to the Regional Board, inclusive of the site assessment workplans, the feasibility studies, the bench scale study, the proposed removal and remedial action plans, as well as various technical memoranda, correspondence and power point presentations, were all appropriate and reasonable in accordance with and consistent with the NCP and applicable State law requirements and represent reasonable and necessary steps towards a CERCLA-quality clean-up;

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-10-

Case No.  2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

  c) that LAT's incurred response costs of approximately $914,000, are response costs that were incurred in accordance with, and consistent with, the NCP and applicable State law, and are costs that were incurred towards achieving a CERCLA-quality clean-up.

9. * **John Hawkins**.  Mr. Hawkins is employed by Defendant Union Pacific, and gave a deposition as a FRCP 30(b)(6) witness on behalf of Defendant Union Pacific Railroad Company.  LAT and Soco will the following testimony from Mr. Hawkins:

  a) authentication of documents and information on the various lease and track agreements, and other agreements and approvals provided by Union Pacific to Occidental in connection with the Sliver/Adjacent Area;

  b) the economic benefit, in terms of rent, trackage fees, and other charges and fees, that Union Pacific received as a result of the various operations that were conducted on the Sliver/Adjacent Area;

  c) authentication of documents and information regarding Union Pacific's property interest in the Sliver/Adjacent Area, and its prior dispute with the City over ownership, control and the right to collect rents and other fees and charges from Occidental and Ash-Cross-Evans Corporation;

  d) information on the types of chemicals Union Pacific approved to be stored or handled by Occidental on the Sliver/Adjacent Area;

  e) information on the lack of inspections conducted by Union Pacific of Occidental's operations on the Sliver/Adjacent Area;

10. **Charles Hilton**.  Mr. Hilton is a former employee (starting in January 1983 to approximately June of 1988) of Holchem (starting in January 1983 to approximately June of 1988), and was the sales manager and person principally responsible for selling the HVOCs that LAT was storing on the Sliver/Adjacent Area, from 1983, until he left Holchem in 1988 to go to work for another sister

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-11-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

company in Tulsa, Oklahoma. Mr. Hilton will testify on the following topics:

    a) that Holchem was the "sales arm" of LAT only, and never participated in the operations that were being conducted on the Sliver/Adjacent Area, and had no involvement in the storage or loading and/or unloading of any chemical product on the Sliver/Adjacent Area.

    b) that the only HVOCs he ever sold while employed with Holchem were 1,1,1 TCA, PCE and methylene chloride, and that, to his knowledge, LAT never stored or handled TCE on the Sliver/Adjacent Area;

    c) that any handwritten weigh master certificates suggesting that product was being weighed at the Sliver/Adjacent Area, were not reliable and did not reflect the location of where the subject chemical product was actually being stored and weighed before being shipped to Holchem's customer;

    d) that in preparing "handwritten" weigh master certificates, to reflect that the chemical was being weighed at the Sliver Site, that Holchem and/or LAT were likely attempting to hide the actual source of the product that was being sold to the customer, so as to avoid the customer bypassing Holchem in future sales; and

    e) that he never witnessed any releases or spills of HVOCs during the time LAT was operating on the property, and that he has no recollection of ever being told or advised, that any such spills ever occurred during LAT's time on the Sliver/Adjacent Area.

11.   * **Neil Irish**. Mr Irish is a Vice President with Apex Companies, LLC, an environmental organization. Mr. Irish has been designated as an expert witness in this action by the City, but was previously asked by the City to assess the HVOC contamination at the Sliver/Adjacent Area and to develop remedial action options to address the HVOC contamination. None of remedial options developed by Mr. Irish appear to have been finalized, or submitted to any agency, such as the Regional

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-12-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

Board. Mr. Irish was also hired by the City to assist the City in assessing and cleaning up contamination at various other properties within and outside the Port of Los Angeles.  LAT and Soco may seek the following testimony from Mr. Irish: information on previous remedial action plans and proposals he proposed for the City of Los Angeles for the Sliver/Adjacent Area, as well as information on remedial approaches, technologies and remedial action objectives utilized or agreed to by the City in connection with other Port of Los Angeles properties.

