**OFFICE OF THE CITY ATTORNEY**  **NO FEE – GOV'T CODE 6103.**
HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
STEVEN Y. OTERA, Gen'l Counsel, Harbor Div. (SBN 155471)
KENNETH F. MATTFELD, Deputy City Attorney (SBN 182594)
JANET L. KARKANEN, Deputy City Attorney (SBN 162173)
BRIAN A. DALUISO, Deputy City Attorney (SBN 287519)
425 South Palos Verdes Street
San Pedro, California 90731
T: (310) 732-3750 / F: (310) 831-9778
E: bdaluiso@portla.org

**BOOTH LLP**
Joshua N. Levine (SBN 171840)
11835 West Olympic Boulevard, Suite 600-East
Los Angeles, CA  90064
Telephone: (310) 641-1800 / Facsimile: (310) 641-1818
E:  jlevine@boothllp.com

Attorneys for Defendant, Counter-Claimant,
Cross-Claimant, and Third Party Plaintiff,
CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| L.A. TERMINALS, a California corporation;<br><br>       Plaintiff,<br><br>  v.<br><br>CITY OF LOS ANGELES, a municipal corporation, and OCCIDENTAL CHEMICAL CORPORATION, a New York corporation, and UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,<br><br>       Defendants.<br><br>AND RELATED COUNTERCLAIMS, CROSSCLAIMS AND THIRD-PARTY COMPLAINTS. | Case No.:  2:18-cv-06754-MWF-RAOx<br><br>[Assigned for all purposes to the Hon. Michael W. Fitzgerald, Ctrm. 5A]<br><br>**CITY OF LOS ANGELES' RESPONSE TO ORDER TO SHOW CAUSE RE ELEVENTH AMENDMENT IMMUNITY**<br><br>COMPLAINT FILED:  August 6, 2018<br>TRIAL DATE:  March 14, 2023 |

1    Defendant and Counter-Complainant the City of Los Angeles ("the City")
2  hereby responds to the Order To Show Cause (the "OSC") Re Eleventh
3  Amendment Immunity [Dkt. 439] issued by this Court.

4  **I.     INTRODUCTION**

5    The City has consistently asserted its Eleventh Amendment defense
6  throughout this action.  Not only has the City raised this defense in its answers
7  (Dkts 55, 114, 136, 141, 240), it also raised this defense in the Rule 26 (f) Report
8  (Dkt. 288), the Rule 16-2 Conference, and subsequent Pre-Trial Report (Dkt. 415-
9  1).  The City has never expressly or implicitly abandoned this defense.  While
10 waiver can be implied by conduct, the Ninth Circuit has held that "merely
11 defending in federal court" is insufficient to support such a waiver.  *Demshki v.*
12 *Monteith*, 255 F.3d 986, 989 (9th Cir. 2001).

13   The City did not choose to be in Federal Court.  Rather, the City first filed
14 an action against LAT related to the Sliver Site contamination in State Court.  *See*
15 The City's First Amended Complaint at ¶¶95-104 (Docket No. 20-1) (judicially
16 noticed in November 16, 2018 Court Order at p. 2) (Docket No. 36).  After LAT
17 attempted to remove the State Action to Federal Court, the City successfully
18 opposed the removal and the matter was remanded back to State Court.  (Dkt. 50-
19 3).  LAT thereafter filed the present action, which also addresses the same Sliver
20 Site contamination, involuntarily dragging the City into Federal Court. (Dkt. 1).

