Stephen T. Erb, Esq. (SBN 125248)
STEPHEN THOMAS ERB, APC
16870 West Bernardo Drive, Suite 400
San Diego, California 92127
Telephone:  (858) 487-2728
s.erb@erbapc.com

Attorney for Third-Party Defendant, Cross-Defendant, and Counterclaimant Phillips 66 Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. TERMINALS, INC., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF LOS ANGELES, a Municipal corporation, OCCIDENTAL CHEMICAL CORPORATION, a New York corporation, and UNION PACIFIC RAILROAD COMPANY, a Delaware corporation.<br><br>　　　　　Defendants.<br><br>AND RELATED COUNTER-CLAIMS, CROSS-CLAIMS, AND THIRD-PARTY CLAIMS | Case No. 2:18-cv-06754-MWF (RAOx)<br><br>**PHILLIPS 66 COMPANY'S TRIAL BRIEF**<br><br>Judge:  Hon. Michael W. Fitzgerald<br><br>Date Action Filed:　August 6, 2018<br>Final Pretrial Conf.:　February 13, 2023<br>Trial Date:　　　　　March 14, 2023 |

　　　　Pursuant to the Court's "Order Re Jury Trial" (Dkt. 291) dated February 27, 2020, Third-Party Defendant, Cross-Defendant, and Counterclaimant Phillips 66 Company ("Phillips 66") respectfully submits the following Trial Brief for the court trial scheduled to commence on March 14, 2023.  Upon the Court's request, Phillips 66 shall provide additional briefing on any legal points that may arise during trial or which have otherwise been only summarily supported in Phillips 66's "[Proposed] Findings of Fact and Conclusions of Law" lodged with the Court (Dkt. 424-1).

# I. INTRODUCTION

Pursuant to Local Rule 16-10(c), Phillips 66 further briefs below only those legal contentions that have been contested by another party in its pretrial submissions. For example, no one disputes primary liability under CERCLA is joint and several.

# II. LEGAL ARGUMENT

As noted previously, Plaintiff L.A. Terminals, Inc. ("LAT") has not named Phillips 66 as a defendant to its CERCLA claims in the main action. Occidental Chemical Corporation ("Occidental"), however, through its Second Amended Third-Party Complaint (Dkt. 150), and Union Pacific Railroad Company ("Union Pacific"), through its Second Amended Counterclaims and Cross-Claims (Dkt. 241), allege claims against Phillip 66 for contribution and related declaratory relief in the event either party must someday pay LAT more than its allocated share of liability.

Also, neither Occidental nor Union Pacific seek to recover past costs of their own pursuant to 42 U.S.C. § 9607(a). This, in turn, restricts the type of declaratory relief they may seek against Phillips 66 in this action. The relief must be tied to the *derivative* nature of their claims, and nothing further. For example, if LAT does not claim damages arising from some speculative injury attributable to Phillips 66, then Occidental has no "claim over" as against Phillips 66, at least not in this action.

More fundamentally, it is unclear from their briefing whether Occidental or Union Pacific have even given thought to how CERCLA makes Phillips 66 a party liable for chlorinated solvent, or halogenated volatile organic compound ("HVOC"), contamination. In fact, on largely uncontested facts, Phillips 66 is neither a CERCLA "owner" nor an "operator" within the meaning of 42 U.S.C. § 9607(a)(1) with respect to that HVOC contamination.

Phillips 66 does, however, have viable counterclaims against both Occidental and Union Pacific for the reasons outlined previously and hereinbelow.

### A. Phillips 66 is Not a CERCLA "Owner" or "Operator" Liable for HVOC Releases.

Phillips 66 – as had Tosco Corporation, Phillips Petroleum Co., and ConocoPhillips before it – occupies the marine oil terminal at Port of Los Angeles Berths 148-151 under a revocable permit that can be terminated, at will, on 30 days notice by the City of Los Angeles. Unless and until overturned *en banc* by the Ninth Circuit, the panel decision in *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 443-444 (9th Cir. 2011) requires that Phillips 66 not be found a CERCLA "owner" within the meaning of 42 U.S.C. § 9607(a)(1).

Furthermore, on the undisputed facts presented here, controlling Supreme Court authority and several Ninth Circuit decisions require the Court also find that Phillips 66 is not, and was not, a CERCLA "operator" within the meaning of 42 U.S.C. § 9607(a)(1). Granted, Phillips 66 operates a marine oil terminal handling petroleum products, but it was not, and is not, an "operator" with respect to the hazardous substance contamination for which LAT seeks relief under CERCLA.

