R. Christopher Locke (State Bar No. 101704)
  clocke@fbm.com
Sarah P. Bell (State Bar No. 227082)
  sbell@fbm.com
Linda T. Sobczynski (State Bar No. 307107)
  lsobczynski@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Defendant, Third-Party Defendant, Counter-Claimant and Cross-Claimant UNION PACIFIC RAILROAD COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. TERMINALS, INC., a California Corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>CITY OF LOS ANGELES, a Municipal corporation, and OCCIDENTAL CHEMICAL CORPORATION, a New York Corporation,<br><br>　　　　　Defendants.<br><br>AND RELATED COUNTER-CLAIMS, CROSS-CLAIMS AND THIRD-PARTY COMPLAINTS. | Case No. 2:18-cv-06754-MWF-PVCx<br><br>**UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF**<br><br>The Hon. Michael W. Fitzgerald<br><br>Action Filed:　August 6, 2018<br><br>Trial Date:　　March 14, 2023 |

Union Pacific Railroad Company ("Union Pacific") respectfully submits this Trial Brief, summarizing key facts we expect the evidence will show at trial, as well as legal issues, points and authorities relevant to claims and defenses, pursuant to this Court's Scheduling Order (ECF No. 291) and Local Rule 16-10.

### A.　FACTUAL BACKGROUND

This litigation concerns liability for, and equitable allocation of, response

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

37081\15322521.1

costs under CERCLA to address Halogenated Volatile Organic Compound ("HVOC") contamination resulting from historical operations at the Los Angeles Marine Terminal ("LAMT") in Wilmington, California.

In 1887, the State of California granted Union Pacific predecessor Southern Pacific Transportation Company ("Southern Pacific")[1] a 200-foot wide railroad right-of-way that included a 0.74 acre portion of the LAMT—which became known as the "Sliver Site." The underlying fee ownership was transferred from the State of California to the City in 1911, which became titleholder of the LAMT, subject to the railroad right-of-way granted to Southern Pacific.

In 1948, to facilitate development plans for the City's property at Berth 155A at the LAMT, the City requested that Occidental Chemical predecessor Hooker Chemical Company ("Occidental/Hooker") move its chemical operations to the Sliver Site, within Southern Pacific's right-of-way. The City acknowledged that this would require Occidental/Hooker to lease the Sliver Site from Southern Pacific, which it did, while the City, as fee landowner, issued permits and orders to Occidental/Hooker for chemical operations and facilities, beginning in 1949. Occidental/Hooker continued to lease the Sliver Site from Southern Pacific, and the City continued to issue permits and orders for Occidental/Hooker chemical operations, until 1979.

Thereafter, Southern Pacific leased the Sliver Site to Ash-Cross-Evans Corporation ("ACE"), dba Olympic Chemical Corporation ("Olympic") from 1979 to 1981, after which L.A. Terminals, Inc. ("LAT") operated at the Sliver Site beginning in approximately 1981. The City issued permits and orders for the chemical operations and facilities of ACE, Olympic and LAT.

Southern Pacific relinquished its right-of-way in a settlement with the City in

---

[1] Southern Pacific merged with Union Pacific in 1996.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

2

37081\15322521.1

1986, pursuant to a Litigation and Title Dispute Settlement Agreement ("TDSA"),[2] and had no involvement or interest in the Sliver Site thereafter. Following 1986, LAT continued to lease the Sliver Site from the City, and the City continued to issue permits for LAT's chemical operations, until 1992.

The City reportedly discovered contamination at the LAMT in or about 1990 and, beginning in the 1990s, engaged in discussions with several of the parties and with the Los Angeles Regional Water Quality Control Board ("Regional Board") regarding contamination at the Site. The City informed Southern Pacific in July 1995 that there was a "working group" meeting with the Regional Board regarding contamination at the LAMT and, invoking alleged obligations under the TDSA, threatened claims against Southern Pacific. Southern Pacific promptly provided the City with the name of the Southern Pacific contact person for further communications, but none were received until Union Pacific was served with the City's Third-Party Complaint more than twenty-three years later.

