# Exhibit B

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the Effective Date (defined below), by and between L.A. Terminals, Inc. ("LAT"), a California corporation; Soco West, Inc. ("Soco West" or "Soco"), a Delaware corporation; the City of Los Angeles ("City"), a municipal corporation; Phillips 66 Company ("Phillips 66"), a Delaware corporation; and Union Pacific Railroad Company ("Union Pacific"), a Delaware corporation, each of whom are referred to herein individually as "Party," and collectively as "the Parties." This Agreement is entered into with reference to the following facts and contentions:

## RECITALS

A.    The nature of the dispute in that action captioned *City of Los Angeles v. L.A. Terminals, Inc. et al.*, Case No. NC061591 ("State Action") concerns the investigation and cleanup of contamination to the environment, resulting from the release of various chemicals known as "halogenated volatile organic compounds" or "HVOCs," and total petroleum hydrocarbon chemical compounds or "TPH," located on and around property within the Port of Los Angeles and owned by the City of Los Angeles.

B.    The principal properties in issue in the State Action are generally referred to by the Parties as follows: (a) the "Sliver Site," which is a narrow .74-acre piece of property within the Port of Los Angles located at 560 Pier "A" Place, Wilmington, CA, where above ground storage tanks were previously used to store various chemicals, but mainly HVOCs; (b) the "Sliver Adjacent Area," which is a .76-acre piece of property immediately adjacent and to the west of the Sliver Site, which was used to store certain HVOC chemicals and other chemicals and was principally otherwise used for loading and offloading operations of the chemicals to be stored on the Sliver Site (the Sliver Site and the Sliver Adjacent Area are hereafter collectively referred to as the "Sliver/Adjacent Area"); and (c) the "Marine Oil Terminal," which is the property generally surrounding the Sliver/Adjacent Area to the east and west, and which consists of an approximately 13.5-acre piece of property that has been operated as a marine oil terminal since the 1920s, initially by Union Oil Company of California ("Union Oil"), and thereafter by Tosco Corporation ("Tosco") and subsequently ConocoPhillips Company ("ConocoPhillips"), and now by Phillips 66.

C.     In addition to its ownership of the Sliver/Adjacent Area, at all relevant times herein, the City has held, and currently holds, all rights, title and interest, in trust, in and to that area of land located just north of the Sliver Site in the Port of Los Angeles, California, previously referred to as 953 Pier A Street, Wilmington, CA, and commonly referred to as "Berth 155A".

D.     In 1929, the City issued a five-year permit to "Hooker Electro-Chemical Company" to operate on Berth 155A, for purposes of constructing, maintaining and operating tanks, pumps, storehouses, structures and pipelines for the handling, storage and distribution of caustic soda and chlorine, and products and compounds thereof, and for purposes incidental thereto.  Occidental Chemical Corporation is the successor in interest to Hooker Electro-chemical Company and Hooker Chemical Company, and all such entities are collectively referred to herein as "Occidental."  Also in 1929, the City issued to Occidental, a five-year permit to construct, maintain and operate pipelines extending from the Harbor to Berth 155A, for the purpose of transporting and distributing caustic soda and products and compounds thereof to and from vessels.  Subsequent to issuing the initial five-year permits, the City extended Occidental's Berth 155A and related pipeline permits until July 31, 1949.

E.     In May of 1948, the City requested that Occidental move its chemical operations from Berth 155A to the Sliver Site, to facilitate the City's development plans for the property at Berth 155A.  Occidental thus vacated Berth 155A and moved to the Sliver Site in 1949.  Thereafter, Occidental operated a chemical storage and distribution business continuously on the Sliver/Adjacent Area until approximately the end of 1978.

F.     Union Pacific is the successor to Southern Pacific Railroad Company and Southern Pacific Transportation Company (collectively, "Southern Pacific") as a result of a 1996 merger (hereafter, Union Pacific and Southern Pacific are collectively referred to as "Union Pacific").

G.     In 1887, the State of California granted to and permitted Union Pacific the right to take, hold and use portions of property situated within the Port of Los Angeles, inclusive of a 200-foot right of way through the Port of Los Angeles, which included the Sliver/Adjacent Area, as well as portions of the Marine Oil Terminal.

H.     On January 1, 1949, Union Pacific entered into a ten-year lease with Occidental for the lease of the original portion of the Sliver Site (Lease Audit 92086), commencing on January 1, 1949, which provided Occidental with the right to occupy the Sliver Site, "solely and exclusively for erection and maintenance of storage tanks

for handling caustic soda and other products." Union Pacific's initial Sliver Site lease with Occidental was expanded to include additional property in 1956 to encompass the current area being referred to by the Parties as the "Sliver Site," and thereafter the lease term was extended multiple times with the lease ultimately expiring on December 31, 1978.

I.    On February 16, 1949, pursuant to Order No. 2259 and effective January 1, 1949, the City granted Occidental a ten-year permit to operate on the original footprint of the Sliver Site, for the construction, maintenance and operation thereon of storage tanks for handling caustic soda and other products. The City's initial permit/lease to Occidental was expanded to include additional property in 1956 to encompass the current footprint of the Sliver Site, and the permit/lease term was thereafter extended several times, until it expired also on December 31, 1978.

J.    On July 10, 1981, LAT was incorporated as a California corporation.

K.    On August 6, 1981, a company known as "Holchem Inc." ("Holchem") was incorporated as a Delaware corporation. Soco West is the successor in interest to Holchem.

