JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. TERMINALS, INC., a California corporation,<br><br>         Plaintiff,<br><br>   vs.<br><br>CITY OF LOS ANGELES, a Municipal corporation, and OCCIDENTAL CHEMICAL CORPORATION, a New York corporation and UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation,<br><br>         Defendant.<br><br>AND RELATED COUNTERCLAIMS, CROSSCLAIMS AND THIRD-PARTY COMPLAINTS. | Case No. 2:18-CV-06754-MWF(PVCx)<br><br>Assigned for All Purposes to:<br>Hon. Michael W. Fitzgerald<br><br>**CONSENT DECREE** |

# I.        **PROCEDURAL BACKGROUND**

A.        Plaintiff L.A. Terminals Inc. ("Plaintiff" or "LAT") filed its complaint in this action on August 6, 2018, seeking to recover "response costs" and seeking declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.* ("CERCLA") against Defendants City of Los Angeles ("City") and Occidental Chemical Corporation ("Occidental"). Dkt. # 1. Plaintiff filed its First Amended Complaint on March 20, 2019, adding Union Pacific Railroad Company ("Union Pacific") as a defendant. Dkt. # 100. The City, Occidental and Union Pacific are collectively referred to as the "Defendants."

B.        Multiple counter-claims, cross-claims and third-party complaints were then filed by the Defendants, seeking contribution and declaratory relief under CERCLA, as well as legal and equitable relief under California law, including for breach of contract, express contractual indemnity, equitable indemnity and contribution and declaratory relief under California law, against the Plaintiff, each other and against Third-Party Defendants Phillips 66 Company ("Phillips 66"), Union Oil Company of California ("Union Oil"), Ash-Cross-Evans Corporation ("ACE" - appearing through Intervenor Wausau General Insurance Company - "Wausau"), Olympic Chemical Corporation ("Olympic"), and Soco West, Inc. ("Soco West" or "Soco") (collectively "Third-Party Defendants"). With the exception of Soco, the Third-Party Defendants in turn filed various counter-claims and cross-claims also seeking contribution and declaratory relief under CERCLA and equitable indemnity and contribution under California law. Phillips 66, in its Answer to Occidental's Second Amended Third-Party Complaint (Dkt. # 177), and in its Answer to Union Pacific's Second Amended Cross-Claims (Dkt. #256) additionally asserted claims for its own response costs under CERCLA section 9607 and for damages for nuisance and trespass under California law as against Defendants Occidental and Union Pacific. For purposes of this Consent Decree, the

term "Parties" shall mean and refer to the parties that remain in this case as of the Effective Date of this Consent Decree, *i.e.*, the Plaintiff, Occidental, the City, Union Pacific, Phillips 66, Union Oil and Soco; the term "Settling Parties" shall mean and refer to the Plaintiff, Soco, Occidental and Union Oil.

C.    Prior to Plaintiff filing its Complaint in this Action, the City filed a lawsuit in Los Angeles Superior Court, entitled, *City of Los Angeles v. L.A. Terminals, Inc. et. al*, LASC Case No. NC061591 ("LA Superior Court Action"), initially only against the LAT, but with the City thereafter amending its complaint several times and ultimately naming all of the parties that have been named in this Action.  In the LA Superior Court Action, the City seeks property damage and the recovery of past and/or future investigation and remediation costs, as well as declaratory and injunctive relief, all under California law, including under the California Hazardous Substances Account Act ("HSAA" – Cal. Health & Safety Code § 25300 et. seq., recodified at Cal. Health & Safety Code § 78000 et. seq), and pursuant to California contract laws and the common laws of nuisance and trespass. Multiple cross-claims and counter-claims were then filed by the Parties in the LA Superior Court Action against each other, all of which remain pending, except that, as to Wausau/ACE and Olympic, the State Court approved Wausau/ACE and Olympic's settlements as being in good faith, thus barring any equitable indemnity and/or contribution claims against such parties.  The LA Superior Court Action is currently stayed.

D.    On April 26, 2023, Plaintiff and Soco filed a Notice of Suggestion of Bankruptcy For Brilliant National Services, Inc., L.A. Terminals, Inc., Soco West, Inc., and Whittaker, Clark & Daniels, Inc. and Notice of Automatic Stay of Proceedings, advising this Court of the filing of petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").  Dkt. # 460.  Copies of the voluntary petitions of each of the Debtors, Brilliant National

Services, Inc., Case No. 23-13576 (MBK); L. A. Terminals, Inc., Case No. 23-13581 (MBK); Soco West, Inc., Case No. 23-13578 (MBK); and Whittaker, Clark & Daniels, Inc., Case No. 23-13575 (MBK) (collectively, "Bankruptcy Action"), were included with the Notice of Suggestion of Bankruptcy filed with this Court.

E.    On April 27, 2023, the U.S. District Court in this Action ("U.S. District Court" or "this Court") issued an Order, providing, among other directives, for the vacating of the then scheduled trial date of May 2, 2023, and for Plaintiff's attorney to file Status Reports regarding the bankruptcy every 90 days or within 10 days of a final resolution of the bankruptcy, whichever occurs first.  Dkt. #461.

F.    In addition to entering into this Consent Decree, Plaintiff and Soco West have entered into a separate settlement agreement ("SS Agreement") with the Excluded Parties, *i.e.*, the City, Phillips 66 and Union Pacific.  The effective date of the SS Agreement is the same as the Effective Date of this Consent Decree.  The SS Agreement provides, in sum, that, as of the Effective Date, the Excluded Parties are waiving, releasing and forever discharging the Plaintiff and Soco West, from and against any and all claims they have or may have in the future that concern or in any way relate to the Site, the HVOC Contamination and/or the TPH Contamination ("Litigation Release").  The SS Agreement includes the same Litigation Release extending from Plaintiff and Soco West to the Excluded Parties.  In sum, the SS Agreement will resolve all existing and future Claims by and between the Excluded Parties, on the one hand, and Plaintiff and Soco West on the other, both in this Action and in the LA Superior Court Action, but does not affect any of the Excluded Parties' Claims against each other, nor against Occidental and Union Oil.  Similarly, the SS Agreement has no effect on any of Occidental's or Union Oil's Claims against any of the Excluded Parties.

G.    The Parties have entered into a Stipulation in this Action ("Stipulation"), wherein all Parties have stipulated to, among other terms: (1) this Court's approval and entry of this Consent Decree; (2) the Bankruptcy Court's

Case No.  2:18-CV-06754-MWF(PVCx)
CONSENT DECREE

approval of the settlement terms that concern LAT and Soco, as reflected in this Consent Decree and in the SS Agreement; and (3) the Bankruptcy Court's issuance of an order lifting the automatic stay as to LAT and Soco, for the limited purpose of enabling this Court to review and, if appropriate, approve this Consent Decree and to retain jurisdiction to interpret and enforce its terms.

H.    Simultaneous with the filing of the Stipulation with this Court and the lodging of this Consent Decree, Plaintiff's Counsel filed with this Court a Notice of the Bankruptcy Court's Order (which filing attached a copy of the Bankruptcy Order), wherein the Bankruptcy Court: (1) approved the terms of LAT's and Soco's settlements, as reflected in this Consent Decree and in the SS Agreement; and (2) lifted the automatic stay of the proceedings in this Action as against LAT and Soco, for the limited purpose of enabling the Parties to process this Consent Decree and SS Agreement, and for this Court to review and, if appropriate, approve this Consent Decree and to retain jurisdiction to interpret and enforce its terms.