**12.     Kevin Kim**.  Mr. Kevin Kim is a Senior Real Estate Officer for the City for the Port of Los Angeles, in the Port's Real Estate Division, and gave a deposition as a FRCP 30(b)(6) witness on behalf of the City.  LAT and Soco intend to call Mr. Kim to testify as to the following topics:

a) information on the City's ownership interest in the Sliver/Adjacent Area from 1949 to the present date, as well as in Berth 155A;

b) the various permits, leases and approvals issued by the City to Occidental in connection with its operations on Berth 155A;

c) the various permits, leases and approvals issued by the City to Occidental, Ash-Cross-Evans Corporation ("ACE") and LAT in connection with their operations on the Sliver/Adjacent Area;

d) the City's position regarding its ownership interest in the Sliver/Adjacent Area versus Union Pacific's ownership interest, from 1949 to the current date;

e) the economic benefit, in terms of increased commerce, rent, pipeline fees and charges, and other fees, the City received as a result of the various operations that were conducted on the Sliver/Adjacent Area;

f)  past and future plans to lease the Sliver/Adjacent Area, including the proposed future leasing of the property to Phillips 66;

f) information on the types of chemicals the City approved to be stored or handled by Occidental on the Sliver/Adjacent Area;

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-13-

Case No.  2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

g) information on the lack of inspections conducted by the City of Occidental's operations on the Sliver/Adjacent Area;

h) information on the lack of the City's maintenance of the Sliver/Adjacent Area from 1993 to the present;

i) Mr. Kim and the Port's Real Estate Divisions direction to the Port's Environmental Management Division to "*immediately*" take action to clean up the HVOC contamination on the Sliver/Adjacent Area, and the Environmental Management Division's refusal to do so;

13. **Raj Mehta**. Mr. Mehta is the current President of L.A. Terminals, Inc., and of Soco West, Inc., and has held these offices since approximately early 2008. Mr. Mehta will testify on the following topics:

a) the corporate relationship between LAT and Soco, i.e., that they are, and have always been sister corporations only;

b) that he has authorized and paid, on behalf of LAT, approximately $914,000 in response costs to address the HVOC contamination in and around the Sliver/Adjacent Area, which costs were incurred starting in 2016;

c) that LAT's objectives in its various submittals to the Regional Board was and remains to work cooperatively with the Regional Board, and to timely respond to their directives and requirements, in an effort to develop and implement a timely, reasonable and cost-effective solution to address the HVOC contamination;

d) if necessary, to rebut evidence or testimony offered by any other party regarding prior agreements and disputes over costs incurred in connection with the Sliver/Adjacent Area prior to 2016.

14. **Lance Renfrow**. Mr. Renfrow is a former employee of Holchem, and was employed for a one year period from approximately the fall of 1981 to the fall of 1982. Mr. Renfrow provided a deposition in this case. Mr. Renfrow will testify

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-14-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

as to the following topics:

    a)  his involvement in the arrangement of LAT's acquisition of the terminal assets from ACE;

    b)  his understanding of the relationship between LAT and Holchem during his employment with Holchem, i.e., that they were sister companies, and that Holchem handled the "sales" of the chemicals, but never operated on the Sliver/Adjacent Area;

    c)  his knowledge of the chemicals, if any, stored on the Sliver/Adjacent Area during the time of his employment with Holchem;

    d)  LAT's and Holchem's practice of "base loading" its chemical sales during LAT's initial startup, *i.e.* that during the time of LAT's startup, because it did not have the product on hand, through Holchem, it procured its chemicals for sale through other third-parties that were storing the chemicals in the area, but who were entirely unaffiliated with LAT or Holchem;

    e)  his knowledge of the various chemical companies in the Los Angeles area where he or others in Holchem could find product to sell to customers of LAT and Holchem;

    f)  his involvement in LAT's hiring of the first plant manager for the Sliver/Adjacent Area under LAT's tenure, and his corporate philosophy to be right "100 percent" of the time when running a chemical storage operation, and the various safety measures the new plant manager implemented at the outset of LAT's operations;

    g)  his understanding that no spills occurred at the Sliver/Adjacent Area during the time he was employed with Holchem.

**15.**  **Charlie Robinson**. Mr. Robinson is a Principal Engineer with Terraphase Engineering, Inc. ("Terraphase"). Terraphase and its predecessor, SoundEarth Strategies, California, Inc. (SoundEarth), were retained on behalf of

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-15-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

LAT, beginning in 2016, to evaluate and analyze the HVOC contamination within the Sliver/Adjacent Area, and to develop various submittals and reports, on behalf of LAT, to address the HVOC contamination. Mr. Robinson will offer testimony on the follow topics:

    a) the adequacy of the numerous site characterization and environmental investigations, assessments, studies and interim remedial actions performed in connection with the Sliver/Adjacent Area, starting in 1990 and up to the present date;

    b) the purposes and objectives of the various site assessment workplans, characterization studies, conceptual models, feasibility studies, and proposed removal and remedial action plans that were submitted to the Regional Board on behalf of LAT since 2016, by Terraphase and SoundEarth;

    c) his evaluation of the prior environmental assessment and remedial work conducted in and around the Sliver/Adjacent Area and of the type, location, extent and mass calculations of the HVOCs contamination in issue as discussed in the Terraphase and SoundEarth submittals;

    d) the bases for the remedial action objectives proposed by LAT in its submittals to the Regional Board;

    e) the purposes and objectives of the various communications he engaged in with the Regional Board and his efforts to work with the Regional Board on moving forward with the implementation of the various submittals and proposed remedies provided to the Regional Board.