21   In the OSC, the Court discusses *Johnson v. Rancho Santiago Cmty. Coll.*
22 *Dist. ("Johnson"),* 623 F.3d 1011 (9th Cir. 2010).  *Johnson*, however, is
23 illustrative of the extreme factual circumstances needed to find an implied waiver.
24 In *Johnson*, the defendant submitted the entire matter to the District Court on
25 summary judgment, obtained a judgment in its favor on a non-jurisdictional basis,
26 and never sought, pre-judgment, a District Court ruling on its Eleventh
27 Amendment defense.  *Id*. at 1018.  Such a fact pattern does not exist here.  Rather,
28 this case is closer to another case referenced in the OSC, *Aholelei v. Dep't of Pub.*

*Safety ("Aholelei")*, 488 F.3d 1144, 1149 (9th Cir. 2007).  Here, like in *Aholelei*, the City, "though taking defensive moves to protect [itself] should [its] immunity defense fail" had given the plaintiff and the district court "fair warning that [it was] asserting an immunity defense, and . . . did not engage in any conduct during the course of [the] litigation that manifested an intent to waive that defense." *Id*. at 1149.

While the City has taken defensive steps to preserve defenses in this matter, none of these steps were sufficient to infer an intent that it was waiving its Eleventh Amendment defense, which it consistently asserted throughout this action.  The City's litigation actions need to be understood by reference to the parallel State Court proceedings.  The parties have agreed that discovery in the Federal Action can be used in State Action.  (Dkt 288 at 18:21-23).  Accordingly, the City's participation in discovery and related proceedings, when taken in light of its repeated assertion of its Eleventh Amendment defense and consolidated discovery in both actions, cannot be interpreted as an intent to submit this matter for a determination on the merits to this Court; rather, it is practical recognition that the City has an interest in participating in this discovery, regardless of the Federal litigation.

This is not a case, like *Johnson*, where the defendant never asked the District Court to rule on its Eleventh Amendment defense, but instead asked for and obtained a judgment on different grounds, thus showing that it wished to "defend on the merits in federal court." *Johnson,* 623 F.3d at 1018.  Rather, this is a case, like *Aholelei*, where the defendant, through its repeated assertion of the defense, gave "fair warning" of its intent to rely on this defense, and its actions, while preserving its rights to pursue other defenses, did not rise to an implicit intent to waive its defense. *Aholelei*, 488 F.3d at 1149.  Accordingly, the City's participation in discovery and defensive proceedings is insufficient to satisfy the "stringent" test for finding that it intended to waive the Eleventh Amendment

defense. *Id.* at 1147.

## II. THE CITY'S DEFENSIVE CONDUCT, WHEN VIEWED IN LIGHT OF ITS REPEATED RAISING OF THE ELEVENTH AMENDMENT DEFENSE, IS INSUFFICIENT TO SHOW AN UNEQUIVOCAL INTENT TO WAIVE THIS DEFENSE.

"'[T]he Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar' that it may be raised at any point of the proceedings." *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 (1982) (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)); *In re Mitchell*, 209 F.3d 1111, 1117 (9th Cir. 2000), abrogated on other grounds as recognized by *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 853 n. 6 (9th Cir.2001). While this defense may be waived, the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (citing *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Aholelei,* 488 F.3d at 1147. Generally, waiver requires a "clear declaration," which is "unequivocally expressed," that a State intends to submit itself to federal jurisdiction. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (citing *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944) and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)).

Applying the above principles, the Ninth Circuit has held that a state "does not waive Eleventh Amendment immunity merely by defending in federal court. Instead, waiver turns on the state's failure to raise immunity during the litigation." *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001). If the affirmative defense is raised "early in the proceedings" to provide "fair warning" to the plaintiff, then the State is generally allowed to assert its immunity in district court and on appeal. *Id.* (citing *ITSI TV Productions, Inc. v. Agricultural Associations*,

3 F.3d 1289, 1291 (9th Cir.1993)).

In *Aholelei*, the Ninth Circuit considered whether the Hawaii Department of Public Safety had waived its Sovereign Immunity defense by filing a third-party complaint. The Ninth Circuit held there was no waiver as this conduct was "not incompatible with an intent to preserve the defense of sovereign immunity." *Aholelei,* 488 F.3d at 1148. Rather, the filing of a third-party complaint was entirely defensive:

> The filing of the third-party complaint for indemnification or contribution can best be viewed as an appropriate defense strategy, that is, as a contingent claim asserted against third parties. If the district court did not find that the State defendants were entitled to sovereign immunity or otherwise find for the defendants on [Plaintiff's] claims, then the third-party complaint put all of the defendants in a position to seek contribution from joint tortfeasors.
> *Id*.