In *United States v. Bestfoods,* 524 U.S. 51, 66 (1998), the Supreme Court set forth rules governing CERCLA "operator" liability. Although the decision primarily addressed a corporate parent's liability for the operations of its subsidiary, the Court established more generally that, "an operator [under CERCLA] must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Id.*

Lower court decisions since then have refined this inquiry, creating "actual control" versus "authority to control" tests, for example, but have always required there be a relation between an alleged "operator's" activities and the initial cause of the pollution. Occidental and Union Pacific point to no decisions creating operator liability under CERCLA solely for not cleaning up another party's pollution.

This absence of decisional authority is critical, because Phillips 66's operations *could not possibly* have had any connection to any HVOC releases into the environment because all such chlorinated solvent-related operations, anywhere in the vicinity of Berths 148-151, had ended no later than 1993. Phillips 66's liability as a successor dates back no earlier than April 1997. No party contends, or could contend, otherwise. *See, e.g., Kaiser Aluminum & Chemical Corp. v. Catellus Development Corp.,* 976 F.2d 1338, 1341 (9th Cir. 1992) (operator must have authority to control cause at time hazardous substances are released into the environment).

Three Ninth Circuit decisions, in particular, illustrate the application of *Bestfoods*'s requirement that a CERCLA "operator" be shown to have been involved in operations connected to the pollutants at the time they were first released into the environment. First, in *Kaiser Aluminum, supra,* the court found a third-party plaintiff's allegations sufficient to state a claim for operator liability on the part of an excavation and grading contractor who had actively spread existing contamination at a construction site, reiterating the well-recognized rule as follows:

> "We read *Hines* as reiterating the well-settled rule that 'operator' liability under section 9607(a)(2) only attaches if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment..."

*Id.* 976 F.2d at 1341, *citing Nurad, Inc. v. Hooper & Sons Co.*, 966 F.2d 837, 842 (4th Cir.1992) and *Edward Hines Lumber Co. v. Vulcan Materials Co.,* 861 F.2d 155, 156 (7th Cir.1988).

The Ninth Circuit later made clear that an "operator" must be in a position of control over the releases of pollutants into the environment, whether named as a past or as a current "operator." *Long Beach Unified School Dist. v. Dorothy B. Godwin Cal. Living Trust*, 32 F.3d 1364 (9th Cir. 1994). The court declined to find the holder of pipeline easement across a contaminated facility to be an "operator" liable under CERCLA where the pipeline did not give rise to the subject contamination.

The court in *Godwin Living Trust* explained thus:

> "To be an operator of a hazardous waste facility, a party must do more than stand by and fail to prevent the contamination. It must play an active role in running the facility, typically involving hands-on, day-to-day participation in the facility's management."

*Id.* 32 F.3d at 1367.

More recently, in *United States v. Sterling Centrecorp Inc.,* 977 F.3d 750, 757 (9th Cir. 2020), the Ninth Circuit affirmed district court findings, stating as follows:

> "The record supports the district court's finding that Sterling was an 'operator' of the Site because 'Sterling maintained pervasive control over operations at the [Site], including direct management of the environmental response to the 1979 partial dam collapse and disposal of arsenic contaminated tailings and water.'..."

*Id.* 977 F.3d at 757. In that case, out of neglect by the owner and operator of a closed mineral mine, a dam built to contain contaminants failed and the release was not quickly abated, leading to contamination of local residents' water supply.

In its Memorandum of Contentions of Fact and Law (Dkt. 378) and in its Proposed Findings of Fact and Conclusions of Law (Dkt. 428-1), Union Pacific nowhere offers *any* factual or legal basis for why Phillips 66 ought to be found an "operator" with respect to the HVOC contamination at issue.

Occidental also does not contend that Phillips 66 had operations relating to HVOC releases (in contrast, it attempts to so contend with respect to Union Oil's operations in the 1960s). Rather, it raises two novel theories, both defective as a matter of law. Occidental first contends that total petroleum hydrocarbon ("TPH") contamination from the marine oil terminal has commingled with the chlorinated solvent contamination and may increase the cost of the HVOC remediation. Occidental also contends that Phillips 66, until recently, was the only party named in the Regional Water Quality Control Board's ("RWQCB") cleanup and abatement order ("CAO"), and has thus far failed to clean up the HVOC contamination.

As mentioned above, Occidental's contribution claim under CERCLA (and its related request for declaratory relief) is wholly derivative of plaintiff LAT's claims. LAT, however, does not contend it has, or will, incur additional response costs due to the commingled TPH contamination. In fact, LAT's experts have opined that the petroleum hydrocarbons *enhance* the natural chlorinated solvent biodegradation by providing a carbon source for the bacteria that break down chlorinated solvent compounds into harmless chemicals. Unless and until Occidental *itself* incurs response costs remediating its own pollution, it lacks both recoverable damages as well as standing to seek declaratory relief as to what is currently nothing more than unconfirmed speculation that it *may* cost more due to the TPH presence. *See, e.g., City of Colton v. American Promotional Events, Inc.-West,* 614 F.3d 998, 1005 (9th Cir. 2010) (party must allege and establish 42 U.S.C. § 9607 past costs claim as predicate to obtaining declaratory relief with respect to its own future response costs).