On January 22, 2018, the City filed a Complaint against LAT in the California Superior Court for Los Angeles County, asserting claims for contractual indemnity, negligence, nuisance, and other statutory, contract and common law claims and, on March 2, 2018, filed a First Amended Complaint adding Occidental/Hooker and ACE as defendants. *City of Los Angeles v. L.A. Terminals, Inc.*, No. NC061591 (Los Angeles Cnty. Super. Ct.) ("State Court Action").

On August 6, 2018, LAT filed this action against the City and Occidental/Hooker, asserting claims for response costs, contribution and declaratory relief under CERCLA. Union Pacific was brought into this action on January 16, 2019, when the City served a Third-Party Complaint asserting CERCLA

---

[2] The dispute with the City, ultimately settled by the TDSA, related to the City's claim that Southern Pacific had abandoned its right-of-way by leasing the Sliver Site, and that leasing the Sliver Site was not consistent with Southern Pacific's use of the right-of-way for railroad purposes.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

3

37081\15322521.1

contribution and declaratory relief claims against ACE dba Olympic, Union Pacific, Holchem, Inc., and Soco West, Inc., and contractual indemnity claims against ACE dba Olympic and Union Pacific.  On March 20, 2019, LAT named Union Pacific as a defendant in its First Amended Complaint for response costs and declaratory relief under CERCLA.

On May 28, 2019, Union Pacific was brought into the State Court Action when the City filed a Second Amended Complaint, adding Olympic, Soco West, Union Oil Company of California ("Union Oil"), Phillips 66 and Union Pacific as defendants.  The State Court Action has been stayed for most purposes, other than discovery and dispositive motions relating to contract-based claims, pending trial of this action.[3]

To date, the City has not conducted remedial work at the Site, nor has it submitted a remedial action plan to the Regional Board.  On July 7, 2022, the Regional Board issued a Cleanup and Abatement Order ("CAO") naming the City, LAT, Occidental/Hooker, Phillips 66 and ConocoPhillips as Responsible Parties for remediation of the LAMT.  At the City's request, the Regional Board is considering whether to name Union Pacific in a CAO amendment.

### B. ARGUMENT AND ANALYSIS

#### 1. Union Pacific has no "owner" liability under CERCLA, where it was the holder of a right-of-way and the City, as fee owner, permitted tenant chemical operations

Under CERCLA, liability for response costs may be imposed on any "person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed."  42 U.S.C. § 9607(a)(2); *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 870-71 (9th Cir. 2001).

---

[3] ACE, and insurer Wausau General Insurance Company ("Wausau"), have reached a settlement in both this action and the State Court Action, which has been approved by this Court and the State Court.  Olympic and Wausau have also reached a settlement, subject to approval of this Court and the State Court.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

4

37081\15322521.1

However, "owner" liability is narrowly construed and does not extend to "mere possessory interests in land such as permittees, easement holders or licensees . . . [where] owners continued to retain power to control the permittee's use of the real property." *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 444 (9th Cir. 2011).[4]

The evidence is undisputed that the Sliver Site is a "facility," that the City was and is the fee "owner" of the Sliver Site, that Occidental/Hooker, LAT and certain other parties were "operators" there, that HVOCs are "hazardous substances," that there is HVOC (and petroleum hydrocarbon) contamination at the LAMT, and that HVOC releases resulted from historical HVOC operations at and adjacent to the Sliver Site. The evidence is also clear that Southern Pacific was not an "operator" and did not cause the release of HVOCs at the Sliver Site.

At trial, the evidence will show that Southern Pacific was not an "owner" within the meaning of CERCLA, inasmuch as its interest in the Sliver Site was as a right-of-way easement holder and lessor; the City requested that Occidental/Hooker move to the Sliver Site and lease the property from Southern Pacific; and, throughout the 1949-1992 operating history, the City, as fee owner, issued permits and orders authorizing tenant chemical operations at the Sliver Site. Accordingly, and consistent with *San Pedro Boat Works*, Southern Pacific successor Union Pacific has no "owner" liability under CERCLA.