L.    When incorporated in 1981, LAT and Holchem were sister corporations that were wholly owned by the same corporate parent (as are LAT and Soco today), and upon LAT commencing its terminal storage operations on the Sliver Site, Holchem acted as the "sales arm" for the sale of chemical products that were being stored by LAT on the Sliver Site.

M.    In 1993, LAT ceased its operations and emptied and cleaned all of the storage tanks on the Sliver Site, and thereafter in 1993 proceeded to demolish and remove the storage tanks and their associated pipelines. LAT also vacated the Sliver/Adjacent Area in 1993.

N.    Since 1993, no chemical storage or distribution operations have been conducted on the Sliver/Adjacent Area, and the property has been vacant from 1993 to the present date.

O.    Beginning as early as the 1920s, Union Oil and/or its affiliates conducted petroleum storage and distribution operations on a marine oil terminal located, initially at Port of Los Angeles Berths 150-151 to the east of the Sliver Site and, beginning in or about 1956, also at Berths 148-149 to the west of the Sliver Site. Since 1956, the combined marine oil terminal properties have comprised the approximately 13.5 acres that are referred to in this Settlement Agreement as the Marine Oil Terminal, and have included rights to receive and discharge cargo at the

Berths 148-151 wharves (hereafter the Marine Oil Terminal and the Berths 148-151 wharves, are collectively referred to herein as the "LAMT" [Los Angeles Marine Terminal]).

P.     In or about April of 1997, as part of a larger asset sale, Tosco acquired all of Union Oil's assets at the LAMT, including the right to occupy and operate thereon.  Thereafter, in August 2002, ConocoPhillips succeeded to Tosco's rights, liabilities and assets at the LAMT, and in May 2012, Phillips 66 succeeded to ConocoPhillips's rights and assets.

Q.     By no later than 1991, "HVOC Contamination" and "TPH Contamination" (as both terms are defined below) had been discovered on, at, in, and beneath the soils and groundwater at the Sliver/Adjacent Area and the Marine Oil Terminal, and at properties adjacent thereto, including, allegedly, in the waters and sediments of the Los Angeles Harbor.

R.     In approximately 1995, and thereafter again in 2001, 2003 and 2005, and potentially at other times, LAT, Soco, Union Oil, Tosco, ConocoPhillips and/or Occidental, and their Affiliates, entered into various cost-sharing agreements (hereafter, collectively, "Cost-Sharing Agreements" as more particularly defined below), for purposes of sharing in the costs of conducting certain investigation, assessment, study, testing, sampling, pilot work, reporting, monitoring, mitigation, abatement, cleanup and/or remediation of either the HVOC Contamination and/or the TPH Contamination.

S.     On or about March 2, 2018, the City filed its First Amended Complaint in the State Action naming as defendants LAT, Occidental, and others, and asserting multiple legal theories of liability for the alleged environmental contamination at, on, beneath and in the vicinity of the Site.

T.     On or about August 6, 2018, LAT filed a cross-complaint in the State Action initially naming Occidental, Union Oil and Phillips 66 as cross-defendants.

U.     On May 23, 2019, LAT filed a First Amended Cross-Complaint in the State Action, which amendment, among other revisions, added Union Pacific as a Cross-Defendant.

V.     On July 27, 2020, Union Pacific filed a Cross-Complaint in the State Action, naming LAT, Occidental and Union Oil, among others, as cross-defendants. Union Pacific filed a First Amended Cross-Complaint in the State Action on December 11, 2020, and a Second Amended Cross-Complaint in the State Action on January 25, 2022.

W.      On May 28, 2019, the City filed its Second Amended Complaint in the State Action, naming, among other newly added defendants, Phillips 66, Union Oil, Union Pacific and Soco West as defendants. On January 2, 2020, the City filed its Third Amended Complaint in the State Action, and on October 2, 2020, the City filed its Fourth Amended Complaint in the State Action (the City's Fourth Amended Complaint is its operative complaint in the State Action).

X.      With limited exceptions, including allowing motion practice on the parties' various contractual claims against one another, the Superior Court has stayed the State Action, and Phillips 66 has not yet been afforded the opportunity to allege any claims against any of the parties in the State Action, including any claims based on the allegation that the HVOC Contamination has migrated onto and beneath Phillips 66's leasehold property within the LAMT.

Y.      On August 6, 2018, LAT filed a separate complaint in the United States District Court, Central District of California, captioned *L.A. Terminals, Inc. v. City of Los Angeles et al.*, Case No. 2:18-cv-06754 relating to the same HVOC Contamination within the Site, naming Occidental and the City as defendants, and alleging claims under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. sections 9601 *et seq.* ("CERCLA"), among other claims. As used herein, the term "Federal Action" shall mean the lawsuit entitled *L.A. Terminals, Inc. v. City of Los Angeles, et. al.*, U.S.D.C. Case No. 2:18-CV-06754-MWF-PVC, filed on August 6, 2018, including the First Amended Complaint and all counterclaims, cross-claims and third-party claims filed in such entitled action.

Z.      On March 20, 2019, LAT filed a First Amended Complaint in the Federal Action, amending its original complaint to, among other amendments, add Union Pacific as a defendant.

AA.     Since the filing of LAT's initial complaint in the Federal Action, multiple counterclaims, cross-claims and third-party complaints have been filed by and between the parties in that action, including claims by the City and Union Pacific as against both LAT and Soco.

BB.     LAT did not name Phillips 66 or ConocoPhillips in its initial Complaint in the Federal Action, nor in its First Amended Complaint in the Federal Action, and neither did Phillips 66 name LAT or Soco in its responsive pleadings to the third-party complaints filed against Phillips 66 in the Federal Action, but multiple counterclaims, cross-claims, and third-party complaints have been filed by the various parties in the Federal Action, including claims under state law and, as a result

thereof, Phillips 66 has been made a party to the Federal Action, and has filed various claims of its own in that action, except none against LAT and Soco.