I.    On February 15, 2023, this Court approved a motion for good faith determination filed by Wausau, determining that a settlement entered into by and between Wausau on behalf of ACE, on the one hand, and the City, Occidental and Union Pacific, on the other hand, was in good faith, and resolving all claims brought by or against Wausau/ACE.  Dkt. # 436.

J.    On March 8, 2023, this Court issued an Order, pursuant to a stipulation submitted by all Parties (except Wausau/ACE), determining that a settlement entered into by and between Olympic, on the one hand, and the City, Occidental and Union Pacific, on the other hand, was in good faith, and resolving all claims brought by or against Olympic.  Dkt. # 454.

K.    On April 17, 2023, the Parties filed a Stipulation For Dismissal With Prejudice Of All Claims Asserted By Or Against Olympic Chemical Corporation Pursuant To F.R.C.P. 41(a)(1)(A)(ii) and 41(c).  Dkt. # 457.

L.    On April 18, 2023, the Parties filed a Stipulation For Dismissal With

Prejudice Of All Claims Asserted Against Ash-Cross-Evans Corp. Pursuant To F.R.C.P. 41(a)(1)(A)(ii) and 41(c).  Dkt. # 458.

M.     With the Court's approval of the Wausau/ACE and Olympic settlements and with the Court's issuance of this Consent Decree, all claims in this Action will have either been resolved or dismissed, and thus no claims in this Action will remain.

N.     Entry of this Consent Decree will therefore result in a resolution and/or dismissal of all pending claims in the Action, as set forth further below.  All claims in this Action brought by or against Plaintiff LAT and Soco will be fully and finally resolved by entry of this Consent Decree by this Court.  Further, upon entry of this Consent Decree, all other claims pending in this Action not involving Plaintiff LAT or Soco, will, by entry of this Consent Decree, be dismissed without prejudice. Finally, per the Parties' Stipulation and pursuant to the terms of this Consent Decree and the SS Agreement, upon entry of this Consent Decree by this Court, all claims pending in the LA Superior Court Action brought by or against Plaintiff LAT and/or Soco will separately be dismissed with prejudice by the Parties, through the filing of timely Requests for Dismissals in the LA Superior Court Action.  All Parties other than Plaintiff LAT and Soco, expressly reserve their rights to prosecute their Claims against each other in the LA Superior Court Action.

## II.     **FACTUAL BACKGROUND**

O.     The nature of the dispute in this Action and in the LA Superior Court Action concerns the investigation and cleanup of various "hazardous substances" known as "halogenated volatile organic compounds" or "HVOCs," located on and around property within the Port of Los Angeles and owned by the City.  The principal property in issue is generally referred to by the Parties as the "Sliver Site," and is a narrow .74-acre piece of property within the Port of Los Angles located at 560 Pier "A" Place, Wilmington, CA, where above ground storage tanks were previously used to store various chemicals, including HVOCs.  There is also a .76-

Case No.  2:18-CV-06754-MWF(PVCx)
CONSENT DECREE

acre piece of property immediately adjacent and to the west of the Sliver Site
("Sliver Adjacent Area"), which was used to store certain HVOC chemicals and
other chemicals and was principally otherwise used for loading and offloading
operations of the chemicals to be stored on the Sliver Site.  The Parties have referred
to the Sliver Site and the Sliver Adjacent Area collectively as the "Sliver/Adjacent
Area."

P.     Surrounding the Sliver/Adjacent Area to the east and west, is an
approximately 13.5-acre piece of property that has been operated as a marine oil
terminal since the 1920s (hereafter, "Marine Oil Terminal"), initially by Union Oil,
and thereafter by Tosco Corporation ("Tosco") and subsequently ConocoPhillips
("ConocoPhillips"), and now by Phillips 66.

Q.     Both the Sliver/Adjacent Area and the Marine Oil Terminal are
contaminated with HVOCs.

R.     Additionally, although not the subject of the Plaintiff's claims in this
Action, both the Sliver/Adjacent Area and the Marine Oil Terminal are
contaminated with certain petroleum hydrocarbon products.  Petroleum products
have been stored at the Marine Oil Terminal since the 1920s.  (The existence of the
total petroleum hydrocarbon ["TPH"] contamination is at issue in the LA Superior
Court Action, as is the HVOC Contamination.)

S.     Since 1911, the City has held, and currently holds, all rights, title and
interest, in trust, in all tidelands and submerged lands, whether filled or unfilled,
situated below the mean high tide line of the Pacific Ocean, within the boundaries of
the City or of any harbor, estuary, bay or inlet within said boundaries (with certain
exceptions not relevant in this case), including in the Sliver/Adjacent Area.

T.     In addition to its ownership of the Sliver/Adjacent Area, at all relevant
times herein, the City has held, and currently holds, all rights, title and interest, in
trust, in and to that area of land located just north of the Sliver Site in the Port of Los
Angeles, California, previously referred to as 953 Pier A Street, Wilmington, CA,

1    and commonly referred to as "Berth 155A".  In 1929, the City issued a five-year

2    permit to "Hooker Electro-Chemical Company" to operate on Berth 155A, for

3    purposes of constructing, maintaining and operating tanks, pumps, storehouses,

4    structures and pipelines for the handling, storage and distribution of caustic soda and

5    chlorine, and products and compounds thereof, and for purposes incidental thereto.

6    Defendant Occidental is the successor in interest to Hooker Electro-chemical

7    Company and Hooker Chemical Company, and all such entities are collectively

8    referred to as "Occidental."

9        U.    Also in 1929, the City issued to Occidental, a five-year permit to

10   construct, maintain and operate pipelines extending from the Harbor to Berth 155A,

11   for the purpose of transporting and distributing caustic soda and products and

12   compounds thereof to and from vessels.

13       V.    Subsequent to issuing the initial five-year permits, the City extended

14   Occidental's Berth 155A and related pipeline permits until July 31, 1949.

15       W.    In May of 1948, the City requested that Occidental move its chemical

16   operations from Berth 155A to the Sliver Site to facilitate the City's development

17   plans for the property at Berth 155A.  Occidental thus vacated Berth 155A and moved

18   to the Sliver Site in 1949.

19       X.    Union Pacific is the successor to Southern Pacific Railroad Company

20   and Southern Pacific Transportation Company (collectively, "Southern Pacific") as

21   a result of a 1996 merger (hereafter, Union Pacific and Southern Pacific are

22   collectively referred to as "Union Pacific").

23       Y.    In 1887, the State of California granted to and permitted Union Pacific

24   the right to take, hold and use portions of property situated within the Port of Los

25   Angeles, inclusive of a 200-foot right of way through the Port of Los Angeles,

26   which included the Sliver/Adjacent Area, as well as portions of the Marine Oil

27   Terminal.

28   ///

1       Z.    On January 1, 1949, Union Pacific entered into a ten-year lease with

2   Occidental for the lease of the original portion of the Sliver Site (Lease Audit 92086),

3   commencing on January 1, 1949, which provided Occidental with the right to occupy

4   the Sliver Site, "solely and exclusively for erection and maintenance of storage tanks

5   for handling caustic soda and other products." Union Pacific's initial Sliver Site

6   lease with Occidental was expanded to include additional property in 1956 to

7   encompass the current area being referred to by the Parties as the "Sliver Site," and

8   thereafter the lease term was extended multiple times with the lease ultimately

9   expiring on December 31, 1978.