**16.** <u>Melissa Schuetz</u>. Ms. Schuetz is a Professional Geologist with Terraphase, and was the principal draftsperson of most of the Terraphase/SoundEarth submittals to the Regional Board. Ms. Schuetz will offer

testimony on the following topics:

    a) the research, analyses and bases for the various submittals provided by Terraphase/SoundEarth on behalf of LAT to the Regional Board since 2016;

    b) the backup and support for the Terraphase and SoundEarth invoices generated as a result of all the work performed on behalf of LAT that make up the approximately $914,000 in response costs which LAT seeks to recover in this action, including the various summary matrices of the response costs.

**17.** * **<u>Dennis St. George</u>**. Mr. St. George is a former Vice President and Secretary to the parent company of LAT and Holchem, known as Brilliant National Services. If necessary, Mr. St. George will provide testimony regarding the corporate structure between LAT and Soco/Holchem.

**18.** **<u>Pauling Sun</u>**. Ms. Pauling Sun is a current employee with the City of Los Angeles, in the Environmental Management Division of the Port of Los Angeles, and has a Master's degree in Environmental Science and Management. Ms. Sun provided a deposition in this case on behalf of the City as a FRCP 30(b)(6) witness. LAT and Soco will solicit testimony from Ms. Sun on the following topics:

    a) her and the City's position on the effectiveness of the technology LAT proposed to implement at the Sliver/Adjacent Area to address the HVOC contamination, as set forth in LAT's 2020 Revised FS/RAP for HVOCs, and the similar technology proposed in LAT's 2022 RAW/IRAP, and her conclusion that the proposed remedy in the 2020 Revised FS/RAP was "*proven technology*" and "*would be effective for the areas*" being targeted, and that there was no reason "*that the City will reject the idea of a land use covenant for the Sliver Site*" (which is a remedial component of LAT's 2020 Revised FS/RAP);

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-17-

Case No. 2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO

      b) Ms. Sun's and the City's position that they would agree with whatever remedial approach was approved by the Regional Board to address the HVOC contamination at the Sliver/Adjacent Area;

      c) remedial approaches and technologies and remedial action objectives that have been utilized or agreed to by the City in connection with other Port of Los Angeles property;

      d) with the exception of a Sediment and Seawater Assessment conducted by the City in 2018, the City's failure to conduct any Phase I or Phase II Environmental Site Assessments for the Sliver/Adjacent Area, including even at the time of the City's acquisition of Union Pacific's interest in the property in 1986; and

      e) the type and extent of any remedial action proposed by the City internally to address the HVOC contamination in issue.

19. \* **<u>Ryan Thompson</u>**. Mr. Thompson is an employee of Terraphase, and was retained on behalf of LAT to conduct various file reviews of various contaminated sites around the Country that were previously operated on by Hooker/Oxy. Mr. Thompson will be called, if necessary, to testify to authenticate the various historical documents he obtained from governmental agency, university or other repository files.

20. \* **<u>Chris Voci</u>**, P.G. Mr. Voci is a Principal Geologist with Terraphase and was involved in developing the remedial/removal technology selected and discussed in LAT's 2020 FS/RAP for HVOCs, and in its 2022 RAW/IRAP. Mr. Voci will be called, if necessary, to testify as to the effectiveness of the remedial/removal technologies proposed in these two documents.

21. \* **<u>Custodian of Records, California Regional Water Quality Control Board, Los Angeles Region</u>**, The testimony will be elicited only as needed to authenticate documents in the agency's files.

**22.**     * **Custodian of Records, City of Los Angeles**, The testimony will be elicited only as needed to authenticate documents in the City's files.

**23.**     * **Custodian of Records, Occidental Chemical Company**, The testimony will be elicited only as needed to authenticate documents in Defendant Occidental Chemical Corporation's files.

**24.**     * **Custodian of Records, South Coast Air Quality Management District**,  The testimony will be elicited only as needed to authenticate documents in the agency's files.

**25.**     * **Custodian of Records, Trihydro Corporation**.  The testimony will be elicited only as needed to authenticate documents in the Company's files.

**26.**     * **Custodian of Records, Union Pacific Railroad Company**.  The testimony will be elicited only as needed to authenticate documents in the Defendant Union Pacific's files.

Dated:  February 13, 2023             RUTAN & TUCKER, LLP


By: _____
Richard Montevideo
Attorneys for Plaintiff
L.A. TERMINALS, INC. and Third
Party Defendant SOCO WEST, INC.

Rutan & Tucker, LLP
attorneys at law

2590/021204-0021
18771460.3 a02/13/23

-19-

Case No.  2:18-CV-06754-MWF-PVC
SUMMARY OF DIRECT TESTIMONY ON
BEHALF OF PLAINTIFF LAT AND SOCO