Importantly, "the State had promptly asserted immunity in their answer and never expressly abandoned this defense." *Id*. at 1148. The State's defense posture "was not inconsistent nor in conflict with the assertion of sovereign immunity" and they had gained no "unfair advantage" through the assertion of the immunity defense. *Id.* at 1149. Rather, the State, "though taking defensive moves to protect themselves should their immunity defense fail" had given the plaintiff and the district court "fair warning that the State defendants were asserting an immunity defense, and the State defendants did not engage in any conduct during the course of this litigation that manifested an intent to waive that defense." *Id*.

In contrast, in *Johnson*, the defendant had gone far beyond taking steps to preserve its defenses should its sovereign immunity argument fail, rather, it had

submitted the matter to the district court in a motion for summary judgment.  In *Johnson*, the defendant moved for, and obtained, summary judgment against plaintiff's claims on substantive issues regarding their claims.  *Johnson,* 623 F.3d at 1018.  Noting that the defendant had engaged in "extensive proceedings," including "litigating the suit on the merits" and filing "a summary judgment motion," the Ninth Circuit found there were sufficient circumstances to deem the defendant to have made a determination "to defend on the merits in federal court" and thus submit to federal jurisdiction.  *Id*.

Both cases recognized that the critical question is intent, as waiver requires "conduct that is incompatible with an intent to preserve [Eleventh Amendment] immunity."  *Aholelei*, 488 F.3d at 1147; *Johnson,* at 623 F.3d at 1022.  In *Aholelei*, the defendant took defensive actions to preserve its rights in case its sovereign immunity defense failed, and the Court found no evidence of intent through these actions to submit to federal court jurisdiction.  In *Johnson,* by contrast, the defendant submitted a summary judgment motion to the district court on non-jurisdictional grounds and successfully obtained a ruling dismissing all of the claims against it, which evidenced that the defendant did intend to submit the merits of the action to the federal court for decision.

Here, the steps taken by the City have been, like the conduct in *Aholelei*, intended to preserve defenses, and did not show an intent to waive the Eleventh Amendment defense.  While the City has filed cross-complaints and third-party complaints, these were defensive in nature, intended, like the defensive cross-complaints in *Aholelei*, to preserve contribution rights if the sovereign immunity defense failed.  The City has never sought affirmative relief in this action; rather, it seeks only re-allocation of any liability assessed against it.  (See Dkt. 288 at 15:10-12).  The City's attempt to obtain certification of this Court ruling dismissing its contractual indemnity claims is consistent with its intent to preserve contingent defensive claims--the type of defensive conduct held insufficient to

1 waive the defense in *Aholelie*. Other steps taken, such as filing motions in limine
2 by the deadlines established by this Court, also reflect "defensive moves" if the
3 Eleventh Amendment defense failed, not an unequivocal intent to submit this
4 matter to the Federal Court for decision.

5       The City's participation in discovery also does not show an intent to waive
6 this defense. Parties stipulated that discovery in the Federal Action would be
7 admissible in the State Action. (Dkt 288 at 18:21-23). Accordingly, the City was
8 required to participate in this discovery in order to preserve its rights in the State
9 Action, and such participation cannot be interpreted as an intent to waive Eleventh
10 Amendment immunity.

11       Additionally, while LAT faults the City for not bringing a dispositive
12 motion earlier, LAT (or any of the other parties) could have brought a dispositive
13 motion challenging this explicitly-pleaded defense earlier. Accordingly, the City
14 cannot be said to have obtained an "unfair advantage" in this litigation through
15 raising this defense now before a summary judgment determination has been
16 made or trial has commenced. *Aholelei*, 488 F.3d at 1149.