As to Occidental's second theory of liability, the Ninth Circuit decisions cited above hold that mere failure to clean up contamination – as to which a party had no involvement when first released into the environment – does *not* make one an "operator" under CERCLA. Factually, the argument is rather misleading. It was not necessary to name other parties to the 2008 CAO because all parties had been cooperating for years in assessing and monitoring the contamination at and beneath the adjacent properties, so only the property occupant needed to be named.

Moreover, starting in 2016, Occidental and LAT insisted that *they* would address the HVOC contamination, and *not* Phillips 66. So Occidental has been the party remiss in fulfilling its undertakings, not Phillips 66. And if Occidental sincerely believes Phillips 66 nonetheless has some sort of liability under CERCLA for purported "neglect" in complying with the CAO – quite a factual reach, it should be emphasized – then it should petition the RWQCB for relief, not collaterally "enforce" its view of the CAO in this Court, usurping the state regulatory function.

In sum, neither Occidental nor Union Pacific have set forth legally or factually viable theories of Phillips 66's liability under CERCLA. Phillips 66 will accordingly move for entry of judgment in its favor at the appropriate time.

### B. Union Pacific is a CERCLA "Owner" Liable for HVOC Releases.

In its pretrial submissions, Union Pacific relies upon *San Pedro Boat Works, supra,* (and no other authorities) to contend it was not a previous "owner" of the CERCLA facility that experienced HVOC releases during the time Union Pacific had leased it to Occidental. Union Pacific neglects to address footnote 10 of that decision, however, in which the court distinguished the "proverbial 99-year lease" as one that would likely create "owner" status under CERCLA. Union Pacific also forgets that it has judicially admitted in this action having enjoyed a 100-year possessory interest akin to fee simple ownership (*viz.* an interest created in 1887 and surrendered, only after facing litigation by the City challenging it, in 1986).

In its Second Amended Counterclaims and Cross-Claims (Dkt. 241), Union Pacific alleges as follows: "that in or around 1887, the State of California granted to and permitted Southern Pacific Railroad Company the right to take, hold and use portions of property situated in the area that is the Site at issue in this action." Union Pacific then alleges, *viz.* judicially admits, with respect to a subsequent "1917 Harbor Settlement Agreement" with the City, as follows:

> Union Pacific is further informed and believes, and thereon alleges, that pursuant to the 1917 Harbor Settlement Agreement, and historical land grants and historical practice, the City and Southern Pacific ***both owned, had title to, had the right to use, or otherwise operated on property that may be at the Site at times relevant to this action*** (sic).

*(Id.* p.5, ¶16, lines 5-9) (emphasis supplied). Union Pacific admits it is the successor to Southern Pacific Railroad Company. (*Id.* at p.4, ¶14, lines 19-21)

In *San Pedro Boat Works, supra*, the Ninth Circuit expressly recognized, without then deciding, that some possessory interests in land that, while falling short of a freehold estate in fee simple, could well create "owner" status under CERCLA:

> However, we need not address the question of leases here because the revocable permits at issue conferred far fewer rights to the permittee than those granted to a typical lessee, such as those provided by the proverbial "99–year lease" at issue in *Commander Oil*. 215 F.3d at 330.

*Id.* 635 F.3d at 452, ftnt. 10. Other parties in this action have likewise identified contemporaneous communications by Union Pacific and its predecessor entities reiterating its claim of ownership that estop Union Pacific from now denying its "owner" status under CERCLA.

### III.
### CONCLUSION

For the reasons set forth herein and in its other pretrial submissions, and upon the introduction of evidence in support thereof, Phillips 66 respectfully submits that it should not be found liable as an "owner" or "operator" under CERCLA for the HVOC contamination at issue in this action. Phillips 66 further respectfully submits that both Occidental and Union Pacific should be found liable to Phillips 66 for its past response costs, and that Occidental and Union Pacific should be judicially declared liable to Phillips 66, jointly and severally, for Phillips 66's future response costs should circumstances require Phillips 66 to someday assess, monitor, remove, and/or remediate HVOC contamination at, and in the vicinity of, Port of Los Angeles Berths 148-151.

Dated:  March 6, 2023

STEPHEN THOMAS ERB, APC

By:      /s/ Stephen T. Erb

Attorney for Third-Party Defendant, Cross-Defendant, and Counterclaimant Phillips 66 Company