### 2. Assuming *arguendo* it were liable under CERCLA, Union Pacific's equitable share would be minimal and subject to lessee indemnification

If liability is established under CERCLA, "the court may allocate response

---

[4] CERCLA "operator" liability requires that the entity be found to "manage, direct, or conduct . . . operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations," not simply "stand by and fail to prevent the contamination." *United States v. Sterling Centrecorp Inc.*, 977 F.3d 750, 757-58 (9th Cir. 2020) (internal citations omitted).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

5

37081\15322521.1

costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1); *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1187 (9th Cir. 2000) (citing 42 U.S.C. § 9613(f)(1)). In conducting the equitable allocation under CERCLA Section 113 (42 U.S.C. § 9613(f)(1)), courts typically consider the so-called "Gore" and "Torres" factors. *See Boeing Co.*, 207 F.3d at 1187; *ASARCO LLC v. Atl. Richfield Co., LLC*, 975 F.3d 859, 869 (9th Cir. 2020); *TDY Holdings, LLC v. United States*, 885 F.3d 1142, 1146 n.1 (9th Cir. 2018).

The *Gore* and *Torres* factors include whether a liable party caused or contributed to the release of hazardous substances, their degree of involvement in the activities resulting in the release, the degree of care exercised by the party, and the degree to which a party benefitted from the activities resulting in the release. Here, there is no evidence that Southern Pacific caused or contributed to the release of hazardous substances, and its degree of involvement was merely that of the holder of a railroad right-of-way and lessor—at the City's request—of the Sliver Site.

The evidence will show that Southern Pacific collected only nominal rents from Occidental/Hooker and other tenants at the Sliver Site, and exercised due care, in accordance with historical standards, by requiring in the leases that the Sliver Site be maintained in a "neat and safe condition," that tenants comply with all applicable laws, ordinances and regulations, and that they indemnify Southern Pacific for all liabilities, costs and expenses resulting from the tenant's acts or omissions.

The evidence will also show that the City, as fee owner, issued permits and orders authorizing chemical operations of tenants throughout the 1949-1992 operating history of the Sliver Site, collected fees for such permits and orders and associated Sliver Site operations, as well as rent in later years of the Sliver Site's operations. Additionally, the City, as continuing fee owner, stands to benefit from the remediation of the LAMT.

Accordingly, if Union Pacific were found liable under CERCLA, its equitable

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S
TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

6

37081\15322521.1

share would be minimal and subject to lessee indemnification by Occidental/Hooker and other tenants.[5]

### 3. Assuming *arguendo* that the TDSA contains a right of indemnity, the City's contractual indemnity claim would be barred by the statute of limitations and laches.

The Court has ruled that the City's contractual indemnity claim against Union Pacific, based on the TDSA, is "live" and will be considered at trial (ECF No. 437).[6] However, the evidence will show that the TDSA does not support the City's contractual indemnity claim. Furthermore, given the City's delay of more than twenty-three (23) years in bringing claims against Union Pacific, the contractual indemnity claim is time-barred, based both on the applicable four-year statute of limitations and on the doctrine of laches.

Courts have held that indemnification cannot be inferred from vague language, but rather "[t]he intention of the parties is to be ascertained from the 'clear and explicit' language of the contract." *Rideau v. Stewart Title of Cal., Inc.*, 235 Cal. App. 4th 1286, 1294 (2015); *Malave v. City of Los Angeles*, No. CV 13-4057 (PJWX), 2018 WL 5816095, at *5-6 (C.D. Cal. Mar. 29, 2018) (applying California case law). The use of the words "indemnify," "indemnity," or "hold harmless" are so uniform that, in their absence, a provision does not express a "clear and explicit"

---

[5] Under applicable legal standards and according to the expert reports and deposition testimony of the two allocation experts in this litigation, the operator defendants should bear the lion's share of the responsibility for response costs. The experts also agree that, if liable, Union Pacific's equitable share should be minimal: Union Pacific expert Richard Lane White assigned an equitable allocation of 4.27% to Union Pacific, while LAT's allocation expert, Jeffrey Dagdigian assigned an equitable allocation of 7.88% to Union Pacific.