CC.    As the Plaintiff in the Federal Action, LAT has alleged it has incurred in excess of $900,000 in "response costs" as defined under CERCLA, and is seeking the recovery of all such costs in the Federal Action, among other relief, from the defendants in that action *i.e.*, the City, Occidental and Union Pacific; however, by entering into this Settlement Agreement and the Consent Decree, LAT is agreeing to waive and release all parties in both the Federal and State Actions, from and against any and all claims it has or may have involving the Site (defined below), including its claim for the recovery of its "response costs".

DD.    On July 7, 2022, the California Regional Water Quality Control Board, Los Angeles Region ("Regional Water Board" or "Regional Board") issued Cleanup and Abatement Order No. R4-2022-0139 to the City, Occidental, LAT and Phillips 66, which order was amended on March 14, 2024, to also name Union Pacific, with the Cleanup Order, as amended, requiring all named parties to further investigate and remediate the HVOC and TPH contamination.  The Site is currently under Regional Board oversight for assessment and cleanup purposes.

EE.    On April 26, 2023, Plaintiff and Soco West filed a Notice of Suggestion of Bankruptcy in both the State Action and in the Federal Action, For Brilliant National Services, Inc., L.A. Terminals, Inc., Soco West, Inc., and Whittaker, Clark & Daniels, Inc. and Notice of Automatic Stay of Proceedings, advising both Courts in the State and Federal Actions, of their filing of petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").  Dkt. # 460.  Copies of the voluntary petitions of each of the Debtors, Brilliant National Services, Inc., Case No. 23-13576 (MBK); L. A. Terminals, Inc., Case No. 23-13581 (MBK); Soco West, Inc., Case No. 23-13578 (MBK); and Whittaker, Clark & Daniels, Inc., Case No. 23-13575 (MBK) (collectively, "Bankruptcy Action"), were included with the Notices of Suggestion of Bankruptcy filed in the State and Federal Actions by Plaintiff and Soco West.

FF.    Over the course of the last approximately six months, LAT, Occidental and Union Oil, have engaged in settlement negotiations and participated in mediation proceedings which have culminated in a [Proposed] Consent Decree among such parties, to be approved by the Bankruptcy Court and entered by the U.S. District Court in the Federal Action (hereafter, "Consent Decree" or "[Proposed] Consent Decree").  Although the City, Phillips 66 and Union Pacific are not parties to the [Proposed] Consent Decree, such Parties, and LAT, Occidental and Union Oil,

have all stipulated to the approval of the Consent Decree by the Bankruptcy Court, as well as the approval and entry of the Consent Decree by the U.S. District Court.

GG.    Similarly, the Parties to this Settlement Agreement have engaged in settlement negotiations and participated in mediation proceedings, which have culminated in the Parties agreeing to enter into this Settlement Agreement, and into their agreement to stipulate to the entry of the [Proposed] Consent Decree by the U.S. District Court in the Federal Action.

HH.    This Settlement Agreement is a companion agreement to the Consent Decree being proposed in the Federal Action by and between LAT, Soco, Occidental and Union Oil, with all parties in the Federal Action and the State Action desiring to resolve their disputes involving LAT and Soco, amicably, rather than through adversarial proceeding in the Bankruptcy Court.

II.    This Settlement Agreement will become effective only if its terms and the terms of the [Proposed] Consent Decree are both approved by the Bankruptcy Court, and only if the Consent Decree is thereafter approved by the U.S. District Court in the Federal Action.

JJ.    Under the Consent Decree, Occidental is agreeing with LAT, Soco and Union Oil to, among other obligations, "use its best efforts to timely and diligently assess, study, investigate, test, sample, report, monitor, mitigate, remove, abate, remediate or otherwise cleanup the HVOC Contamination in, on, under or within the Site ('Remediation Work'), as directed or required by the Regional Water Board."

KK.    In exchange for the commitments in the Consent Decree by Occidental to conduct the Remediation Work, and in exchange for the City, Union Pacific and Phillips agreeing to dismiss and waive and release any and all claims they currently have or may have against LAT and Soco, among other consideration, LAT has agreed to provide similar dismissals, waivers and releases of the City, Union Pacific and Phillips 66, and has further agreed that payments will be made by two of LAT's insurance carriers, totaling $2,749,999 (collectively, "LAT Settlement Payment") to Occidental, with all such funds being required to be deposited by Occidental into a segregated, interest bearing "Sliver Site Remediation Account", which account is to be used exclusively by Occidental to fulfill its "Remediation Obligation" as described in the Consent Decree (*e.g.*, to clean up the HVOC Contamination to the satisfaction of the Regional Board), and for no other purpose.

LL.    LAT has stated that time is of the essence in securing the funds from LAT's insurance carriers for the LAT Settlement Payment, and in obtaining the

approval of the Bankruptcy Court of the settlement terms set forth in the Consent Decree and in this Settlement Agreement. Accordingly, and to avoid the time and expense of pursuing claims in the Bankruptcy Court against LAT and Soco, and/or further protracted negotiations and attempted compromise towards a global settlement with all parties involved in the State and Federal Actions, the City, Union Pacific and Phillips 66, although not joining in the Consent Decree as "Settling Parties," have nonetheless elected to stipulate to the entry of the Consent Decree by the U.S. District Court in the Federal Action, and to dismiss all of their pending claims in that action, without prejudice, as against each other and as against Occidental and Union Oil, and with prejudice as against LAT and Soco, and have further agreed to enter into this Settlement Agreement with LAT and Soco.