10      AA.    On February 16, 1949, pursuant to Order No. 2259 and effective January

11  1, 1949, the City granted Occidental a ten-year permit to operate on the original

12  footprint of the Sliver Site, for the construction, maintenance and operation thereon

13  of storage tanks for handling caustic soda and other products. The City's initial

14  permit/lease to Occidental was expanded to include additional property in 1956 to

15  encompass the current footprint of the Sliver Site, and the permit/lease term was

16  thereafter extended several times, until it expired on December 31, 1978.

17      BB.    On February 21, 1979, pursuant to Order No. 4823 and Permit No. 404,

18  the City issued to "Ash-Cross-Evans Corporation, dba Olympic Chemical

19  Corporation" a five-year permit to operate on the Sliver Site, commencing on

20  January 1, 1979, for the operation and maintenance of a marine terminal and storage

21  facility.

22      CC.    On July 10, 1981, LAT was incorporated as a California corporation.

23      DD.    On July 10, 1981, ACE assigned its rights under Permit 404 to LAT.

24      EE.    On July 29, 1981, pursuant to Order No. 5036, the City approved ACE's

25  assignment of its rights under Permit 404 to LAT.

26      FF.    On August 6, 1981, a company known as "Holchem Inc." ("Holchem")

27  was incorporated as a Delaware corporation. Soco is the successor in interest to

28  Holchem.

Case No. 2:18-CV-06754-MWF(PVCx)
CONSENT DECREE

1    GG.   When incorporated in 1981, LAT and Holchem were sister corporations

2 that were wholly owned by the same corporate parent (as are LAT and Soco today),

3 and upon LAT commencing its terminal storage operations on the Sliver Site,

4 Holchem acted as the "sales arm" for the sale of chemical products that were being

5 stored by LAT on the Sliver Site.

6    HH.   On August 14, 1981, ACE sold all of its assets involving its

7 Sliver/Adjacent Area operations to LAT and to a company known as Marken

8 Chlorine, Inc.

9    II.   On August 9, 1984, the City entered into a five-year agreement,

10 commencing on January 1, 1984, with LAT, *i.e.*, Permit No. 530, authorizing LAT to

11 operate on the Sliver Site and to utilize pipelines within the Sliver/Adjacent Area.

12    JJ.   In 1993, Plaintiff LAT ceased its operations and emptied and cleaned all

13 of the storage tanks on the Sliver Site, and thereafter in 1993 proceeded to demolish

14 and remove the storage tanks and their associated pipelines.  LAT also vacated the

15 Sliver/Adjacent Area in 1993.

16    KK.   Since 1993, no chemical storage or distribution operations have been

17 conducted on the Sliver/Adjacent Area, and the property has been vacant from 1993

18 to the present date.

19    LL.   Union Oil operated a marine bulk fuel terminal for petroleum products,

20 from the early 1920s until 1997, within the area now known as the "Marine Oil

21 Terminal."

22    MM.  From the 1920s until 1956 the Marine Oil Terminal was only comprised

23 of what is now the "Eastern Portion," which includes Port of Los Angeles Berths

24 150-151.  In approximately 1956, the Marine Oil Terminal was expanded to include

25 the "Western Portion," and new facilities were constructed, including various above

26 ground tanks as well as Berths 148-149.

27    NN.   On April 1, 1997, Union Oil sold the Marine Oil Terminal assets to

28 Tosco.

1    OO.    In September of 2001, Phillips Petroleum Co. acquired all the common

2    stock of Tosco, and Phillips Petroleum Co. thereafter occupied and operated the

3    Marine Oil Terminal until August 2002, when it merged with Conoco Inc. to form

4    ConocoPhillips.    Thereafter, ConocoPhillips occupied and operated the Marine Oil

5    Terminal.    On or about May 1, 2012, Phillips 66 was spun off from ConocoPhillips,

6    forming a separate legal entity, i.e., Phillips 66 Company.    Phillips 66 has since

7    occupied and operated the Marine Oil Terminal.

8    PP.    At all relevant times during their operations, Union Oil, Tosco,

9    ConocoPhillips and Phillips 66 have held "berthing" rights, initially to Berths 150-

10    151, and thereafter, once constructed in 1956, to Berths 148-149.    Occidental, while

11    operating on Berth 155A, held "secondary berthing rights" to Berths 150-151, and

12    thereafter to Berths 148-149.    LAT similarly appears to have held secondary berthing

13    rights to Berths 148-151, during the time of its operations.

14    QQ.    On July 7, 2022, the California Regional Water Quality Control Board,

15    Los Angeles Region ("Regional Board") issued Cleanup and Abatement Order No.

16    R4-2022-0139 to the City, Occidental, LAT and Phillips 66, which order was

17    amended on March 14, 2024 to also name Union Pacific, with the Cleanup Order, as

18    amended, requiring all named parties to further investigate and remediate the HVOC

19    and TPH Contamination.    The Site is currently under Regional Board oversight.

20    RR.    The Settling Parties admit:  that HVOCs, as defined herein, are

21    "hazardous substances" (as such term is defined under CERCLA); that certain

22    HVOCs were "released" (as the term "release" is defined in CERCLA) as a result of

23    operations at the Site (as the term "Site" is defined below); that the Site is a

24    "facility" (as the term "facility" is defined under CERCLA); and that Plaintiff has

25    alleged it incurred "response costs" in accordance with CERCLA, to address the

26    HVOC Contamination (as the terms "respond" and "response" are defined under

27    CERCLA).

28    ///

Case No.  2:18-CV-06754-MWF(PVCx)
CONSENT DECREE

SS.    As the Plaintiff in this Action, LAT has alleged it has incurred in excess of $900,000 in "response costs", and is seeking the recovery of all such costs, among other relief, from the defendants in this Action *i.e.*, the City, Occidental and Union Pacific; however, by entering into this Consent Decree and in the SS Agreement, LAT is agreeing to waive and release all parties in both this Action and in the LA Superior Court Action, from and against any and all claims it has or may have involving the Site, including its claim for the recovery of its "response costs".

## III.    JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 42 U.S.C. §§ 9607 and 9613(b), and has personal jurisdiction over the Parties.  The Parties have stipulated to the entry of this Consent Decree and to the Court's continuing jurisdiction over the matters addressed herein to interpret and enforce its terms.

## IV.    PARTIES BOUND

2.    This Consent Decree is binding upon the Settling Parties and their Affiliates and successors and assigns. Any change in ownership or corporate or other legal status, including but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of the Settling Parties under this Consent Decree.

## V.    DEFINITIONS

3.    Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  The definitions of the terms defined above in the Background section, or below in this Definitions section, shall apply to interpret and enforce the terms of this Consent Decree:

a.    "Action" or "Federal Action" shall mean the lawsuit entitled *L.A. Terminals, Inc. v. City of Los Angeles, et. al.*, U.S.D.C. Case No. 2:18-CV-

06754-MWF-PVC, filed on August 6, 2018, including the First Amended Complaint and all counterclaims, cross-claims and third-party claims filed in the entitled action.

b.    "Affiliate" shall mean any predecessor, successor, parent, subsidiary, sister or related corporation, company, department or division of a Settling Party, and any and all employees, officers, directors, board members, council members, and/or assigns of a Settling Party.  For purposes of this Consent Decree, Soco West shall be considered an "Affiliate" of LAT.

c.    "Claim" or "Claims" shall mean and include any and all past, present or future causes of action, rights of action, suits, administrative proceedings, judgments, orders, demands or claims of damages or liability of any kind or nature, including any claim for contribution, equitable indemnity, injunctive relief, declaratory relief or other similar relief, and including any and all claimed or demanded "response costs" or natural resource damages, or other similar costs or damages involving any investigation, cleanup, abatement, mitigation, monitoring, or removal or remedial work, arising under any contract or under any federal, state, regional, county or local law, rule, regulation, common law, ordinance, order or directive, of any kind or nature, including under CERCLA, the HSAA and/or the California Porter-Cologne Water Quality Control Act (California Water Code section 13000 et. seq.), and shall further include any and all losses, property damages, bodily injuries, personal injuries, death, consequential damages, costs, fees, expenses, liens, fines, penalties, sanctions, attorneys', consultants' and/or experts' fees and costs, litigation costs, court and arbitration and mediation costs, fees, charges and expenses, interest and carrying costs, lost opportunity costs, lost rent, diminution in property value, demands or requests for injunction relief, declaratory relief, specific performance, restitution, reimbursement, equitable or express indemnity, contribution and/or set-off of whatever kind or nature,

1  whether claimed, demanded or requested in any form, including in any civil

2  suit, arbitration, mediation, administrative proceeding, or regulatory

3  enforcement action or proceeding.