17       Unlike the defendant in *Johnson*, the City did not bring a successful
18 summary judgment motion in which it requested the Court to consider evidence
19 and rule on the merits. Rather, as in *Aholelie*, the City "asserted immunity in their
20 answer and never expressly abandoned this defense." *Aholelei*, 488 F.3d at 1148.
21 In fact, the City raised the Eleventh Amendment defense, not only in its answers,
22 but also in the Rule 26 report, the Rule 16-2 conference, and the Pre-Trial report.
23 No other party moved to challenge this affirmative defense. In light of these
24 repeated confirmations that that the City was still asserting this defense, it cannot
25 be said that the City's conduct showed a "clear declaration," "unequivocally
26 expressed," that the City intended to submit itself to federal jurisdiction. *Coll.*
27 *Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676
28 (1999) (citations omitted).

### III. THE FACTORS OF THE BELANGER TEST FAVOR A FINDING THAT THE CITY IS AN ARM-OF-THE-STATE

In the OSC, the Court referenced the five factors for evaluating whether an entity is an arm of the state: (1) whether a money judgment would be satisfied out of state funds; (2) whether the entity performs central government functions; (3) whether the entity may sue or be sued; (4) whether the entity has the power to take property in its own name or only in the name of the state; and (5) the corporate status of the entity. *Belanger v. Madera Unified Sch. Dist. ("Belanger")*, 963 F.2d 248, 250-251 (9th Cir. 1992) (citing *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988)). Of these factors, the most important is the first factor because "a plaintiff who successfully sued an arm of the state would have a judgment with the same effect as if it were rendered against the state." *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1147 (9th Cir. 2004). In the OSC, the Court properly recognized that the first two factors favor such a finding and invited further briefing on factors three through five.

The third factor is whether the entity can sue or be sued in its own name. While technically, the City can so be sued, this factor deserves relatively little weight. A similar argument was made against the School District in *Belanger*. The *Belanger* Court, while recognizing that it was technically true that a School District can sue and be sued in its own name, found this fact to be of "less weight" than the first two factors. *Belanger,* 963 F.2d at 254. Similarly, here, this factor deserves less weight. The technicality of the pleading matters less than the ultimate fact that the funds will be paid out of state funds.

The fourth factor is whether the entity can own property. In *Belanger*, the Court held that it was close question as to how to weigh this factor in light of the fact that the "beneficial ownership of the property of the public schools is the

State" and therefore gave this factor little weight. *Belanger,* 963 F.2d at 254. The Harbor Department holds rights, title, and interests in the tidelands and submerged lands in trust for public use. Pub. Res. Code §§ 6009, 6009.1; Los Angeles City Charter § 651. As the People of the State of California are the beneficiaries of this trust, the ownership factor should also be given "little weight."

The fifth factor is the corporate status of the entity. In *Belanger*, this factor was found to weigh in favor of the School District as school districts were considered agencies of the state. *Belanger,* 963 F.2d at 254. Here, the Harbor Department is run by the Board of Harbor Commissioners which acts as trustee of the Tidelands Trust and may act only under the terms of the Trust. Los Angeles City Charter § 651. Therefore, as in *Belanger,* it is acting as an agent of the State.

In sum, the first two factors (the more important factors) clearly support a finding that the City is an arm of the state. The last three factors of the *Belanger* test either support a finding that the City is acting as an agent of the state or should be given little or no weight. The factors, when taken as a whole, support the conclusion that the City is an arm-of-the-State, and thus Eleventh Amendment defenses apply.

## IV.    CONCLUSION

The City has sovereign immunity under the Eleventh Amendment and did not waive this defense. As such, the Court should dismiss it from this action.

Dated: February 23, 2023                    BOOTH LLP

                                            By: _____*Joshua Levine*_____
                                                Joshua Levine, Esq.
                                                Attorney for Cross-Defendant City of
                                                Los Angeles, acting by and through its
                                                Board of Harbor Commissioners