[6] Union Pacific had sought to exclude the City's contractual indemnity claim, but had not sought to exclude evidence of the parties' contractual rights and obligations as a potential equitable factor under CERCLA. *See* EFC No. 380 at 9:27-28; *see also Cadillac Fairview/Cal., Inc. v. Dow Chem. Co.*, 299 F.3d 1019, 1028 (9th Cir. 2002) (consideration of parties' indemnification agreement as affecting the equitable allocation of response costs without otherwise enforcing the agreement).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

7

37081\15322521.1

intent to indemnify. *See Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.,* 13 Cal. App. 4th 949, 969 (1993). Here, Section 2.1(i) of the TDSA—the section invoked in the City's contractual indemnity claim—contains no reference to "indemnify," "defend" or "hold harmless."

Moreover, the evidence will show that the City discovered contamination at the LAMT in or about 1990 and, beginning in the 1990s, engaged in discussions with several of the parties and with the Regional Board regarding contamination at the Site. The City threatened claims against Southern Pacific in July 1995, invoking alleged obligations under the TDSA, and Southern Pacific promptly provided the City with the name of the Southern Pacific contact person for further communications. However, none were received until Union Pacific was served with the City's Third-Party Complaint more than twenty-three years later.

Under such circumstances, the City's contractual indemnity claim based on alleged obligations under the TDSA is clearly time-barred, based both on the applicable four-year statute of limitations and on the doctrine of laches. *See* Cal. Civ. Proc. Code § 337(a); *Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (applying the four year limitations period under Section 337(a) to bar a breach of contract claim); *see also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-52 (9th Cir. 2001) (finding that delay of nineteen to thirty-six years to take legal action was "more than enough" to "easily" satisfy the delay element of laches).[7]

The record in the State Court Action further demonstrates the point: On May

---

[7] Union Pacific expects the evidence will also show that the City has failed to perform obligations under the TDSA, including failing to remediate the site before seeking reimbursement from Union Pacific, in addition to the twenty-three year delay in bringing the claim. *See Golden State Foods Corp. v. Columbia/Okura LLC*, No. CV 13-8150 RSWL VBKX, 2014 WL 2931127, at *3-4, *7 (C.D. Cal. June 26, 2014) (finding that plaintiff's breach of contract and breach of express indemnity claims proper for summary adjudication because plaintiff failed to satisfy a condition precedent).

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

8

37081\15322521.1

20, 2021, the State Court found that the City was aware of the contamination at the Sliver Site by the early 1990s and held that its contractual indemnity claims against LAT and Occidental were time-barred under the four-year statute of limitations. ECF No. 381, Ex. 1.  Following that ruling, Union Pacific met and conferred further with the City regarding Union Pacific's intent to file a motion for summary adjudication that the City's TDSA-based breach of contract claim was time-barred. ECF No. 380-1 at ¶ 5.  In response, the City dismissed its breach of contract claim against Union Pacific.  *Id.* at ¶ 6.

Accordingly, based on the evidence anticipated at trial, Union Pacific will seek judgment that the City's contractual indemnity claim is barred, including by the applicable statute of limitations and the doctrine of laches.

### C. CONCLUSION

Union Pacific respectfully submits this Trial Brief for consideration by the Court at trial in this matter.  We will be prepared to address additional issues arising at trial or as requested by the Court.

Dated:  March 7, 2023             FARELLA BRAUN + MARTEL LLP

By: _____/s/ *Sarah P. Bell*_____
     Sarah P. Bell

Attorneys for Defendant, Third-Party Defendant, Counter-Claimant and Cross-Claimant UNION PACIFIC RAILROAD COMPANY

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

UNION PACIFIC RAILROAD COMPANY'S TRIAL BRIEF –
Case No. 2:18-cv-06754-MWF-PVCx

9

37081\15322521.1