MM. The Parties intend and desire by this Settlement Agreement, to fully settle and dispose of all of their disputes in their entirety as against LAT and Soco, and by LAT and Soco as against the City, Union Pacific and Phillips 66, without any Party admitting any liability or the validity of any asserted claims or defenses, including any and all claims, potential claims, complaints, demands, causes of action, potential counterclaims, and attorneys' fees, relating to the HVOC Contamination and/or the TPH Contamination at, on, beneath, and affecting the Site and properties adjacent thereto, including, allegedly, the waters and sediments of Los Angeles Harbor.

## AGREEMENT

1.    **Incorporation Of Recitals**. The above referenced recitals are hereby incorporated into this Settlement Agreement as though fully set forth herein.

2.    **Definitions**. Each capitalized term used in this Agreement shall have the meaning defined above in the introductory paragraph and/or Recitals, or if not otherwise defined, shall have the following meaning, except that the definitions below shall govern over any conflict with any definition set forth in the Recitals:

a.    "Affiliate" shall mean any predecessor, successor, parent, subsidiary, sister or related corporation, company, department or division of a Party, and any and all employees, officers, directors, board members, council members, and/or assigns of a Party. For purposes of this Settlement Agreement, Soco West shall be considered an "Affiliate" of LAT, and ConocoPhillips shall be considered an "Affiliate" of Phillips 66;

b.    "Claim" or "Claims" shall mean and include any and all past, present or future causes of action, rights of action, suits, administrative

proceedings, judgments, orders, demands or claims of damages or liability of any kind or nature, including any claim for contribution, equitable indemnity, injunctive relief, declaratory relief or other similar relief, and including any and all claimed or demanded "response costs" or natural resource damages, or other similar costs or damages involving any investigation, cleanup, abatement, mitigation, monitoring, or removal or remedial work, arising under any contract or under any federal, state, regional, county or local law, rule, regulation, common law, ordinance, order or directive, of any kind or nature, including under CERCLA, the HSAA and/or the California Porter-Cologne Water Quality Control Act (California Water Code section 13000 et. seq.), and shall further include any and all losses, property damages, bodily injuries, personal injuries, death, consequential damages, costs, fees, expenses, liens, fines, penalties, sanctions, attorneys', consultants' and/or experts' fees and costs, litigation costs, court and arbitration and mediation costs, fees, charges and expenses, interest and carrying costs, lost opportunity costs, lost rent, diminution in property value, demands or requests for injunction relief, declaratory relief, specific performance, restitution, reimbursement, equitable or express indemnity, contribution and/or set-off of whatever kind or nature, whether claimed, demanded or requested in any form, including in any civil suit, arbitration, mediation, administrative proceeding, or regulatory enforcement action or proceeding.

c.    "Cleanup Order" shall mean and refer to Cleanup and Abatement Order No. R4-2022-0139, issued by the Regional Water Board on July 7, 2022, and amended on March 14, 2024, along with all other amendments thereto.

d.    "Consent Decree" shall mean and refer to the [Proposed] Consent Decree entered into by and between LAT, Soco, Occidental and Union Oil in the Federal Action, as ultimately approved by the U.S. District Court, and any and all amendments or modifications thereto that may be approved and entered by the U.S. District Court.

e.    "Cost-Sharing Agreement or Agreements" shall mean any cost sharing agreement of any kind or nature entered into by and between Union Oil, Tosco, ConocoPhillips, LAT and/or Occidental, or by any Affiliate of the foregoing, with the stated purpose of sharing in the costs of conducting any investigation, assessment, study, testing, sampling, pilot work, reporting, monitoring, mitigation, abatement, cleanup and/or remediation of either the HVOC Contamination and/or the TPH Contamination,

including but not limited to those agreements entered into by some or all of the aforementioned parties in 1995, 2001, 2003 and 2005, and potentially at other times, and specifically including the Remediation and Cost Sharing Agreement entered into on or about May 25, 2001 by LAT and an Affiliate of Occidental.

f.      "Effective Date" shall mean the date the U.S. District Court in the Federal Action approves the Consent Decree.

g.      "HSAA" shall mean the California Hazardous Substances Account Act, Cal. Health & Safety Code § 25300 et. seq., recodified at Cal. Health & Safety Code § 78000 et. seq.

h.      "HVOC Contamination" shall mean the existence or potential existence of any HVOCs in soil, soil vapor, surface water, perched water, groundwater, harbor water, harbor sediment, ambient air and/or indoor air, at, in, on, under and/or within any part or portion of the Site, and inclusive of any HVOCs migrating from the Site.

i.      "HVOCs" shall mean halogenated volatile organic compounds, including "trichlorethylene," also known as "TCE"; "perchlorethylene" also known as "tetrachlorethylene" or "PCE"; "1,1,1 trichlorethane" also known as "1,1,1 TCA" or "TCA"; and "methylene chloride" also known as "dichloromethane"; and all additives thereto, and all breakdown daughter chemicals and compounds therefrom.

j.      "Regional Board" or "Regional Water Board" shall mean the California Regional Water Quality Control Board, Los Angeles Region.

k.      "Site" shall mean the location identified in the Cleanup Order, and all real property, including all soil, soil vapor, surface water and/or groundwater on or within such property, that has been or may be impacted with HVOCs and/or TPH as a result of any operations conducted on or within the Sliver/Adjacent Area, Berth 155A, the Marine Oil Terminal, all pipeline areas within or leading to such properties, the dock and wharf areas within Berths 148 to 151, and/or any Harbor sediment or Harbor waters where HVOCs or TPH may have come to be located.