4  d.    "Cleanup Order" shall mean and refer to Cleanup and Abatement Order

5  No. R4-2022-0139, issued by the Regional Water Board on July 7, 2022, and

6  amended on March 14, 2024, along with all other amendments thereto.

7  e.    "Consent Decree" shall mean this Consent Decree and any and all

8  amendments or modifications thereto that may be approved and entered by

9  the Court.

10  f.    "Closure Letter" shall mean any "closure" or "no further action" letter,

11  or other similar written statement from the Regional Water Board or Other

12  Regulatory Agency, that no further action is being required to address the

13  HVOC Contamination and that the Site is being "closed" for purposes of said

14  agency's files.

15  g.    "Cost-Sharing Agreement or Agreements" shall mean any cost sharing

16  agreement of any kind or nature entered into by and between Union Oil,

17  Tosco, ConocoPhillips, LAT and/or Occidental, or by any Affiliate of the

18  foregoing, with the stated purpose of sharing in the costs of conducting any

19  investigation, assessment, study, testing, sampling, pilot work, reporting,

20  monitoring, mitigation, abatement, cleanup and/or remediation of either the

21  HVOC Contamination and/or the TPH Contamination, including but not

22  limited to those agreements entered into by some or all of the aforementioned

23  parties in 1995, 2001, 2003, and 2005, and potentially at other times, and

24  specifically including the Remediation and Cost Sharing Agreement entered

25  into on or about May 25, 2001 by LAT and an Affiliate of Occidental.

26  h.    "Day" shall mean a calendar day.  In computing any period of time

27  under this Consent Decree, where the last day would fall on a Saturday,

28  Sunday or federal holiday, the period shall run until 5:00 p.m. Pacific time of

the next working day.

i.      "Enforcement Action" shall mean any Claim brought by or on behalf of the Regional Board or Other Regulatory Agency, that concerns or in any way relates to the HVOC Contamination and/or the TPH Contamination, existing in, on, under, within and/or migrating to or from the Site.

j.      "Excluded Claims" shall mean and refer to any Claim that concerns or in any way relates to the HVOC Contamination and/or the TPH Contamination, existing in, on, under, within and/or migrating to or from the Site, that has been or may in the future be brought by: (1) any Excluded Party against any other Party other than LAT and its Affiliates, including against any other Excluded Party; (2) Occidental against any Excluded Party; and (3) Union Oil against any Excluded Party.

k.      "Excluded Parties" shall mean the City, Phillips 66 and Union Pacific, and each of their respective Affiliates, and "Excluded Party" shall mean and refer to any one of the foregoing Excluded Parties.

l.      "HVOC Contamination" shall mean the existence or potential existence of any HVOCs in soil, soil vapor, surface water, perched water, groundwater, harbor water, harbor sediment, ambient air and/or indoor air, at, in, on, under and/or within any part or portion of the Site, and inclusive of any HVOCs migrating from the Site.

m.      "HVOCs" shall mean halogenated volatile organic compounds, including "trichlorethylene" also known as "TCE"; "perchlorethylene" also known as "tetrachlorethylene" or "PCE"; "1,1,1 trichlorethane" also known as "1,1,1 TCA" or "TCA"; and "methylene chloride" also known as "dichloromethane"; and all additives thereto, and all breakdown daughter chemicals and compounds therefrom.

n.      "Other Regulatory Agency" shall mean any regulatory environmental governmental agency, other than the Regional Water Board, that is exercising

1  oversight jurisdiction over the assessment, study, investigation, testing,

2  sampling, monitoring, reporting, mitigation, removal, abatement, remediation

3  and/or other cleanup of the HVOC Contamination.  The term "Other

4  Regulatory Agency" shall not include the City or any department or division

5  of the City.

6  o.    "Parties" shall mean and refer to the Plaintiff, the City, Occidental,

7  Union Pacific, Phillips 66, Union Oil and Soco, and "Party" shall mean and

8  refer to any one of the foregoing Parties.

9  p.    "Regional Board" or "Regional Water Board" shall mean the California

10  Regional Water Quality Control Board, Los Angeles Region.

11  q.    "Settling Parties" shall mean Plaintiff, Occidental, Union Oil and Soco,

12  and their respective Affiliates.

13  r.    "Site" shall mean the location identified in the Cleanup Order, and all

14  real property, including all soil, soil vapor, surface water and/or groundwater

15  on or within such property, that has been or may be impacted with HVOCs

16  and/or TPH as a result of any operations conducted on or within the

17  Sliver/Adjacent Area, Berth 155A, the Marine Oil Terminal, all pipeline areas

18  within or leading to such properties, the dock and wharf areas within Berths

19  148 to 151, and/or any Harbor sediment or Harbor waters where HVOCs or

20  TPH may have come to be located.

21  s.    "State Board" shall mean the State Water Resources Control Board.

22  t.    "LA Superior Court Action" shall mean the lawsuit entitled *City of Los

23  Angeles v. L.A. Terminals, Inc. et. al*, LASC Case No. NC061591, including

24  all amended complaints and all counter-claims and cross-claims filed or to be

25  filed in connection therewith.

26  u.    "TPH" shall mean total petroleum hydrocarbon chemicals.

27  v.    "TPH Contamination" shall mean the existence or potential existence

28  of any TPH in soil, soil vapor, surface water, perched water, groundwater,

Case No.  2:18-CV-06754-MWF(PVCx)
CONSENT DECREE

harbor water, harbor sediment, ambient air and/or indoor air, at, in, on, under and/or within any part or portion of the Site, and inclusive of any TPH migrating to or from the Site.

w.    "2022 RAW/IRAP" shall mean that Removal Action Workplan / Interim Remedial Action Plan For HVOCs submitted by Terraphase Engineering, Inc. on behalf of Plaintiff LAT to the Regional Water Board on or about December 31, 2022.