l.      "LA Superior Court Action" shall mean the lawsuit entitled *City of Los Angeles v. L.A. Terminals, Inc. et. al*, LASC Case No. NC061591, including all amended complaints and all counter-claims and cross-claims filed or to be filed in connection therewith.

m.    "TPH" shall mean total petroleum hydrocarbon chemicals.

n.    "TPH Contamination" shall mean the existence or potential existence of any TPH in soil, soil vapor, surface water, perched water, groundwater, harbor water, harbor sediment, ambient air and/or indoor air, at, in, on, under and/or within any part or portion of the Site, and inclusive of any TPH migrating to or from the Site.

3.    **Payment.**    In consideration of the promises and agreements forth herein, and although no monetary payment shall be made between the Parties hereto or to any of their Affiliates, pursuant to the requirements of the Consent Decree, LAT has agreed that it will cause its insurance carriers to pay the following amounts to Occidental, for deposit into the "Sliver Site Remediation Account" and to be used exclusively by Occidental to fulfill its "Remediation Obligation" as described in the Consent Decree, *i.e.*, to clean up the HVOC Contamination to the satisfaction of the Regional Board and for no other purpose:

a)    Two million seven hundred forty-nine thousand nine hundred and ninety-nine dollars ($2,749,999) to be paid on behalf of LAT as follows: (i) one million nine hundred and ninety-nine thousand nine hundred and ninety nine dollars ($1,999,999) of which will be paid by United National Insurance Company ("United National"), as an indemnity payment on behalf of LAT, pursuant to policy nos. GA81118, GA81138, GA81186 and GA502997 ("United Policies"); this indemnity payment shall be allocated as follows under the United Policies: GA81118 ($500,000), GA81138 ($500,000), GA81186 ($500,000) and GA502997 ($499,999); and (ii) seven hundred fifty thousand dollars ($750,000) of which will be paid by Granite State Insurance Company ("AIG"), as an indemnity payment on behalf of LAT pursuant to Granite State Policy No. 6383 – 0975 ("Granite Policy") (collectively, "LAT Settlement Payment");

b)    No payment made pursuant to this section, by or on behalf of LAT, shall have any force or effect of any kind or nature on LAT's and/or Soco's rights, title and interest in any current or future claim against United National or AIG, to recover any defense costs, fees, expenses, and interest, or to obtain any other indemnity under the United Policies, the Granite Policy, or otherwise, including any rights, title and interest LAT and Soco currently have or may obtain in the future to recover defense costs, fees, expenses, interest, and/or other indemnity, pursuant to any court orders or judgments obtained or to be obtained against United National and/or AIG.

4.    **Restrictions On Use Of Settlement Payment Funds**:    In consideration of the City's, Union Pacific's and Phillips 66's agreement to stipulate to the entry of the Consent Decree, and in further consideration of the promises and mutual releases set forth in this Agreement, LAT has negotiated, among other requirements, that the LAT Settlement Payment to be paid pursuant to the terms of the Consent Decree, is to be used exclusively by Occidental: "to timely and diligently assess, study, investigate, test, sample, report, monitor, mitigate, remove, abate, remediate or otherwise cleanup the HVOC Contamination ('Remediation Work'), notwithstanding the presence of or comingling with TPH contamination, as directed or required by the Regional Water Board or Other Regulatory Agency, including, but not limited to, as necessary to timely comply with any and all existing or future requirements set forth in the Cleanup Order, and/or in any other order, directive or requirement imposed or which may be imposed by the Regional Board or Other Regulatory Agency that concerns or relates to the HVOC Contamination."

5.    **Releases of Claims By And Against LAT And Soco**.  The Parties hereto represent, warrant, covenant and agree as follows:

a.    City/UP/Phillips Release of Claims Against LAT and Soco.  As of the Effective Date, and except for the rights and obligations provided for in this Settlement Agreement, the City, Union Pacific and Phillips 66, and their respective Affiliates, and each of them ("City/UP/Phillips Releasors"), on the one hand, hereby waive, release, acquit and forever discharge LAT and Soco, and their respective Affiliates, and each of them ("LAT Released Parties"), on the other hand, from and against any and all Claims, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, administrative, legal or equitable, past, present, or future, that concern, relate to or arise out of:  (a) the Federal Action; (b) the State Action; (c) the Cleanup Order; (d) the Site; (e) the existence or potential existence of any HVOC Contamination and/or any TPH Contamination, including, without limiting the foregoing, the aerial extent of any HVOC and/or TPH Contamination allegedly resulting from any activities and/or operations occurring on the Site; and (f) any Cost-Sharing Agreement or Agreements, (hereinafter, collectively the "City/UP/Phillips Released Claims").  The releases, waivers and discharges provided for in this paragraph are intended to be full and complete releases, waivers and discharges of any and all of the City/UP/Phillips Released Claims existing or which may exist in the future against any of the LAT Released Parties.