## VI.    PAYMENTS

4.    In consideration of the releases and/or dismissals of its Claims in this Action and in the LA Superior Court Action against LAT, Soco West and Union Oil, and in consideration of Occidental's covenants, representation, warranties, and indemnities as provided for herein, within forty-five (45) days of the Effective Date of this Consent Decree, the following payments shall be made to Occidental, for Occidental's deposit into the Sliver Site Remediation Account (defined below), by check made payable to "Occidental Chemical Corporation," and delivered via federal express or other overnight mail to Occidental's counsel of record in this Action, or by such other method of payment and/or arrangements as such Parties may mutually agree:

a.    Two million seven hundred forty-nine thousand nine hundred and ninety-nine dollars ($2,749,999) to be paid on behalf of LAT as follows: (i) one million nine hundred and ninety-nine thousand nine hundred and ninety nine dollars ($1,999,999) of which will be paid by United National Insurance Company ("United National"), as an indemnity payment on behalf of LAT, pursuant to policy nos. GA81118, GA81138, GA81186 and GA502997 ("United Policies"); this indemnity payment shall be allocated as follows under the United Policies: GA81118 ($500,000), GA81138 ($500,000), GA81186 ($500,000) and GA502997 ($499,999); and (ii) seven hundred fifty thousand dollars ($750,000) of which will be paid by Granite State Insurance

Company ("AIG"), as an indemnity payment on behalf of LAT pursuant to Granite State Policy No. 6383 – 0975 ("Granite Policy"); no payment made hereunder in this paragraph 4(a) by or on behalf of LAT shall have any force or effect of any kind or nature on LAT's and/or Soco's rights, title and interest in any current or future claim against United National or AIG, to recover any defense costs, fees, expenses, and interest, or to obtain any other indemnity under the United Policies, the Granite Policy, or otherwise, including any rights, title and interest LAT and Soco currently have or may obtain in the future to recover defense costs, fees, expenses, interest, and/or other indemnity, pursuant to any court orders or judgments obtained or to be obtained against United National and/or AIG; and

b.    Two hundred fifty thousand dollars ($250,000) by Union Oil.

5.    Occidental represents, warrants and covenants that, within fifteen (15) days of receipt of the payments made to Occidental pursuant to the terms of this Consent Decree, Occidental shall deposit all such funds into a segregated, interest bearing, "Sliver Site Remediation Account", and that all such funds shall be exclusively used for the fulfillment of Occidental's Remediation Obligation as described in this Consent Decree, and for no other purpose.

6.    Within thirty (30) days of receipt of a written request for an accounting of the expenditure of funds from the Sliver Site Remediation Account from LAT, Soco or Union Oil, which written request shall not be made more than once semi-annually, Occidental shall provide: a written description of the purpose of each expenditure from the Sliver Site Remediation Account for the period of time requested; the payee of the expenditure; a description of the requirement under the Cleanup Order the expenditure was intended to partially or fully address; and the date of the expenditure (collectively, "Expenditure Report").

7.    Within thirty (30) days following the exhaustion/expenditure of all payments and funds deposited into the Remediation Account, as provided for in this

1   Consent Decree, Occidental shall provide written notice to LAT, Soco and Union

2   Oil that the funds in the Sliver Site Remediation Account have been fully exhausted,

3   and that all future expenditures by Occidental to comply with its Remediation

4   Obligation hereunder, will be made paid directly by Occidental or one of its

5   Affiliates, and that no future accounting of the expenditures from the Sliver Site

6   Remediation Account will be possible ("Notice of Exhaustion of Remediation

7   Account").  Occidental shall include with its Notice of Exhaustion of Remediation

8   Account, an Expenditure Report to LAT, Soco and Union Oil, that contains a full

9   accounting of all expenditures from the Sliver Site Remediation Account dating

10  back to the last full semi-annual time frame accounted for in the prior, most recent

11  Expenditure Report provided to LAT, Soco or Union Oil.  Notwithstanding

12  Occidental's commitments under this Consent Decree to comply with its

13  Remediation Obligations and other obligations under this Consent Decree,

14  Occidental expressly reserves all of its Claims and defenses against any and all of

15  the Excluded Parties, including the right to seek reimbursement or cost recovery or

16  to prosecute any Claims against any of the Excluded Parties relating to costs or

17  expenditures incurred by Occidental in complying with the Remediation Obligation.

18  Nothing in this Consent Decree shall constitute a release or waiver of any such

19  Claim or defense against the Excluded Parties by Occidental.  Occidental likewise

20  acknowledges that nothing in this Consent Decree shall in any way constitute a

21  release or waiver of any of the Excluded Parties' Claims or defenses as against or

22  regarding Occidental.

23  **VII.      OCCIDENTAL'S REMEDIATION OBLIGATION OF HVOCS**

24        8.      With the exception of the payments to be provided to Occidental under

25  this Consent Decree, Occidental represents, warrants, covenants and agrees that,

26  notwithstanding Occidental's right to seek reimbursement or cost recovery or to

27  prosecute any Claims against any of the Excluded Parties, at its sole cost and

28  expense, and without any recourse or right of reimbursement from LAT, Soco, or

Union Oil, Occidental shall use its best efforts to timely and diligently assess, study, investigate, test, sample, report, monitor, mitigate, remove, abate, remediate or otherwise cleanup the HVOC Contamination ("Remediation Work"), notwithstanding the presence of or comingling with TPH Contamination, as directed or required by the Regional Water Board or Other Regulatory Agency, including, but not limited to, as necessary to timely comply with any and all existing or future requirements set forth in the Cleanup Order, and/or in any other order, directive or requirement imposed or which may be imposed by the Regional Board or Other Regulatory Agency that concerns or relates to the HVOC Contamination ("Remediation Obligation").  Occidental shall conduct the Remediation Work and comply with its Remediation Obligation in accordance with all applicable laws and regulations, whether currently enacted or subsequently adopted.  The Settling Parties hereby acknowledge that Occidental's Remediation Obligation does not include, extend to or encompasses any requirement or obligation on behalf of Occidental to investigate, test, sample, monitor, report, mitigate, remove, abate, remediate or cleanup any TPH or TPH Contamination.  However, Occidental's Remediation Obligation is not in any way limited or diminished by the presence of TPH Contamination or the fact that the HVOC Contamination and TPH Contamination are comingled.

9.    Notwithstanding Occidental's preservation of its right to seek reimbursement or cost recovery or to prosecute any Claims against any of the Excluded Parties, Occidental shall conduct the Remediation Work and comply with its Remediation Obligation as necessary to obtain a Closure Letter from the Regional Water Board and/or Other Regulatory Agency, and to thereafter, where necessary, satisfactorily address any and all additional requirements that may be imposed by the Regional Board or Other Regulatory Agency to address the HVOC Contamination after the Closure Letter is issued.  In particular, Occidental expressly acknowledges that the receipt of any Closure Letter may be subject to a "re-opener,"

whereby the Regional Board or Other Regulatory Agency may at some time after issuing the Closure Letter, require, due to the discovery of additional HVOC Contamination, changed circumstances, the migration of the HVOC Contamination, new information, changed cleanup or health and safety standards and/or remedy failure or ineffectiveness, that additional Remediation Work be conducted ("Re-opener Work"), including, but not limited to, the potential need for Re-opener Work at such time as the Marine Oil Terminal is de-commissioned.  In the event such a "re-opener" were to occur, Occidental represents, warrants, covenants and agrees that it shall timely and diligently conduct all Re-opener Work as necessary to address the HVOC Contamination to the satisfaction of the Regional Board or Other Regulatory Agency, and that it will obtain written confirmation from any such agency that Occidental has fully addressed the cause of the re-opener and that no additional Re-opener Work is necessary ("Re-opener Closure").

10.     Occidental acknowledges and agrees that, pursuant to this Consent Decree, as of the Effective Date, Occidental is accepting sole and complete responsibility for addressing the HVOC Contamination through the issuance of the Closure Letter and any necessary Re-opener Closure.  However, Occidental's Remediation Obligations under this Consent Decree, shall not apply to any contamination resulting from any release or releases of HVOCs occurring from operations conducted at any time after the Effective Date of this Consent Decree, such as from any third party's subsequent handling, use, storage, distribution, release, discharge or spill of any HVOCs after the Effective Date.