b.     <u>LAT and Soco Release of Claims Against City/UP/Phillips.</u>  As of the Effective Date, and except for the rights and obligations provided for in this Settlement Agreement, LAT and Soco, and their respective Affiliates, and each of them ("LAT Releasors"), on the one hand, hereby waive, release, acquit and forever discharge the City, Union Pacific and Phillips 66, and their respective Affiliates, and each of them ("City/UP/Phillips Released Parties"), on the other hand, from and against any and all Claims, whether known or unknown, asserted or unasserted, suspected or unsuspected, foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, administrative, legal or equitable, past, present, or future, that concern, relate to or arise out of: (a) the Federal Action; (b) the State Action; (c) the Cleanup Order; (d) the Site; (e) the existence or potential existence of any HVOC Contamination and/or any TPH Contamination, including, without limiting the foregoing, the aerial extent of any HVOC and/or TPH Contamination allegedly resulting from any activities and/or operations occurring on the Site; and (f) any Cost-Sharing Agreement or Agreements, (hereinafter, collectively the "LAT Released Claims").   The releases, waivers and discharges provided for in this paragraph are intended to be full and complete releases, waivers and discharges of any and all of the LAT Released Claims existing or which may exist in the future by the LAT Releasors against any of the City/UP/Phillips Released Parties.

c.     As to both the City/UP/Phillips Released Claims and the LAT Released Claims (collectively, "Released Claims"), the Parties acknowledge that there is a risk that, subsequent to their execution of this Settlement Agreement, they may discover, incur, or suffer from Claims which were unknown or unanticipated at the time this Settlement Agreement was executed by them, including, without limitation, unknown or unanticipated Claims, which if known by them on the date they executed the Settlement Agreement, may have materially affected their decision to execute this Settlement Agreement, and they acknowledge that they are assuming the risk of such unknown or unanticipated Claims, and are familiar with and are willingly and knowingly expressly waiving the benefits of Section 1542 of the California Civil Code, and any similar or related section.   Section 1542 of the California Civil Code provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR**

**SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

d.      The Parties acknowledge and agree that they may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the Released Claims, but recognize this possibility and expressly waive and release any and all rights they have or may have under California Civil Code Section 1542 and any similar or related provision with respect to the Released Claims.

e.      With respect to the Released Claims, each Party and its respective Affiliates, represents, warrants, covenants and agrees that it will not bring any action, whether in law or in equity, as a claim, counterclaim, cross-claim, and/or third-party claim, and whether in any judicial, administrative or non-judicial forum, with respect to any Released Claims that said Party has expressly released, waived and discharged, except as may be necessary to interpret or enforce the provisions of this Settlement Agreement.

f.      Each of the Parties herein expressly represents, warrants and covenants that said Party has not previously assigned, hypothecated or otherwise transferred to any other person or entity not a Party to this Settlement Agreement, any Released Claim that it has released, waived and discharged in this Agreement.

**6.      Dismissals Of Claims In State And Federal Actions.**  The Parties agree that all claims/causes of action pending against LAT and Soco, and all LAT claims/causes of action pending against the City, Union Pacific and Phillips 66, in the State and Federal Actions, are to be dismissed with prejudice, and that all other claims/causes of action brought by the City, Union Pacific and Phillips 66 against Occidental and Union Oil in the Federal Action, and vice versa, are to be dismissed without prejudice, as follows:

a.      Within ten (10) days of the Effective Date, the City and Union Pacific will file a Request for Dismissal, with prejudice, of any and all claims/causes of action they had or have pending against LAT and/or Soco in the State Action.  Similarly, within ten (10) days of the Effective Date, LAT will file a Request for Dismissal, with prejudice, of any and all claims/causes of action it had or has pending against the City, Union

Pacific and Phillips 66 in the State Action. Phillips 66 and Soco West represent and warrant that as of the Effective Date, they have no claims or causes of action pending against each other or against LAT in the State Action, and thus, neither Phillips 66, nor Soco will be filing any Requests for Dismissal in the State Action

b.    The Parties shall enter into a stipulation in the Federal Action wherein they are stipulating and agreeing to, among other issues, the entry of the Consent Decree, and further, that by entry of the Consent Decree, all claims/causes of action in the Federal Action brought by LAT against the City and Union Pacific, and by the City and Union Pacific against LAT and Soco, are to be dismissed with prejudice. LAT, Soco and Phillips 66 have no claims/causes of action pending against each other in the Federal Action.

c.    The Parties additionally agree that, also through their stipulation in the Federal Action and the entry of the Consent Decree, the claims/causes of action brought by the City, Union Pacific and Phillips 66 as against each other in the Federal Action, are all to be dismissed without prejudice.

d.    The Parties further agree that, also through their stipulation in the Federal Action and the entry of the Consent Decree, the claims/causes of action in the Federal Action brought by the City, Union Pacific and Phillips 66 against Occidental and Union Oil, and by Occidental and Union Oil against the City, Union Pacific and Phillips 66, are all to be dismissed without prejudice.

7.    **Attorney's Fees**. The City, as to LAT and Soco, and LAT and Soco, as to the City, shall each bear their own attorney's fees, costs and expenses incurred in connection with the Federal Action, the State Action, the Cleanup Order, and any other matter relating to the Site. Union Pacific, as to LAT and Soco, and LAT and Soco, as to Union Pacific, shall each bear their own attorney's fees, costs and expenses incurred in connection with the Federal Action, the State Action, the Cleanup Order, and any other matter relating to the Site. Phillips 66, as to LAT and Soco, and LAT and Soco, as to Phillips 66, shall each bear their own attorney's fees, costs and expenses incurred in connection with the Federal Action, the State Action, the Cleanup Order, and any other matter relating to the Site. However, in the event that any action, proceeding or lawsuit is brought to interpret or enforce the terms of this Settlement Agreement, the prevailing Party or Parties shall be entitled to recover all reasonable attorneys' fees and costs incurred in connection with such action, proceeding or lawsuit.