11.     Within seven (7) days of the Effective Date of this Consent Decree, Occidental shall notify the Regional Water Board, in writing, of its commitments to LAT, Soco and Union Oil under this Consent Decree to perform the necessary Remediation Work and comply with its Remediation Obligation herein, as well as its agreement with LAT, Soco and Union Oil to be the sole responsible party for addressing the HVOC Contamination.

12.     The Settling Parties acknowledge that Occidental's performance of its Remediation Obligations may deviate from the 2022 RAW/IRAP (e.g., different or additional remedial technologies, remedial action objectives, treatment locations, and/or different proposed monitoring frequency or periods of monitoring, etc.), and that by Occidental committing to its Remediation Obligation, it is not waiving any of its administrative or other legal rights with respect to any future requirements that may be imposed on Occidental by the Regional Board.  Occidental acknowledges that the Regional Water Board and the State Board (collectively, "Boards"), have the ultimate authority to authorize any further requirements for cleanup of the HVOC Contamination, including approving or rejecting any remedial action objectives ("RAOs") or other performance standards that may be proposed by Occidental, or adding further requirements to Occidental's Remediation Obligation. Except where Occidental is able to show fraudulent or illegal action on the part of the Boards, Occidental agrees that any rejection of RAOs or other performance standards or imposition of further requirements by the State Board, is final.  Except as otherwise stated herein, and so long as Occidental remains in compliance with all of its obligations under this Consent Decree, LAT, Soco and Union Oil agree that they will not object to, criticize or interfere with Occidental's proposed Remediation Work or its implementation of any such Remediation Work.

13.     Occidental acknowledges that nothing in this Consent Decree shall preclude or impede the City's or any other Party's right to access, study, investigate, test, sample, report, monitor, mitigate, remove, abate, remediate or otherwise cleanup HVOC Contamination or TPH Contamination at the Site.

**VIII.    NOTICE TO REGIONAL BOARD OF CONSENT DECREE**

14.     Within seven (7) days of the Effective Date of this Consent Decree, LAT shall provide a copy of this Consent Decree to the Regional Water Board.

**IX.    INDEMNIFICATION**

15.     Notwithstanding any other judgment or other agreement that may exist

among any of the Settling Parties, or any other provision in this Consent Decree, Occidental shall defend, reimburse, hold harmless and indemnify LAT, Soco and Union Oil, and their respective Affiliates (collectively, "LAT/Union Oil Indemnified Parties"), from and against any and all Claims that concern, relate to, result from or in any way arise out of: (a) the existence or potential existence of the HVOC Contamination; (b) Occidental's negligent or intentional actions, inactions, and/or omissions in conducting the Remediation Work; (c) any failure on the part of Occidental to comply with its Remediation Obligation, inclusive of any costs incurred by any other Settling Party to implement Occidental's Remediation Obligation in the event Occidental fails to do so in a timely manner, provided that such other Settling Party first complies with the dispute resolution provisions set forth below in Paragraph 22 before incurring such costs; (d) any violation or alleged violation of the Cleanup Order or of any other directive or requirement of the Regional Board or Other Regulatory Agency concerning the HVOC Contamination at, on, under and/or within any part or portion of the Site, including but not limited to, from and against any Enforcement Action threatened or taken against any of the LAT/Union Oil Indemnified Parties; (e) any breach or failure to comply with any obligation imposed on Occidental under this Consent Decree; and (f) the LA Superior Court Action, including all past, present and/or future Claims that have been or may be alleged therein, except for Claims against Union Oil relating solely to TPH Contamination.

## X.        AGENCY COMMUNICATIONS

16.    LAT, Soco and Union Oil each agree to refrain from communicating with the Regional Board unless necessary to:  (1) prevent or respond to any Enforcement Action taken or threatened against them by the Regional Board; (2) to respond to any orders or requirements directed to such Parties and to which Occidental has failed or refused to timely respond; or (3) respond to any statements, accusations or representations asserted by Occidental or any other person or entity,

1  which LAT, Soco or Union Oil contend are inaccurate, misleading or incomplete.

2  In any communications with the Regional Board, Occidental shall not make any

3  unnecessary, unsupported and/or inaccurate allegations involving LAT, Soco or

4  Union Oil, but if it does so, LAT, Soco and/or Union Oil shall not in any way be

5  restricted or otherwise prevented from commenting on or otherwise responding to

6  such Occidental allegations.

7  **XI.        RELEASES AND WAIVERS OF CLAIMS**

8         17.     As of the Effective Date, and except for the rights and obligations

9  provided for in this Consent Decree, the Settling Parties hereto, and their respective

10 Affiliates, and each of them, hereby waive, release, acquit and forever discharge

11 each of the other Settling Parties hereto, and their respective Affiliates, and each of

12 them, from and against any and all Claims, whether known or unknown, asserted or

13 unasserted, suspected or unsuspected, foreseen or unforeseen, fixed or contingent,

14 liquidated or unliquidated, administrative, legal or equitable, past, present, or future,

15 that concern, relate to or arise out of:  (a) the Federal Action; (b) the LA Superior

16 Court Action; (c) the Cleanup Order; (d) the Site; (e) the existence or potential

17 existence of any HVOC Contamination, including, without limiting the foregoing,

18 the aerial extent of any HVOC Contamination allegedly resulting from any activities

19 and/or operations occurring on the Site; (f) the existence or potential existence of

20 any TPH Contamination including, without limiting the foregoing, the aerial extent

21 of any TPH Contamination allegedly resulting from any activities and/or operations

22 occurring on the Site; (g) that action entitled *Occidental Chemical Corporation, et.*

23 *al. v. L.A. Terminals, Inc., et. al*., Los Angeles Superior Court Case No. BC630261;

24 and (h) any Cost-Sharing Agreement or Agreements (hereinafter, collectively the

25 "Released Claims").  The releases and waivers provided for in this paragraph are

26 intended to be full and complete releases and discharges of any and all of the

27 Released Claims existing or which may exist in the future by and against any of the

28 Settling Parties and their Affiliates.

18.     As to the Released Claims herein, the Settling Parties acknowledge that they have been advised of the provisions of Section 1542 of the California Civil Code, and are familiar with said provisions, and that they are willingly and knowingly waiving and releasing all rights they have or may have pursuant to said section or any similar or related section.  Section 1542 of the California Civil Code provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

19.     The Settling Parties acknowledge and agree that they may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the Released Claims, but recognize this possibility and expressly waive and release any and all rights they have or may have under California Civil Code Section 1542 and any similar or related provision, but solely with respect to the Released Claims.

20.     Each Settling Party and its Affiliates represents, warrants, covenants and agrees that it will not bring any action, whether in law or in equity, as a claim, counterclaim, cross-claim, or third-party claim, and whether in any judicial, administrative or non-judicial forum, against any other Settling Party or its Affiliates with respect to the Released Claims, except to interpret or enforce the provisions of this Consent Decree.

21.     Each of the Settling Parties herein expressly represents and warrants that said party has not previously assigned, hypothecated or otherwise transferred to any other person or entity not a Settling Party to this Consent Decree, any Released Claim that it has released or waived in this Consent Decree.