8.    **<u>Miscellaneous</u>**:

a.    Each Party acknowledges and agrees it is entering into this Agreement solely for the purposes of settlement and the negotiated compromise of disputed claims and contentions and without the admission of any liability or of any violation of law.

b.    If any non-material provision of this Agreement is held to be illegal or invalid by a court of competent jurisdiction, such provision shall be deemed to be severed and deleted, but the remaining provisions of this Agreement shall remain in full force and effect.

c.    No Party has assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, potential claims, demands, and cause or causes of action disposed of by this Settlement Agreement.

d.    The Parties will execute any and all such further and additional documents as shall be reasonable, customary, or necessary to carry out the provisions of this Agreement.

e.    Any waiver of any breach of any provision of this Agreement, shall not be a waiver of any succeeding breach or a waiver of any other provision of this Agreement.

f.    This Agreement is the entire agreement between the Parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous oral or written agreements and discussions.

g.    This Agreement may be amended only by an agreement in writing, executed by all Parties affected thereby.

h.    This Agreement is binding upon and shall inure to the benefit of the Parties hereto and their respective Affiliates, agents, attorneys, representatives, successors and assigns.

i.    Except as expressly stated in this Agreement, nothing in this Agreement shall be construed as intending to benefit any person or entity that is not a party to this Agreement, and nothing in this Agreement is intended to confer any rights or benefits to any third-party that is not a party to this Agreement.

j.      This Agreement shall be deemed to have been drafted equally by the Parties, and any rule of construction providing that an ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Settlement Agreement.

k.      If the date by which any action must be taken pursuant to this Agreement is a Saturday, Sunday, federal banking holiday, or State court holiday, then that date will be extended until the next calendar day which is not a Saturday, Sunday, federal banking holiday, or State court holiday.

l.      This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one agreement, which shall be binding upon and effective as to all Parties.

m.      Each individual signing below warrants and represents that he or she has been provided full authority by the Party on whose behalf this Agreement is being executed.

[signatures appear on next page]

Dated: _April 2, 2025_____

Mohsin Meghji
Chief Restructuring Officer
1700 Broadway, 19th Floor
New York, NY 10019
mmeghji@m3-partners.com

**L.A. TERMINALS, INC.**

Signature: _____

Name:      ~~Raj Mehta~~
Title:       ~~President, L.A. Terminals, Inc.~~
Address:  ~~100 First Stamford Place~~
             ~~Stamford, CT 06902~~

Email:      ~~rmehta@bnserv.com~~

Dated: _April, 2, 2025_____

Mohsin Meghji
Chief Restructuring Officer
1700 Broadway, 19th Floor
New York, NY 10019
mmeghji@m3-partners.com

**SOCO WEST, INC.**

Signature: _____

Name:      ~~Raj Mehta~~
Title:       ~~President, Soco West, Inc.~~
Address:  ~~100 First Stamford Place~~
             ~~Stamford, CT 06902~~

Email:      ~~rmehta@bnserv.com~~

Dated: _____

**PHILLIPS 66 COMPANY**

Signature: _____
Name:      _____
Title:       _____
Address:  _____
             _____

Email:      _____

Dated: _____

**CITY OF LOS ANGELES, BY AND THROUGH ITS BOARD OF HARBOR COMMISSIONERS**

Signature: _____
Name:      Eugene D. Seroka____
Title:       Executive Director____
Address:  425 S. Palos Verdes Street
             San Pedro, CA 90731

Email:      _____

Attest: _____
Name:   Amber M. Klesges
Title:    Board Secretary

Dated: _____

**L.A. TERMINALS, INC.**

Signature: _____
Name:       Raj Mehta
Title:        President, L.A. Terminals, Inc.
Address:   100 First Stamford Place
                 Stamford, CT 06902
Email:      rmehta@bnserv.com

Dated: _____

**SOCO WEST, INC.**

Signature: _____
Name:       Raj Mehta
Title:        President, Soco West, Inc.
Address:   100 First Stamford Place
                 Stamford, CT 06902
Email:      rmehta@bnserv.com

Dated: _____October 1, 2024_____

**PHILLIPS 66 COMPANY**

Signature: _____
Name:       HENRY A. BARZOTTI
Title:        GENERAL MANAGER
Address:   1660 W. ANAHEIM ST.
                 WILMINGTON CA 90744
Email:      HENRY.A.BARZOTTI@P66.COM

Dated: _____

**CITY OF LOS ANGELES, BY AND THROUGH ITS BOARD OF HARBOR COMMISSIONERS**

Signature: _____
Name:       Eugene D. Seroka
Title:        Executive Director
Address:   425 S. Palos Verdes Street
                 San Pedro, CA 90731
Email:      _____

Attest: _____
Name:       Amber M. Klesges
Title:        Board Secretary

Dated: _____

**L.A. TERMINALS, INC.**

Signature: _____
Name:      Raj Mehta
Title:     President, L.A. Terminals, Inc.
Address:   100 First Stamford Place
           Stamford, CT 06902
Email:     rmehta@bnserv.com

Dated: _____

**SOCO WEST, INC.**

Signature: _____
Name:      Raj Mehta
Title:     President, Soco West, Inc.
Address:   100 First Stamford Place
           Stamford, CT 06902
Email:     rmehta@bnserv.com

Dated: _____

**PHILLIPS 66 COMPANY**

Signature: _____
Name:      _____
Title:     _____
Address:   _____

Email:     _____

Dated: OCTOBER 1, 2024

**CITY OF LOS ANGELES, BY AND THROUGH ITS BOARD OF HARBOR COMMISSIONERS**

Signature: _____
Name:      Eugene D. Seroka
Title:     Executive Director
Address:   425 S. Palos Verdes Street
           San Pedro, CA 90731
Email:     _____