## XII.          DISPUTE RESOLUTION

22.     In the event any dispute arises between any of the Settling Parties regarding the interpretation, compliance and/or alleged breach of any provision of this Consent Decree, and except where immediate relief is necessary and insufficient time exists to meet and confer and/or mediate the dispute, the involved Settling Parties shall seek to resolve the dispute as follows:  (a) first, through an informal meet and confer process, with the claiming Settling Party providing fifteen (15) days prior written notice requesting an in-person, Zoom, Teams or telephonic meet and confer with the Setting Party alleged to be out of compliance or in breach of the Consent Decree (collectively, "Non-Compliance"), and describing in the written notice the nature of the alleged Non-Compliance and providing reasonable available dates for the meet and confer; (b) second, if the meet and confer process does not resolve the dispute, by use of a mutually agreed upon qualified mediator (the Settling Parties agree that Timothy Gallagher, Esq. is qualified and agreeable, if available) payment for which shall be divided equally among the involved Settling Parties, and which mediation process shall continue, if necessary, at least for a period of forty-five (45) days from the date of the initial mediation (unless the dispute is resolved or the involved Settling Parties otherwise mutually agree to terminate the mediation process earlier); and (c) third, except where immediate relief is necessary and insufficient time exists to meet and confer and/or mediate the dispute, if all or any part of the dispute remains unresolved after the meet and confer and mediation processes, by submission of the dispute to this Court for resolution, provided, however, that any submission to this Court shall be made by noticed motion which provides Occidental with at least twenty (20) days to respond in writing. The Settling Parties understand and agree that the Court has the authority to issue a mandatory or prohibitory injunction to require compliance with any and all terms of this Consent Decree, including but not limited to, enforcing compliance with the Remediation Obligation and holding any Settling Party in contempt for

failing to comply with its obligations under this Consent Decree, as well as ordering all other necessary and appropriate relief as the Court deems just and proper, such as, for example, in the event of an Occidental breach of its Remediation Obligation, allowing any other Settling Party the ability to implement part or all of the Occidental Remediation Obligation and to thereafter recover all of its reasonable costs and fees in doing so from Occidental.

**XIII.    GOOD FAITH DETERMINATION AND DISMISSAL OF CLAIMS**

23.    The Court hereby determines that the terms of this Consent Decree, all of which have been stipulated to by the Settling Parties, including but not limited to, the terms governing the payments to be made to Occidental by Union Oil and on behalf of LAT (which are required to be expended by Occidental to address the HVOC Contamination), and the terms imposing the various obligations on Occidental, to, among other obligations, use its "best efforts" to clean-up the HVOC Contamination (including complying with the requirements of the Cleanup Order), represent a settlement by and between the Settling Parties that is procedurally and substantively fair, reasonable and consistent with the objectives of CERCLA, and that was entered into in good faith, and that is absent of fraud, collusion, or tortious conduct aimed at injuring the interests of any Excluded Party.

**XIV.    RESERVATION OF EXCLUDED CLAIMS**

24.    Per the Parties' Stipulation, the Excluded Claims will not be deemed barred or in any way affected by any judicial determination that the Consent Decree is fair, reasonable or consistent with the objectives of CERCLA.  Nor, on the other hand, shall anything in this Consent Decree be deemed to revive any stale or otherwise barred Excluded Claim.

**XV.    DISMISSALS OF PENDING CLAIMS**

25.    As of the Effective Date, all claims pending in this Action by and between the Settling Parties are hereby resolved by entry of this Consent Decree.

26.    As of the Effective Date, and per the Parties' Stipulation, all claims in

this Action brought against Plaintiff and Soco by any Excluded Party, and all claims in this Action brought by Plaintiff against any Excluded Party, are to be dismissed with prejudice.  Accordingly, all claims brought in this Action by any Excluded Party against the Plaintiff and Soco, and by the Plaintiff against any Excluded Party, are hereby dismissed <u>with prejudice</u>.

27.    As of the Effective Date, and per the Parties' Stipulation, all claims pending in this Action by and between the Excluded Parties, are to be dismissed without prejudice.  Accordingly, all claims pending in this Action by and between the Excluded Parties are hereby dismissed <u>without prejudice</u>.

28.    As of the Effective Date, and per the Parties' Stipulation, all claims pending in this Action brought by Occidental against any Excluded Party, and brought by any Excluded Party against Occidental, are to be dismissed without prejudice.  Accordingly, all claims pending in this Action by and between Occidental and any Excluded Party, are hereby dismissed <u>without prejudice</u>.

29.    As of the Effective Date, and per the Parties' Stipulation, all claims pending in this Action brought by Union Oil against any Excluded Party, and brought by any Excluded Party against Union Oil, are to be dismissed without prejudice.  Accordingly, all claims pending in this Action by and between Union Oil and any Excluded Party, are hereby dismissed <u>without prejudice</u>.

## XVI.    <u>DISMISSALS OF PENDING STATE COURT CLAIMS</u>

30.    The Settling Parties agree that within thirty (30) days of the Effective Date of this Consent Decree, they shall dismiss all causes of action and claims pending against each other and against each other's Affiliates in the LA Superior Court Action, with prejudice.

## XVII.    <u>ATTORNEYS' FEES AND COSTS</u>

31.    Except as otherwise expressly provided for in this section, all Settling Parties shall bear their own respective attorneys' fees and costs and other fees and costs incurred in this Action.  However, in the event of a dispute concerning or in

any way involving the interpretation, enforcement or alleged breach of any of the terms of this Consent Decree, the prevailing Settling Party in any such proceedings shall be entitled to the recovery of its reasonable attorney's fees and costs and litigation expenses as determined by the Court in its discretion.

## XVIII.    NO ADMISSION OF LIABILITY

32.    Except for the duties, obligations and/or other requirements imposed upon the Settling Parties under this Consent Decree, nothing in this Consent Decree shall be construed as an admission of liability or of any violation of law.

## XIX.    INTEGRATION

33.    This Consent Decree contains all of the promises, terms and conditions agreed upon by the Settling Parties relating to the matters covered herein, and supersedes any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the Settling Parties, whether oral or written, concerning such matters.

## XX.    MODIFICATIONS TO CONSENT DECREE

34.    This Consent Decree shall not be amended or modified except by written order of this Court.  Any amendment or modification to this Consent Decree requested by any of the Settling Parties, shall be in writing and signed by the affected Settling Parties, but shall not become effective unless and until approved by this Court.  Where agreed to by both Occidental and Union Oil, this Consent Decree may be amended to add one or more of the Excluded Parties, and entry of this Consent Decree shall not preclude the Excluded Parties, or any of them, from subsequently reaching settlement and thereafter seeking approval of said settlement from this Court either by way of stipulation or good faith motion, and/or through an amendment to this Consent Decree or through entry of a new consent decree.

## XXI.    WARRANTY OF AUTHORITY TO EXECUTE

35.    Each undersigned representative of a Settling Party to this Consent Decree, certifies that he or she is authorized to enter into the terms and conditions of

this Consent Decree and to execute and legally bind such Settling Party to this document.  Each individual signing this Consent Decree on behalf of a corporation, municipality, agency, partnership or association represents and warrants that he or she has the authority and power to legally bind and enter into this Consent Decree on behalf of the entity for which he/she is signing, and that all necessary corporate, agency or governmental resolutions and/or formalities have been followed granting full authority and power to each such individual.

## XXII.   EFFECTIVE DATE

36.    The Effective Date of this Consent Decree is the date this Consent Decree is approved and entered by this Court.

## XXIII.   RETENTION OF JURISDICTION

37.    This Court shall retain jurisdiction over this matter for the purpose of: (1) interpreting and enforcing the terms of this Consent Decree and resolving any disputes arising hereunder; (2) amending and modifying this Consent Decree, including, if agreed to by both Occidental and Union Oil, adding any Excluded Parties; and/or (3) approving any future settlement(s) reached by the Excluded Parties, or any of them, by way of stipulation or a good faith settlement motion.