Attest:    _____
Name:      Amber M. Klesges
Title:     Board Secretary

Dated: *October 22, 2024*

**UNION PACIFIC RAILROAD COMPANY**

Signature: _____

Name: *JAMES B. BOLES*

Title: *VICE PRESIDENT - LAW*

Address: *1400 Douglas St MS1580*
*Omaha, NE 68179*

Email: *JBBOLES @ UP. COM*


**APPROVED AS TO FORM:**

RUTAN & TUCKER, LLP
RICHARD MONTEVIDEO
TRAVIS VAN LIGTEN

Dated: _____, 2024

By: _____
    Richard Montevideo
    Attorneys for L.A. TERMINALS,
    INC. and SOCO WEST, INC.


Hydee Feldstein Soto, City Attorney
Steven Y. Otera, General Counsel
Kenneth F. Mattfeld, Assistant
Janet L. Karkanen, Deputy

Dated: _____, 2024

By: _____
    Kenneth F. Mattfeld
    Attorneys for THE CITY OF LOS
    ANGELES, acting by and through its
    Board of Harbor Commissioners


BOOTH LLP
Joshua N. Levine

Dated: _____, 2024

By: _____
    Joshua N. Levine
    Attorneys for THE CITY OF LOS
    ANGELES

Dated: _____    **UNION PACIFIC RAILROAD COMPANY**

Signature: _____
Name:      _____
Title:       _____
Address:   _____
                    _____

Email:      _____

**APPROVED AS TO FORM:**

RUTAN & TUCKER, LLP
RICHARD MONTEVIDEO
TRAVIS VAN LIGTEN

Dated: <u>November 12</u>, 2024    By: _____
                                                        Richard Montevideo
                                                        Attorneys for L.A. TERMINALS,
                                                        INC. and SOCO WEST, INC.

Hydee Feldstein Soto, City Attorney
Steven Y. Otera, General Counsel
Kenneth F. Mattfeld, Assistant
Janet L. Karkanen, Deputy

Dated: _____, 2024    By: _____
                                                        Kenneth F. Mattfeld
                                                        Attorneys for THE CITY OF LOS
                                                        ANGELES, acting by and through its
                                                        Board of Harbor Commissioners

BOOTH LLP
Joshua N. Levine

Dated: _____, 2024    By: _____
                                                        Joshua N. Levine
                                                        Attorneys for THE CITY OF LOS
                                                        ANGELES

Dated: _____          **UNION PACIFIC RAILROAD COMPANY**

Signature: _____
Name: _____
Title: _____
Address: _____

Email: _____

**APPROVED AS TO FORM:**

RUTAN & TUCKER, LLP
RICHARD MONTEVIDEO
TRAVIS VAN LIGTEN

Dated: _____, 2024          By: _____
Richard Montevideo
Attorneys for L.A. TERMINALS,
INC. and SOCO WEST, INC.

Hydee Feldstein Soto, City Attorney
Steven Y. Otera, General Counsel
Kenneth F. Mattfeld, Assistant
Janet L. Karkanen, Deputy

Dated: _Sept. 26_, 2024          By: _____
Kenneth F. Mattfeld
Attorneys for THE CITY OF LOS
ANGELES, acting by and through its
Board of Harbor Commissioners

BOOTH LLP
Joshua N. Levine

Dated: _Oct 7_, 2024          By: _____
Joshua N. Levine
Attorneys for THE CITY OF LOS
ANGELES

HUGO PARKER, LLP
HEIDI K. HUGO

Dated: _____October 07_____, 2024

By: *Heidi K. Hugo*
_____
Heidi K. Hugo
Attorneys for THE CITY OF LOS
ANGELES


FARELLA BRAUN + MARTEL LLP
Sarah Peterman Bell
Linda S. Gilleran

Dated: _____, 2024

By: _____
Sarah Peterman Bell
Attorneys for UNION PACIFIC
RAILROAD COMPANY


STEPHEN THOMAS ERB, APC

Dated: _____, 2024

By: _____
Stephen Thomas Erb
Attorney for PHILLIPS 66
COMPANY

HUGO PARKER, LLP
HEIDI K. HUGO

Dated: _____, 2024          By: _____
                                          Heidi K. Hugo
                                          Attorneys for THE CITY OF LOS
                                          ANGELES


FARELLA BRAUN + MARTEL LLP
Sarah Peterman Bell
Linda S. Gilleran

Dated: __October 23__, 2024          By: _____
                                          Sarah Peterman Bell
                                          Attorneys for UNION PACIFIC
                                          RAILROAD COMPANY


STEPHEN THOMAS ERB, APC

Dated: _____, 2024          By: _____
                                          Stephen Thomas Erb
                                          Attorney for PHILLIPS 66
                                          COMPANY

HUGO PARKER, LLP
HEIDI K. HUGO

Dated: _____, 2024        By: _____
                                         Heidi K. Hugo
                                         Attorneys for THE CITY OF LOS
                                         ANGELES


FARELLA BRAUN + MARTEL LLP
Sarah Peterman Bell
Linda S. Gilleran

Dated: _____, 2024        By: _____
                                         Sarah Peterman Bell
                                         Attorneys for UNION PACIFIC
                                         RAILROAD COMPANY


STEPHEN THOMAS ERB, APC

Dated: __October 21,__, 2024        By: _____
                                         Stephen Thomas Erb
                                         Attorney for PHILLIPS 66
                                         COMPANY