## XXIV.   FINAL JUDGMENT

38.    This Consent Decree shall constitute the final judgment in this Action, and the Court finds there is no just reason for delay and therefore enters this Consent Decree as a final judgment, pursuant to Federal Rules of Civil Procedure 54 and 58.

**IT IS SO ORDERED.**

Dated:  April 7, 2025

_____
MICHAEL W. FITZGERALD
United States District Judge

**FOR SETTLING PARTY-PLAINTIFF L.A. TERMINALS, INC.**

| | |
|---|---|
| Dated: April 2 ,  ~~2024~~  2025 | Representative Authorized To Sign: |
| Mohsin Meghji | Signature: _[signature]_ |
| Chief Restructuring Officer | Name: ~~Raj Mehta~~ |
| 1700 Broadway, 19th Floor | Title: ~~President, L.A. Terminals, Inc.~~ |
| New York, NY 10019 | Address: ~~100 First Stamford Place~~ |
| mmeghji@m3-partners.com | ~~Stamford, CT 06902~~ |
| | Email: ~~rmehta@bnserv.com~~ |

**FOR SETTLING PARTY-SOCO WEST, INC.**

| | |
|---|---|
| Dated: April 2 ,  ~~2024~~  2025 | Representative Authorized To Sign: |
| Mohsin Meghji | Signature: _[signature]_ |
| Chief Restructuring Officer | Name: ~~Raj Mehta~~ |
| 1700 Broadway, 19th Floor | Title: ~~President, Soco West, Inc.~~ |
| New York, NY 10019 | Address: ~~100 First Stamford Place~~ |
| mmeghji@m3-partners.com | ~~Stamford, CT 06902~~ |
| | Email: ~~rmehta@bnserv.com~~ |

**FOR SETTLING PARTY-DEFENDANT OCCIDENTAL CHEMICAL CORPORATION**

| | |
|---|---|
| | Representative Authorized To Sign: |
| Dated: _____, 2024 | Signature: _____ |
| | Name: _____ |
| | Title: _____ |
| | Address: _____ |
| | _____ |
| | Email: _____ |

**FOR SETTLING PARTY-THIRD-PART DEFENDANT UNION OIL COMPANY OF CALIFORNIA**

| | |
|---|---|
| | Representative Authorized To Sign: |
| Dated: _____, 2024 | Signature: _____ |
| | Name: _____ |
| | Title: _____ |
| | Address: _____ |
| | _____ |
| | Email: _____ |

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
20187305.9 a.09/18/2024

-31-

Case No.  2:18-CV-06754-MWF-PVC
CONSENT DECREE

1  **FOR SETTLING PARTY-PLAINTIFF L.A. TERMINALS, INC.**

2 | | Representative Authorized To Sign: |
| Dated: _____, 2024 | Signature: _____ |
| | Name:    Raj Mehta |
| | Title:    President, L.A. Terminals, Inc. |
| | Address:    100 First Stamford Place |
| | Stamford, CT 06902 |
| | Email:    rmehta@bnserv.com |

8  **FOR SETTLING PARTY-SOCO WEST, INC.**

9 | | Representative Authorized To Sign: |
| Dated: _____, 2024 | Signature: _____ |
| | Name:    Raj Mehta |
| | Title:    President, Soco West, Inc. |
| | Address:    100 First Stamford Place |
| | Stamford, CT 06902 |
| | Email:    rmehta@bnserv.com |

14  **FOR SETTLING PARTY-DEFENDANT OCCIDENTAL CHEMICAL CORPORATION**

| | Representative Authorized To Sign: |
| Dated: 10/25/24, 2024 | Signature: _____ |
| | Name:    Juan P Somoano |
| | Title:    Vice President |
| | Address:    14555 Dallas Parkway |
| | Dallas, TX 75254 |
| | Email:    juan_somoano@oxy.com |

22  **FOR SETTLING PARTY-THIRD-PART DEFENDANT UNION OIL COMPANY OF CALIFORNIA**

| | Representative Authorized To Sign: |
| | Signature: _____ |
| Dated: November 7, 2024 | Name:    Scott M. Banks |
| | Title:    Assistant Secretary |
| | Address: |
| | Email: |

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
20187305.8 a09/18/24

-31-

Case No.  2:18-CV-06754-MWF-PVC
CONSENT DECREE

1
2  **APPROVED AS TO FORM:**
3

RUTAN & TUCKER, LLP
RICHARD MONTEVIDEO
TRAVIS VAN LIGTEN

4
5  Dated: __November 12__, 2024

By: _____
Richard Montevideo
Attorneys for L.A. TERMINALS,
INC. and SOCO WEST, INC.

6
7

PARKER, MILLIKEN, CLARK,
O'HARA & SAMUELIAN
Gary A. Meyer
Pedram Mazgani

8
9
10
11  Dated: _____, 2024

By: _____
Gary A. Meyer
Attorneys for OCCIDENTAL
CHEMICAL CORPORATION

12
13

ROGERS JOSEPH O'DONNELL
Robert C. Goodman
Jon-Erik W. Magnus

14
15
16  Dated: _____, 2024

By: _____
Robert C. Goodman
Attorneys for UNION OIL
COMPANY OF CALIFORNIA

17
18
19
20
21
22
23
24
25
26
27
28

**Rutan & Tucker, LLP**
*attorneys at law*

1

2 **APPROVED AS TO FORM:**

3                                                RUTAN & TUCKER, LLP
                                                 RICHARD MONTEVIDEO
                                                 TRAVIS VAN LIGTEN
4

5 Dated: _____, 2024           By:_____

6                                                Richard Montevideo
                                                 Attorneys for L.A. TERMINALS,
7                                                INC. and SOCO WEST, INC.

8                                                PARKER, MILLIKEN, CLARK,
                                                 O'HARA & SAMUELIAN
9                                                Gary A. Meyer
                                                 Pedram Mazgani
10

11 Dated: ____October 30____, 2024        By:_____

12                                               Gary A. Meyer
                                                 Attorneys for OCCIDENTAL
13                                               CHEMICAL CORPORATION

14                                               ROGERS JOSEPH O'DONNELL
                                                 Robert C. Goodman
15                                               Jon-Erik W. Magnus

16 Dated: _____, 2024          By:_____

17                                               Robert C. Goodman
                                                 Attorneys for UNION OIL
18                                               COMPANY OF CALIFORNIA

19

20

21

22

23

24

25

26

27

28

1

2 **APPROVED AS TO FORM:**

3                                           RUTAN & TUCKER, LLP
                                            RICHARD MONTEVIDEO
4                                           TRAVIS VAN LIGTEN

5 Dated: _____, 2024       By:_____

6                                           Richard Montevideo
                                            Attorneys for L.A. TERMINALS,
7                                           INC. and SOCO WEST, INC.

8                                           PARKER, MILLIKEN, CLARK,
                                            O'HARA & SAMUELIAN
9                                           Gary A. Meyer
                                            Pedram Mazgani

10

11 Dated: _____, 2024      By:_____

12                                          Gary A. Meyer
                                            Attorneys for OCCIDENTAL
13                                          CHEMICAL CORPORATION

14                                          ROGERS JOSEPH O'DONNELL
                                            Robert C. Goodman
15                                          Jon-Erik W. Magnus

16 Dated: November 4, 2024           By:_____

17                                          Robert C. Goodman
                                            Attorneys for UNION OIL
18                                          COMPANY OF CALIFORNIA

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

227/021204-0021
20187305.8 a09/18/24                    -32-        Case No. 2:18-CV-06754-MWF-PVC
                                                              CONSENT DECREE